**Frontier Law Center**
Robert Starr (183052)
Adam Rose (210880)
Karo Karapetyan (318101)
23901 Calabasas Rd, Suite 2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433
E-Mail: robert@frontierlawcenter.com
        adam@frontierlawcenter.com
        karo@frontierlawcenter.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOR GEVORKYAN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BITMAIN, INC., BITMAIN TECHNOLOGIES, LTD. and DOES 1 to 10,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br>1. **Violation of the Unfair Prong of the Unfair Competition Law**<br>2. **Unjust Enrichment**<br>3. **Conversion**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Gor Gevorkyan and all others similarly situated ("Plaintiff") allege the following:

## NATURE OF ACTION

1. This is a prospective class action against Bitmain, Inc. and its parent company Bitmain Technologies, Ltd. (collectively "Bitmain" or "Defendant") in connection with the marketing and sale of its crypto currency mining devices known as Application Specific Integrated Circuits ("ASIC devices" and the "Products"). As alleged herein, until the complicated and time-consuming initialization procedures are completed, Bitmain's ASIC devices are preconfigured to use its customers' electricity to generate crypto currency for the benefit of Bitmain rather than its customers.

2. In the past, Bitmain ASIC devices could be configured and initialized in low-power mode that did not mine crypto currency for Bitmain. However, after Bitmain established itself as one of the world's largest crypto currency miners in the last several years, Defendant redesigned its ASIC devices to mine crypto currency for the benefit of itself rather than its customers who purchase the Products. Conveniently, Bitmain cashes in on every second it takes to get the ASIC configured with the customers' specifications and lays the substantial costs of operating the ASIC devices at the feet of its customers.

3. Defendant has engaged in an unfair business practice, has been unjustly enriched and has converted the use of its customers' ASIC devices and electricity.

4. As a result of Defendant's scheme, Plaintiff and the class members were injured in fact and suffered ascertainable and out-of-pocket losses.

## THE PARTIES

5. Plaintiff Gor Gevorkyan is a resident of Los Angeles County, California. He purchased Bitmain ASIC devices, including the AntMiner S9 for the

purpose of mining crypto currency for his personal financial benefit in approximately January 2018. The Product was difficult to configure. It took him a substantial amount of time to properly configure the ASIC devices. During this time, the ASIC devices were pre-configured to mine and deliver crypto currency to Defendant. Also during this time, the ASIC devices operated at full power mode, consuming a substantial amount of electricity at Plaintiffs' expense. The ASIC devices were mining crypto currency from the moment Plaintiff started the device and it would transfer any electronic crypto currency mined to Defendant. This continued until the ASIC devices were associated with Plaintiff's personal crypto currency account.

6. Defendant Bitmain, Inc. is a Delaware corporation with its principal place of business at 251 High Street, Suite B, Palo Alto, California 94301.

7. Defendant Bitmain Technologies, Ltd. is a Chinese corporation with its principal place of business in Beijing, China.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Bitmain, Inc. maintains its principal place of business in Santa Clara County.

## FACTUAL ALLEGATIONS

**A. Crypto Currency**

10. Crypto currency is a form of digital currency using cryptography to secure electronic transactions and to control the creation of new virtual currency units. Popular forms of crypto currency include Bitcoin, Bitcoin Cash, Peercoin and Unobtanium.

11. Bitcoin is by far the most popular form of crypto currency created as a new worldwide payment system in 2009. In the last several years, Bitcoin has become a preferred currency for many consumers and is accepted as a form of payment by many online retailers and service providers.

12. Though crypto currency is a form of "virtual currency," the value of a crypto currency is very real. Bitcoin for example trades in currency markets at a rate of 1 Bitcoin to approximately $6,345.16 (last updated November 13, 2018).

13. The market for crypto currencies is known to be extremely volatile and subject to manipulation by large players in the market. For example, Defendant has admitted to engaging in a practice of destroying or "burning" virtual currency for the purpose of reducing the supply of the currency and raising its value. *See* https://www.ccn.com/bitmain-will-burn-12-of-bitcoin-cash-tx-fees-calls-on-other-miners-to-follow-suit/ ("By reducing the total supply of Bitcoin Cash in circulation, Bitmain believes that it can reduce sell pressure on the coin, ultimately making it more valuable.").

14. New crypto currency is created as a reward for a process known as mining. People compete to "mine" virtual currencies using computing power to solve complex math puzzle. These solutions are then used to encrypt and secure the crypto currency. The computers or pools of computers which are the first to solve these puzzles are rewarded with new crypto currency.

15. Once earned, virtual currency is stored in a digital wallet associated with the computing device that solved the puzzle.

16. Virtual currency mining is a passive process. These math puzzles are solved by computers using computer power. They do not require any calculations by the person mining the currency. As competition to create more virtual currency has increased, the mathematical puzzles have become more complex, making virtual currency more difficult to obtain. Computers that were once capable of efficiently mining Bitcoin could now take centuries to obtain the same results.

17. A mining pool is the pooling of resources by virtual currency miners, who share their processing power over a network, to split the reward equally, according to the amount of work they contributed to the probability of solving the puzzles. Mining in pools developed in response to the massive increase in difficulty of virtual currency mining.

18. As interest in virtual currency mining has increased in recent years, so did the technology used to mine the currency. Initially, virtual currency was primarily mined by personal computers without any additional hardware. Later, video graphics cards were found to solve these math puzzles more quickly. Finally, dedicated mining devices called ASICs became the standard device for virtual mining.

19. ASIC devices can perform billions of calculations per second to try and crack the cryptographic puzzle that yields new Bitcoins.

20. ASIC devices consume so much electricity that their value to the customer is dependent in large part on the customer's local electricity costs. Indeed, it may take months or years to earn back the cost of purchasing and operating an ASIC device in virtual currency depending on the users' local electrical costs.

21. As competition and the technology to mine virtual currency improves, the costing of minting new virtual currency increases tremendously. It has been reported that the cost to mine virtual currency increased tenfold between 2016 and 2017 alone.

**B.   Bitmain ASIC Devices**

22. Founded in 2013, Bitmain markets and sells ASIC devices internationally. Far and away, Bitmain dominates the ASIC device industry.

23. Bitmain is also the largest single miner of virtual currency in the world. Bitmain operates Antpool, the largest Bitcoin mining pool in the world. Defendant is also the largest competitor to each of its ASIC device customers because it maintains its own virtual currency mining accounts.

24.     Bitmain operates virtual currency mining "farms" in locations where electricity costs are extremely low, including Russia and Inner Mongolia.  Bitmain operates more than 100,000 ASIC devices on these farms.



*Photo of Bitmain Inner Mongolia Virtual Currency Farm. Reportedly operating 25,000 ASIC devices mining Bitcoin and other virtual currencies around the clock every day.*

25.

26.     Analysts estimate that Bitmain made $3 - $4 billion in operating profits in 2017.

27.     Defendant markets and sells a number of ASIC devices that work using the same or similar interface and setup procedures. At any given time, the devices range in price based on the speed with which they can perform calculations. Moreover, because the value of an ASIC device is so closely linked to its ability to generate virtual currency through sheer processing power, Bitmain varies the price of its ASIC devices based on the current trading price of Bitcoin, a leading form of crypto currency.



*Bitmain Bitcoin Mining Device AntMiner S9*

28. Compared to other computer components, ASIC devices consume an enormous amount of energy when operating at full speed. For example, the AntMiner S9 pictured above is rated at 1375 watts of power, while a standard light bulb is rated at only 60 to 100 watts. Because of these extremely high operating costs, it is necessary to consider operating costs and local electricity prices in determining the value of an ASIC device.

29. Bitmain ASIC devices can often take an extremely long time to initiate. The initialization process can take many hours and up to several days to complete.

30. Defendant uses its customers' ASIC devices and customers' electrical power sources to enrich itself at the expenses of its customers.

31. Until approximately two years ago, Bitmain ASIC devices started in low power mode, while the customer linked the device to her virtual currency account. Only after the setup process was complete, would the devices fully power up and channel incoming virtual currency to the owner's virtual currency account. While the custumer was initiating the setup procedures, the ASIC devices were not mining virtual currency for anyone and were not consuming large amounts of electricity. There was no default account setting to which virtual currency mined during the setup process was directed and transferred.

32. Recently, Bitmain modified the startup procedure for its ASIC devices such that the devices immediately start in full power high energy consumption mode before the customers' account is linked to the device and stay in that mode until the setup process is complete. Moreover, the default account setting on the Bitmain ASIC devices is set to contribute to Bitmain's own account on its own Antpool server. As a result of this new practice, Bitmain ASIC devices cost more to operate during the setup phase and transfer virtual currency to Defendant rather than the customers.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Bitmain ASIC devices.

34. Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased Bitmain ASIC devices in California ("the California Subclass").

35. The Class is so numerous that joinder of all members is impractical. On information and belief, the Class includes more than one hundred thousand members.

36. The Class is ascertainable because the Class Members can be identified by objective criteria – the purchase of Bitmain ASIC mining devices during the Class Period. Individual notice can be provided to Class Members "who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

37. There are numerous questions of law and fact common to the Class which predominate over individual actions or issues, including but not limited to:

   (a) Whether Defendant engaged in an unfair business practice;
   (b) Whether Defendant was unjustly enriched by its conduct;
   (c) Whether Defendant converted the use of ASIC devices to its own ends;
   (d) Whether Class Members suffered an ascertainable loss as a result of Defendant's misrepresentations; and
   (e) Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive, monetary relief and/or costs and attorneys' fees, and if so, the amount and nature of such relief.

38. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the

Class. Plaintiff and all members of the Class have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

39. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and his counsel.

40. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members.

## First Cause of Action
## Violation of the "Unfair Prong" of the Unfair Competition Law
## By California Class Against All Defendants

41. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

42. Plaintiff brings this Count on behalf of the California Subclass.

43. The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

44. Defendant violated the "unfair" prong of the UCL in that their conduct is substantially injurious to customers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

45. Defendant's practices as described herein are of no benefit to consumers who are tricked into mining virtual currency for the benefit of Bitmain instead of themselves.

46. As a direct and proximate result of these acts, Bitmain's customers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unfair prong" violation because Bitmain used its customers' ASIC devices and required them to incur operating expenses while mining virtual currency not for their own benefit, but for the benefit of Bitmain.

47. Pursuant to Bus. & Prof. Code §17203, Plaintiff, and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all expenses incurred as a result of Bitmain's unfair and deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## Second Cause of Action
## Unjust Enrichment
## Against All Defendants

48. Plaintiff repeats and realleges the foregoing paragraphs.

49. Plaintiff brings this claim on behalf of the class against all Defendants. Defendant has been unjustly enrichment by the conduct described above.

50. Unjust enrichment requires the receipt of a benefit and unjust retention of the benefit at the expense of another.

51. Defendant received the benefit of class members computer power while the operating expenses, including electricity fell on Class members rather than Defendant.

52. Defendant should be required to disgorge all monies, profits and gains which it has obtained and will unjustly obtain at the expense of Plaintiff and the Class and reimburse Plaintiff and the class for the operating expenses of their ASIC

devices during the time in which Defendant received benefits from Class members' ASIC devices.

### Third Cause of Action
### Conversion
### Against All Defendants

53. Plaintiff repeats and realleges the foregoing paragraphs.

54. Plaintiff brings this claim on behalf of the class against all Defendants. Defendant has converted the use of Plaintiff's and Class members' ASIC Devices.

55. Defendant should be required to disgorge all monies, profits and against which it has obtained from the conversion and reimburse Plaintiff and other Class members for the operating expenses of their ASIC devices during the time in which Defendant received benefits from Class members.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action;

B. For an order declaring that the Defendant's conduct violates the statutes and common law claims referenced herein;

C. Awarding restitution, compensatory damages and/or disgorgement in favor of Plaintiff, members of the Class, and the California Class against Defendant for all harm suffered as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

D. Awarding injunctive relief against Defendant to prevent Defendant from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E. For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F. Awarding Plaintiff and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G. Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated: November 19, 2018                FRONTIER LAW CENTER

/s/ Karo Karapetyan
Robert Starr (183052)
Adam Rose (210880)
Karo Karapetyan (318101)
23901 Calabasas Rd, Suite 2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433
E-Mail:    robert@frontierlawcenter.com
           adam@frontierlawcenter.com
           karo@frontierlawcenter.com

Attorneys for Plaintiff