**FRONTIER LAW CENTER**
Robert L. Starr (183052)
robert@frontierlawcenter.com
Adam M. Rose (210880)
adam@frontierlawcenter.com
Karo G. Karapetyan (318101)
karo@frontierlawcenter.com
23901 Calabasas Road, Suite 2074
Calabasas, California 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

**POMERANTZ LLP**
Jordan L. Lurie (130013)
jllurie@pomlaw.com
Ari Y. Basser (272618)
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
Facsimile: (310) 861-8591

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (298219)
chris@marlboroughlawfirm.com
445 Broad Hollow Road, Suite 400
Melville, NY 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952

Attorneys for Plaintiff Gor Gevorkyan

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gor Gevorkyan on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Bitmain, Inc., Bitmain Technologies, Ltd. and DOES 1 to 10,<br><br>Defendants. | Case Number: 3:18-cv-07004-JD<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**<br><br>Date:        December 19, 2019<br>Time:        10:00 a.m.<br>Judge:       Hon. Judge James Donato |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ............................................................................................. 1

II.    RELEVANT FACTS ........................................................................................ 3

    A. The Parties....................................................................................................... 3

    B. Plaintiff's Claims............................................................................................. 5

    C. Bitmain's Substantial Contacts with California ............................................. 6

III.   LEGAL STANDARD ...................................................................................... 10

IV.    ARGUMENT .................................................................................................. 11

    A. Bitmain Is Subject to Specific Personal Jurisdiction ...................................... 11

        1. Bitmain's Intentional Acts ......................................................................... 12

        2. Bitmain Expressly Aimed its Conduct at California Residents ............................ 12

        3. Bitmain Knowingly Caused Harm In California ...................................................... 15

        4. Personal Jurisdiction Over Bitmain is Constitutionally Reasonable ...................... 15

    B. Bitmain Is Subject to General Jurisdiction...................................................... 16

    C. Bitmain's Browsewrap Terms of Service Are Unenforceable And Are Not Relevant to This Motion................................................................................................................ 18

    D. Plaintiff's Nationwide Class Allegations Should Not Be Struck................................... 18

V.     CONCLUSION................................................................................................ 20

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

### Table of Authorities

**Cases** .................................................................................................................... **Page(s)**

*Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815 (N.D. Ill. 2018) .......................................... 20

*AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) ................................. 20

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) ......................... 15

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) .......................... 15

*Bristol-Myers Squibb Co. v Superior*, 137 S. Ct. 1773 (2017) ...................................... 19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................. 15

*Cabrera v. Bayer Healthcare, LLC*, No. LACV1708525JAKJPRX, 2019 WL 1146828 ........... 20

*Calder v. Jones*, 465 U.S. 783 (1984) ......................................................................... 11

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013) ............................... 18

*Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D 405 (C.D. Cal. 2005) ...................................... 19

*Curran v. Bayer Healthcare LLC*, 2019 US Dist LEXIS 15362 (ND Ill Jan. 31, 2019, No. 17 C 7930) .......................................................................................................................... 20

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) ................................... 13

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ................................................... 10, 16

*Diaz v. Bautista*, 2010 US Dist LEXIS 153018, at *8 (CD Cal Oct. 20, 2010) ........................ 12

*Fitzhenry-Russell v. Dr. Pepper Snapple Group*, 2017 US Dist LEXIS 155654 (ND Cal Sep. 22, 2017, No. 17-cv-00564 NC) ............................................................................................ 19

*Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387 ........................................ 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) .................. 11

*In re Charles Schwab Corp. Secur. Litig.*, 257 F.R.D 534 (N.D. Cal. 2009) .............................. 19

*McGhee v. N. Am. Bancard, LLC*, 755 F App'x 718 (9th Cir 2019) ............................................ 18

*Nguyen v. Barnes & Noble Inc.*, 763 F3d 1171 (9th Cir 2014) .................................................. 18

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir.2006) ............................................... 10, 12

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ........................... 10, 12

*Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981 (N.D. Cal. 2015) ............... 20

*Shaffer v. Carter*, 252 U.S. 37 (1920) ........................................................................ 14

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

*Starlight Intl., Ltd. v. Lifeguard Health, LLC*, 2008 US Dist LEXIS 58927, at **13-14 (ND Cal July 22, 2008).......................................................................................................................... 12

*Stomp, Inc. v. NeatO, LLC,* 61 F. Supp. 2d 1074 (C.D. Cal. 1999)................................................ 13

*Tech Heads, Inc. v. Desktop Serv. Ctr.*, 105 F. Supp. 2d 1142 (D. Or. 2000) ............................... 13

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)............................................................... 15

*Valencia v. Volkswagen Group of America, Inc.*, 2015 U.S. Dist. LEXIS 105545 (N.D. Cal. Aug. 11, 2015, No. 15-CV-00887-HSG) ........................................................................................... 18

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 US Dist LEXIS 144088 (ND Cal Oct. 4, 2012, No. C 12-02912 SI)..................................................................................................... 12

*Wallach v. Johnson*, 2019 US Dist LEXIS 174272 (D Ariz Oct. 7, 2019, No. CV-19-04564-PHX-DJH)................................................................................................................................... 15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................... 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir.2006)  11

**Statutes**

FRCP 12................................................................................................................................... 10

FRCP 4..................................................................................................................................... 10

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1    Plaintiff Gor Gevorkyan ("Plaintiff"), individually and on behalf of all others similarly

2    situated, by and through his counsel, respectfully submits this memorandum of law in opposition

3    to Defendant Bitmain Technologies, Ltd.'s ("Bitmain" or the "Company") Motion to Dismiss for

4    lack of personal jurisdiction and to strike Plaintiff's nationwide class allegations ("MTD").

**I.    INTRODUCTION**

6    Plaintiff's First Amended Complaint ("FAC") alleges that Bitmain shipped its ASIC

7    devices to customers in California with a default configuration that mined cryptocurrency in

8    California using California customers' electricity, generated from California power companies,

9    and using California internet service, generated from California internet providers, for the benefit

10   of Bitmain rather than the California customers who rightfully owned those devices. Like the

11   ancient Greek soldiers smuggled past the gates of Troy in a wooden horse, Bitmain delivered

12   ASIC devices into California with default configuration settings that were set to exploit their

13   unwitting recipients in California (hereafter, "Bitmain's Trojan Horse Scheme"). Moreover,

14   Bitmain engaged in what it refers to as "secret mining" practices by intentionally using ASIC

15   devices purchased by Plaintiff for its own financial benefit prior to shipping those devices to

16   California (hereafter referred to as Bitmain's "Secret Mining Scheme"). These allegations alone

17   are sufficient to establish specific jurisdiction over Bitmain in California.

18   Specific jurisdiction is further maintained based on Bitmain's extensive marketing,

19   advertising, sales, and service of its ASIC devices in the State of California. In an effort to skirt

20   the jurisdiction of this Court, Defendant Bitmain has submitted a memorandum of law and a

21   sworn declaration from a Bitmain executive containing numerous provably false statements

22   denying Bitmain's extensive contacts with California, namely, that Bitmain: (1) does not

23   maintain sales or service networks within the State of California; (2) does not target its

24   marketing or solicitations toward California residents; (3) does not advertise its products in

25   California; (4) does not use real estate or maintain any place of business in California; and (5)

26   does not have any employees in California. There is ample evidence to the contrary.

27   Bitmain's MTD suggests that Plaintiff is conflating the California contacts of Bitmain

28   with those of its sister company, Bitmain, Inc., which is solely a research and development

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1    company.  Plaintiff presently takes no position on whether this Court has jurisdiction over the

2    dismissed entity, Bitmain, Inc. The analysis of this Court's jurisdiction over Bitmain is distinct

3    and turns on its sale and service operations within the State of California, rather than the research

4    and development activities of its sister company.

5            In fact, Defendant Bitmain proudly touts its service and marketing operations to

6    Bitmain's current and future California customers on its website, on its social media platforms

7    (including Twitter, Facebook, YouTube and on its own blog), and at a recent California Crypto

8    Mining Forum that it sponsored in Santa Clara, California, a few miles from Bitmain's San Jose

9    sales office, located in the heart of Silicon Valley (often referred to as "the mecca for

10   international tech industry").

11           Defendant Bitmain has claimed to have an office in San Francisco, and Bitmain's San

12   Jose sales office serves as the central hub for Bitmain's North, Central, and South America

13   ("NCSA") sales network. A top Bitmain executive and speaker at Bitmain's California Crypto

14   Mining Forum works in San Jose, and the company actively and publicly recruits Sales

15   Specialists to work at its San Jose sales office to facilitate its online sales of ASIC devices.

16   Moreover, the Company promotes the sale of its ASIC devices to customers in the United States

17   by touting the convenience of its ASIC device repair center in Fremont, California.

18           Bitmain's substantial, continuous, and systematic contacts with California also subject

19   Bitmain to general jurisdiction in this forum. Therefore, it is appropriate for Bitmain to be haled

20   into court in California to answer for its activities here, and to treat California as Bitmain's home

21   for the purposes of general jurisdiction.

22           Finally, the Court should deny that portion of Bitmain's motion requesting the Court to

23   strike Plaintiff's nationwide class allegations. Bitmain relies on the *Bristol-Meyers* case, but that

24   was a mass tort case concerning named plaintiffs with no connection to the forum state. The case

25   does not apply to class actions or to cases where the only named plaintiff is a resident of the

26   forum state who purchased and used the defendant's products in the forum state.

27   ///

28   ///

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

## II.   RELEVANT FACTS

### A.  The Parties

This is a prospective class action against Defendant Bitmain, a corporation internationally headquartered in Beijing, China, which maintains its United States sales headquarters in San Jose, California. *See* Declaration of Christopher Marlborough ("Marlborough Decl."), Exh. 1, Bitmain.com Contact Us webpage. According to Bitmain's recruiting notice for a Sales Specialist in Bitmain's NCSA sales office in San Jose, Defendant "Bitmain Technologies Ltd. is the world's leading manufacturer of Bitcoin mining hardware and other related services," [and] "has offices in … San Francisco").  Marlborough Decl., Exh. 2, LinkIn.com Sales Specialist, Job Posting for Bitmain Technologies, Ltd. at 2. Bitmain manufactures and sells Application Specific Integrated Circuit or "ASIC" devices under the Antminer brand name, which are used by Bitmain and its customers for mining cryptocurrency in California and throughout the United States.[1] Bitmain sells ASIC devices on its highly interactive website, from which California customers log in, place orders, check order status, track shipping, calculate shipping costs, receive product support, create a repair ticket, engage in online chat with sales and support specialists, and complete interactive customer satisfaction surveys.[2]

Plaintiff is a California customer who purchased several Bitmain ASIC devices from the State of California, for the purpose of mining cryptocurrency in California. S*ee* Declaration of

---

[1] Defendant Bitmain admits that its sister company, non-defendant Bitmain, Inc., is a research and development California corporation with its principal place of business in San Jose, California.  *See* Liu Decl. at ¶ 19 ("Bitmain, Inc. does not have any sales personnel and is not involved in Bitmain's business of selling ASIC devices."). Both Defendant Bitmain and non-defendant Bitmain, Inc. are wholly owned subsidiaries of Bitmain Technologies Holdings Company ("Bitmain Holdings). *See* Liu Decl. at ¶ 17; *see also* Marlborough Decl. Exh. 3, Application Proof of Bitmain Holdings in connection with its initial public offering, at page 143. Both companies share office space at the San Jose NCSA headquarters. *See* Marlborough Declaration, Exh. 2, Bitmain Technologies, Ltd. LinkedIn Sales Specialist Job posting. Bitmain, Inc. was a defendant in this action, but Plaintiff dismissed Bitmain, Inc. without prejudice pursuant to an agreement between the Parties.

[2] *See* Marlborough Declaration, Exh. 4, Bitmain Support Webpages, available at https://service.bitmain.com/support/contact and pages linked thereto (last visited October 18, 2019).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1   Gor Gevorkyan filed herewith ("Gevoryan Decl.") at ¶¶ 2-4.  Between approximately November

2   2016 and March 2018, Plaintiff purchased numerous ASIC devices from Burbank, California

3   both directly from Bitmain through its highly interactive website and from a third-party. *See Id*.,

4   ¶ 3-4. The ASIC devices he purchased directly from Bitmain were delivered to him in California

5   approximately three months after placing each of his orders. *Id*., ¶ 5. Plaintiff received those

6   ASIC devices in poor and used condition. *Id*.  He observed that the devices looked worn out and

7   had dust all over them, along with some dents and scrapes. *Id*.

8          Plaintiff setup and used the ASIC devices to mine cryptocurrency in California. *See Id*., ¶

9   6.  All of the Bitmain ASIC devices he purchased, including those acquired from a third-party

10  reseller, were preconfigured to deliver cryptocurrency to Bitmain during the extensive setup

11  process. *See Id*., ¶ 9.  During this time, Bitmain derived benefit from the use of Plaintiff's ASIC

12  devices in California while requiring him to pay substantial electricity costs to his local power

13  companies, including Burbank Water and Power, the Los Angeles Department of Water and

14  Power, and Southern California Edison. *See Id*., ¶¶ 7, 10. During the setup period the ASIC

15  devices also used the internet service that Plaintiff purchased from Charter Communications, his

16  local internet service provider in California. *See Id*., ¶ 8. Several of the devices were defective,

17  most likely due to the harsh conditions under which Bitmain used the devices for its own benefit

18  after the sale to Plaintiff. *See Id*., ¶¶ 11-13. Plaintiff visited Bitmain's website and found a

19  customer service phone number, which he recognized as a standard United States phone number

20  because it had ten digits, including a three digit area code and a seven digit number. *See Id*., ¶ 12.

21  Plaintiff called that phone number and spoke with Bitmain's customer service about the

22  defective devices, and they informed him to keep the devices running for a few days in order to

23  determine if the devices were actually defective. *Id*.   During that time, the devices mined

24  cryptocurrency for Bitmain instead of Plaintiff.  *Id*.

25          Like Bitmain's other customers in the United States, Plaintiff fell prey to Bitmain's

26  fraudulent Secret Mining Scheme after his purchase and prior to delivery of the devices, and

27  Bitmain's fraudulent Trojan Horse Scheme after Bitmain delivered the devices to him.

28  ///

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

**B.  Plaintiff's Claims**

The FAC includes claims for unjust enrichment, conversion and trespass to chattel on behalf of a nationwide class of purchasers of Bitmain's ASIC devices. FAC at ¶¶ 81-91. The FAC also asserts claims for violations of the unfair and fraudulent prongs of the California Unfair Competition Law on behalf of a subclass of California purchasers of Bitmain's ASIC devices (the "California Subclass"). *See Id.* at ¶¶ 92-116. The claims concern both Bitmain's Secret Mining Scheme and Bitmain's Trojan Horse Scheme.

First, with respect to Bitmain's Secret Mining Scheme, Bitmain extracts the value from new ASIC devices by delaying shipment of those products to its customers in California and throughout the United States and using the devices purchased by its customers to mine cryptocurrency for itself, during the short window of time when the devices are capable of generating the most income.[3] Bitmain describes this practice as "secret mining." According to Bitmain:

> 'Secret mining' is a practice whereby an ASIC manufacturer may mine with newly developed equipment prior to selling or distributing such equipment to customers. This has been criticized as conferring an unfair market advantage to ASIC manufacturers over individual community member miners.

*See* Marlborough Decl., Exh. 5, Our Transparency Policy for Shipping and Mining Practices dated July 25, 2018, at 2. Available at 2 of 7.  Available at *https://blog.bitmain.com/en/transparency-policy-shipping-mining-practices/* (viewed on October 12, 2019).

Second, through Bitmain's Trojan Horse Scheme, the Company continues to use its customer-purchased ASIC devices to mine cryptocurrency for itself after delivery to Plaintiff and other customers in California. *See* FAC at ¶¶ 54-61. Until approximately September 2015, Bitmain maintained a lawful practice by which its customers' newly delivered ASIC devices started in low energy consumption mode and contained no preconfigured setting to mine cryptocurrency for anyone. *Id.* at ¶ 58. The customer then configured the devices to deliver

---

[3] For an explanation of the economics relating to cryptocurrency mining, Plaintiff refers to the FAC at ¶¶16-38.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

cryptocurrency to the customers' cryptocurrency account, at which time the ASIC devices would boot up in high energy consumption mode, which is necessary to mine virtual currency. *Id*.

In or around September 2015, Bitmain changed that practice so that the devices now start in high energy consumption mode. *Id*. at ¶ 59. At the same time, Bitmain changed the default configuration for its ASIC devices to ensure that the devices mined cryptocurrency not for its customers, but for its customers' largest competitor – Bitmain *itself*. *Id*. at ¶ 60. Bitmain now requires its customers to pay the local power companies for the substantial electricity consumption costs incurred during the configuration period, and exploits its customers' internet service while the ASIC devices are mining cryptocurrency for Bitmain in California. *Id*. at 61.

### C.  Bitmain's Substantial Contacts with California

Bitmain argues that the Court lacks personal jurisdiction over the Company because it is a foreign corporation whose only purported contact with California is a website from which California customers can order products. *See* MTD at 3. Bitmain, however, misleads this Court in an attempt to conceal the truth about its substantial presence and ongoing product sales activities in California.

Bitmain maintains that it has no employees and no office in California.[4] Not so. Bitmain maintains its NCSA sales office in San Jose, California, which it shares with Bitmain, Inc. Bitmain does not conceal this information from anyone but the Court. *See* Marlborough Decl. Exh., 1, Bitmain Website Contact Us page at 3; Marlborough Decl. Exh. 2, LinkedIn job posting at 1. It has also claimed to have an office in San Francisco. *Id*. at 2. The Company publicly lists its San Jose sales office on its website, on social media and in its promotional material relating to its continued expansion into the United States market, which it recently described as a "key market[] for its overseas business."[5] Indeed, on Bitmain's website, the very same website from

---

[4] *See* Liu Decl. at ¶¶ 6-7 ("Bitmain does not own, use, lease, or possess any real estate in the state of California, nor does it maintain a place of business in the State of California.")*; see also* Bitmain MTD at 1 ("None of Bitmain's employees resides in California or works here."), 3.

[5] *See* Marlborough Declaration, Exh. 3, Application Proof of Bitmain to Hong Kong Stock Exchange at 126 (identifying the United States a key market); Exh. 1, Bitmain Website: "Contact Us" Page (located at https://www.bitmain.com/contact) (listing the San Jose Sales office address

which customers place their orders for the company's ASIC devices, the Company directs customers to its sales office located in San Jose, California at the following address:

> USA
> San Jose, California
> 300 Park Ave, STE300,
> San Jose, CA 95110, USA
> Email: sales.ncsa@bitmain.com

*See* Marlborough Decl., Exh. 1, Bitmain Website: "Contact Us" Page. The same sales office address in San Jose, California, and e-mail address, are listed on Defendant Bitmain Technologies Limited's official YouTube.com channel in a video entitled "A Look Inside Bitmain."[6] The video, posted five months ago, is available at

https://www.youtube.com/channel/UCrjWmBeM0ezBsrPiHvUoeag/videos (viewed on October 14, 2019), and includes the caption:

> Here's a sneak peek into what goes on in Bitmain and our office ***in San Jose, California***! A company that offers you innovative brands such as Antminer and AntBox, taking cryptocurrency mining to greater heights!" (emphasis added).

Bitmain's YouTube.com channel is designed to promote the sale of Bitmain ASIC devices at issue in this case, and includes videos entitled "How to Make Purchase on the Bitmain Website," and "Setting Up your Newly Received Antminer S9." *See* Marlborough Decl., Exh. 6, Bitmain YouTube Channel, Videos Page.

In yet another attempt to deceive this Court, Bitmain falsely maintains that it has no employees in California. *See* MTD at 1 ("None of Bitmain's employees resides in California or works here"). Bitmain also falsely claims that it does not maintain sales or service networks in California. *See* Liu Decl. at ¶ 6 ("Bitmain does not operate sales or service networks within the State of California"). Bitmain indeed has employees in California, and those employees maintain Bitmain's sales and service networks in California for the entire NCA region.

---

alongside the email address ncsa.sales@bitmain.com) (visited October 14, 2019); see also Marlborough Declaration, Exh. 6, Bitmain YouTube Video Screenshots: A Look Inside Bitmain at .pdf page 4 (including the San Jose sales office address at the end of the video).
[6] *See* Marlborough Decl. Exh. 6, Bitmain Youtube Video Screenshots: A Look Inside Bitmain.[6]

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

Contrary to Mr. Lui's sworn statement, Bitmain Technologies Ltd.'s LinkedIn.com page reveals the Company's extensive recruitment of Sales Specialists for its San Jose sales office. *See* Marlborough Decl. Exh. 2 ("Bitmain Technologies is looking for a sales specialist to join US sales team, and support Bitmain sales team's development oversea."). The job responsibilities include: 1) communication with customers answering customer questions through e-mail and live chat; 2) "collecting on unpaid orders, collecting customer demands, fulfilling orders and improving the customer service experience;" 3) "cooperating with logistics department to help customers complete the custom clearance and receive their parcels;" and, 4) managing and maintaining "Newegg and Amazon seller portal." *See Id*. at 1. Moreover, Leo Peng, Bitmain's International Sales Manager indicates in his LinkedIn.com profile that he works for Bitmain in San Jose, California. *See* Marlborough Decl. Exh. 7, LinkedIn.com Peng Profile.

Further belying Bitmain's claim that its California contacts are limited to the operation of a website in China is the existence of Bitmain's repair center for the NCSA region located in Fremont, California. Bitmain's Support YouTube.com channel contains a video entitled "Antminer Repair Guide| Returning Your Antminer to BITMAIN for Repair."[7] In the video, Bitmain claims that it "has repair sites across the globe for you to choose from." The video provides instructions for creating a repair ticket on Bitmain's website and includes a link to the Bitmain Repair Guide. The Bitmain Repair Guide directs California customers to return products to Bitmain's repair site located in Fremont, California. *See* Marlborough Decl., Exh. 9, Bitmain Repair Guide at 4, located at https://service.bitmain.com/support/guide (visited October 14, 2019).

Bitmain also falsely claims that it does not target California residents in its marketing or solicitations. *See* Lui Decl. at ¶¶ 13 – 14. Bitmain asserts that it should not be required to "travel thousands of miles" to appear in this case. However, the Company sends its top ASIC device

---

[7] *See* Marlborough Decl. Exh. 8, Bitmain Support YouTube Channel, Videos Page, available at https://www.youtube.com/channel/UCOzm10_uGrt4BhfuMJbVfMA/videos (last visited Otober 14, 2019); s*ee also* Marlborough Decl. Exh. 8, Bitmain Support YouTube Channel, Antminer Repair Guide Video.  https://www.youtube.com/watch?v=9alp6w9m804 (last visited October 14, 2019).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1  sales and marketing executives to California to promote and sell ASIC devices in California, and
2  spends large sums of money to host a conference to promote the sale of its ASIC devices in
3  California.

4       For example, on August 31, 2019, Bitmain hosted a full day "California Crypto Mining
5  Forum." *See* Marlborough Decl. Exh. 10, California Crypto Mining Forum, Agenda. The event
6  was held at the Shenzhen Bay Innovation Center, less than seven miles from Bitmain's sales
7  office in San Jose, California. *See* Marlborough Decl., Exh. 11, Antminer_main Twitter Posts at
8  3 of 3; Marlborough Decl. Exh. 12, Google Maps page (providing directions from Bitmain San
9  Jose NCSA Sales Office to Shenzhen Bay Innovation Center).

10      The California Crypto Mining Forum was heavily promoted on Bitmain's social media
11 outreach pages, including on Facebook and Twitter. *See* Marlborough Decl., Exh. 11,
12 Antminer_main Twitter Posts.  For example, an August 16, 2019 Twitter Post from Bitmain
13 reads:

14      #CMF California Update: See the list of main speakers and topics focused on
        cryptocurrency mining optimization. Register now at https://bit.ly/312QGQ0 or
15      contact sales.ncsa@bitmain.com for further questions. Your Resource Gateway
16      Into Digital Mining!

17 *Id.* at 2.

18      The August 2019 California Crypto Mining Forum featured presentations from Bitmain's
19 top sales executives, who were responsible for the sales of the same ASIC devices at issue in this
20 case, including Bitmain's Antminer Regional Sales Director (NCSA), Customer Service
21 Manager, Managing Director of Marketing Sales & Service, and Leo Peng, Bitmain's Antminer
22 US Sales Manager. *See* Marlborough Decl. Exh. 10, California Crypto Mining Conference
23 Agenda. Fortunately for Mr. Peng, he did not have to travel thousands of miles to attend the
24 California Crypto Mining Forum, since he works less than seven miles away in Bitmain's sales
25 office in San Jose, California. *See* Marlborough Decl., Exh. 7, LinkedIn.com, Peng Profile.

26      The California Crypto Mining Forum was clearly directed at current and future Bitmain
27 customers in California who make up the prospective California subclass in this Action. Indeed,
28 Bitmain noted on its blog site that "[t]he California Crypto Mining Forum provided attendees

with in-depth analysis and insights on the cryptocurrency mining industry with a special focus on **how Bitmain provides enhanced services for current and future customers.**" *See* Marlborough Decl., Exh. 13, Bitmain Blog, California Crypto Mining Forum (emphasis added). Topics discussed at the California Crypto Mining Forum included: (1) Antminer Sales, Order and Purchasing; (2) Antminer Aftersales Service; (3) Improving Mining Profits in the United States; and (4) Electricity Fees, Factors Influencing Mining Profits. *See* Marlborough Decl., Exh. 10, California Crypto Mining Forum Agenda.

On Bitmain's online Blog and in other press, Bitmain touted its California Crypto Mining Forum as a huge success for the Company.[8] Nevertheless, Bitmain's in its MOL attempted to deceive this Court by claiming that its only connection to California was its operation of a website from Beijing, China.

## III.   <u>LEGAL STANDARD</u>

When a party moves for dismissal under FRCP 12(b)(2), it is the plaintiff who bears the burden of proving that personal jurisdiction exists by a preponderance of the evidence. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006). When a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Ibid*. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, "the court resolves all disputed facts in favor of the plaintiff." *See ibid.*; *see also, Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

When determining the bounds of their jurisdiction, federal courts ordinarily follow state law. *See* FRCP 4(k)(1)(A); *see also, Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Generally, a determination of personal jurisdiction is a two-step inquiry, but because

---

[8] *See* Marlborough Decl. Exh. 11, Bitmain Twitter post, dated September 4, 2019 ("The 4th Crypto Mining Forum was successfully held in California! Aligning with the new focus in providing enhanced resource management to customers, the #CMF event delivered innovated speeches while also pre-announcing an upcoming new miner.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1   "California's long-arm statute allows the exercise of personal jurisdiction to the full extent

2   permissible under the U.S. Constitution." (*Id*. at 125), the statutory inquiry necessarily merges

3   with the constitutional inquiry, and the two inquiries essentially become one. The question, then,

4   is whether the defendant has sufficient minimum contacts with the forum state such that "the

5   maintenance of the suit does not offend traditional notions of fair play and substantial justice."

6   *Id*. at 126 (citations omitted).

7           A defendant may be subject to two types of personal jurisdiction – specific and general.

8   Specific jurisdiction exists when the defendant's conduct or contact within the forum state is

9   "connected to the suit." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

10  414 n.8 (1984). General jurisdiction exists where the defendant engages in "continuous and

11  systematic" contacts with the forum state, without regard to whether those contacts concern the

12  claims in the case. *See id*. at 127.

13  **IV.    <u>ARGUMENT</u>**

14          **A.  Bitmain Is Subject to Specific Personal Jurisdiction**

15          *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) provides the general

16  rule where, as in California, the long arm statute extends as far as the Constitution will allow.

17  The forum state "does not exceed its powers under the Due Process Clause if it asserts personal

18  jurisdiction over a corporation that delivers its products into the stream of commerce with the

19  expectation that they will be purchased by customers in the forum State." *World-Wide*

20  *Volkswagen Corp.*, 444 U.S. at 298; *see also j2 Cloud Servs. v Fax87*, 2017 US Dist LEXIS

21  64064, at **10-11 [CD Cal Apr. 27, 2017, No. 13-05353 (DDP)(AJWx)]. Where, as here, the

22  underlying action sounds in tort, the court employs the "Calder Effects Test" to determine

23  whether a defendant has sufficient contacts with a forum state to be subject to specific

24  jurisdiction. *See Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the defendant allegedly

25  must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

26  harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La*

27  *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (*en banc*)

28  (citations omitted). Additionally, the Plaintiff must show that the exercise of jurisdiction

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

comports with due process. *See Schwarzenegger*, 374 F.3d at 802. Under this test, there is no requirement that the defendant have any physical contacts with the forum state. *Id*. at 803.

### 1. BITMAIN'S INTENTIONAL ACTS

In determining whether a party has engaged in an "intentional act," a court should "construe 'intent' as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id*. at 806.

In this case, the "intentional acts" are easily demonstrated by Defendant Bitmain's Trojan Horse and Secret Mining Schemes, whereby Bitmain: (1) preconfigured the devices to mine cryptocurrency in California for the benefit of Bitmain, while leaving Plaintiff to pay the local California electricity and internet service expenses; (2) used Plaintiff's devices to mine cryptocurrency for itself after he purchased them in California but before Bitmain delivered them to him; (3) provided logistical services from Sales Specialists in Bitmain's San Jose NCSA sales office; and, (4) serviced often defective devices at Bitmain's Fremont, California Repair Center.[9]

### 2. BITMAIN EXPRESSLY AIMED ITS CONDUCT AT CALIFORNIA RESIDENTS

The second part of the *Calder*-effects test requires that the defendant's conduct be expressly aimed at the forum. *See Pebble Beach*, 453 F.3d at 1156. First, California courts routinely hold that a defendant's maintenance of an online interactive website is sufficient to establish express aiming where the claims relate to online orders from that website. *See Diaz v. Bautista*, 2010 US Dist LEXIS 153018, at *8 (CD Cal Oct. 20, 2010) ("doing business via an interactive website with California citizens, as Cuervo has admitted to doing here, is sufficient to establish her purposeful direction to the State of California."). *Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 US Dist LEXIS 144088, at *10 (ND Cal Oct. 4, 2012, No. C 12-02912 SI) ("Vanity Shop argues that merely selling to California customers via its website is insufficient to confer personal jurisdiction. The Court disagrees."); *Starlight Intl., Ltd. v. Lifeguard Health, LLC*, 2008 US Dist LEXIS 58927, at **13-14 (ND Cal July 22, 2008)

---

[9] *See* Marlborough Decl., Exh. 9, Bitmain.com Webpage US-CA Service Center Information. As noted in paragraph 50 of the FAC, Bitmain's ASIC devices are often defective as a result of the harsh conditions in which Bitmain uses them after the customers purchase the product as new and before shipping to customers.  FAC at ¶ 50.

("Courts within the Ninth Circuit have concluded, however, that a company's use of an interactive website may constitute purposeful availment of a forum."); *Stomp, Inc. v. NeatO, LLC,* 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (holding that although the actual number of sales to California citizens may be small, the act of engaging in internet commerce with California citizens was sufficient to establish minimum contacts); *Tech Heads, Inc. v. Desktop Serv. Ctr.,* 105 F. Supp. 2d 1142, 1151 (D. Or. 2000) (holding that defendant "intentionally availed itself of jurisdiction" by "posting a highly commercial, highly interactive Web site on the World Wide Web, engaging in Internet commerce with at least one [forum state] resident").

The *Vanity.com* Court noted:

> Vanity Shop set out to engage with California customers through its website, where it sells goods and services, advertises, and presumably ships those goods to California customers and provides customer support and other services necessary to completing online transactions. [ ] Given the nature and quality of these contacts, Vanity Shop has purposely availed itself of personal jurisdiction in California.

*Vanity.com, Inc.*, 2012 US Dist LEXIS 144088, at *10. The *Vanity.com* case was decided after the *Nicastro*, *Worldwide Volkswagen*, *Boschetta* and *Cybersell* cases cited by Bitmain. *See* MTD at 9. Bitmain relies on cases in which courts held that maintaining a "passive" website is not sufficient to establish express aiming. *See* Bitmain MTD at 9, *citing Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (noting that a "passive website" is one which merely posts information" and the distinction between passive websites and interactive websites which can be sufficient to warrant the exercise of jurisdiction). In contrast, to the "essentially passive" website in *Cybersell*, Bitmain's highly commercial and highly interactive website allows customers to place orders for ASIC devices online through the website, receive technical support, log in to their account, review and modify orders, track shipping, obtain customs forms, engage in online chat with sales and support specialists, and complete interactive customer satisfaction surveys. *See* Marlborough Declaration, Exh. 4, Bitmain Support page.

Second, Bitmain's job posting for Sales Specialists in the San Jose NCSA sales office establishes that Bitmain employees in California facilitated customer orders in California and

throughout the United States by providing customer service, logistical, "custom clearance" services, and live chat from San Jose, California. *See* Marlborough Decl. Exh. 2, LinkIn.com Sales Specialist, Job Posting for Bitmain Technologies, Ltd. at 1.

Third, through its Trojan Horse Scheme, Bitmain shipped its used ASIC devices across the United States border and into California, with default configuration settings designed to cause economic harm to California customers from the moment they powered up the devices and connected them to the internet. The devices mined cryptocurrency for the benefit of Bitmain rather than its California customers, including Plaintiff, who owned and operated those devices in California. The ASIC devices caused California customers to incur charges to their local power companies in California.

Fourth, California imposes taxes on nonresident "income as is derived from…sources [within the State]." *Shaffer v. Carter*, 252 U.S. 37, 57 (1920). In this case, Bitmain acknowledges that a portion of its total U.S. sales are to residents of California. *See* Liu Decl. at ¶ 15. Yet, while the ASIC devices were mining cryptocurrency for Bitmain's benefit in California, Bitmain admits that it paid no taxes of any kind to the State of California. *Id*. at ¶ 9. In this regard, the victims of Bitmain's misconduct include both the State of California and Bitmain's customers within the State.

Fifth, as set forth above, and contrary to the false claims of the company, Defendant Bitmain Technologies Ltd. maintains a sales office for the sale of ASIC devices for the entire NCSA region in San Jose, California. *See* Marlborough Decl., Exh. 1, Bitmain.com Contact Us webpage. Bitmain hires Sales Specialists to work in its San Jose NCSA sales office and one of the Company's top sales executives works in the San Jose NCSA sales office. *See* Marlborough Decl., Exh. 7, LinkedIn.com, Peng Profile. Bitmain also promotes the sale of its ASIC devices in the State of California and maintains a repair center for the entire NCSA region in Fremont, California. *See* Marlborough Decl., Exh. 9, Bitmain Repair Guide at 4. These facts are sufficient to establish that Bitmain expressly aimed its sales and marketing activities to customers in California. Its denials to the contrary are demonstrably false.

///

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

///

### 3.   BITMAIN KNOWINGLY CAUSED HARM IN CALIFORNIA

"The final element" under Calder—likely harm—requires that [a defendant's] conduct caused harm that it knew was likely to be suffered in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 at 1131 (9th Cir. 2010)*; see also Wallach v. Johnson*, 2019 US Dist LEXIS 174272, at *12 (D Ariz Oct. 7, 2019, No. CV-19-04564-PHX-DJH). Bitmain knowingly caused harm to customers in the State of California. The Court in *Yahoo!* clarified that knowledge of harm can be established even if "the bulk of the harm" occurs outside the forum state. *See Yahoo!*, 433 F.3d at 1207. This element is satisfied when defendant's intentional act has "foreseeable effects" in the forum state. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

In the instant case, it was entirely foreseeable that Bitmain's conduct would cause harm to California and its residents by: (1) causing substantial impairment to both the device's functionality and economic value through Defendant's Secret Mining Scheme; (2) co-opting California customers' ASIC devices located in California to mine cryptocurrency through the Trojan Horse Scheme while using the customers' local California-based electricity and internet connections; and, (3) deriving income from its unauthorized mining activity within the State of California while failing to pay taxes on such income.

Without question, all of these acts caused harm within the State of California generally, and to Bitmain's California customers specifically. Simply put, there can be no legitimate dispute that Bitmain was fully aware that its California customers would, and did, suffer harm in California as a result of Bitmain's unlawful activities.

### 4.   PERSONAL JURISDICTION OVER BITMAIN IS CONSTITUTIONALLY REASONABLE

The final prong of the due process inquiry is intended to ensure that litigation "'is not so gravely difficult and inconvenient' that a party is unfairly at a 'severe disadvantage' in comparison to his opponent." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 478 (1985) citing *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

Here, the only purported burden faced by Bitmain in litigating this case in California is that its international headquarters is in China. However, Bitmain maintains its United States sales office in San Jose, California, and a top Bitmain sales executives works in San Jose. *See* Marlborough Decl. Exhs. 1, Bitmain.com Contact Us webpage, and 7, LinkedIn.com, Peng Profile. Plaintiff, on the other hand, has no connection to or presence in China and would face a heavy burden if he were forced to litigate this case in China. *See* Gevorkyan Decl. at ¶¶ 15, 17. To the extent Bitmain faces any substantial burden in litigating this matter in California – which it does not – such burden is mitigated by the fact that: (1) Bitmain has already been able to secure highly competent California counsel; and, (2) Bitmain unlawfully profits off the sale of its ASIC devices to California customers through its Secret Mining and Trojan Horse Schemes. It was always reasonably foreseeable to Bitmain that it could be haled into court in California based on its contacts with the forum state.[10]

Finally, Plaintiff is a California resident seeking redress for injuries which were connected to and suffered in California, and by seeking such redress, he has invoked the laws of California, and has provided California with a substantial interest in adjudicating this matter. Based on the foregoing, Bitmain would not be put at a severe disadvantage in comparison to the Plaintiff, and the exercise of personal jurisdiction over Bitmain would not run afoul of due process. Indeed, Bitmain's San Jose NCSA sales office is less than an hour's drive from the Courthouse. *See* Marlborough Decl. Exh. 12, Google Maps page (providing directions from Bitmain San Jose NCSA Sales Office to U.S. District Courthouse in San Francisco).

## B.  Bitmain Is Subject to General Jurisdiction

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the United States Supreme court noted that "a corporation's operations in a forum other than its formal place of incorporation or

---

[10] Plaintiff also points out that Bitmain has chosen to litigate outside of China, and is the named plaintiff in an action filed in the Western District of Washington.  *See* Marlborough Decl. Exh. 14, *Bitmain Technologies, Ltd. v. John Doe*, E.D. Wash., Case No. 2:18-cv-01626-TSQ, ECF No. 1 at 2:19-20. ("Bitmain is the world's largest designer of ASIC chips for Bitcoin mining and has offices throughout Asia, Europe, and the United States.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19; *see also Goodyear* 564 U.S. at 919 (finding a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations when their affiliations are sufficient to render them essentially at home in the forum state). Some examples of where a finding of general jurisdiction would ostensibly comport with due process include "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," "efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States," having its largest distribution of its product in the forum State, *or* the "continuous[] and deliberate[] exploit[ation]" of the forum State's market. *See, e.g., Daimler*, 134 S. Ct. at 755 n.7 (quoting *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (emphasis added); *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Calder*, 465 U.S. at 789-90; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780-81 (1984)). In this case, Bitmain has continuously and deliberately exploited California's market, which serves as the central hub of Bitmain's sales and service operations for two continents.

First, Bitmain admits on its website that its NCSA sales office is located in San Jose, and it is the only United States office indicated on Bitmain's Contact Us page. *See* Marlborough Decl. Exh. 1, Bitmain Contact Webpage (including sales.NCSA@bitmain.com email address). Bitmain also employs Sales Specialists and its NCSA Regional sales executive in the San Jose NCSA sales office and has claimed to have an office in San Francisco. *See* Marlborough Decl., Exh. 2, LinkedIn.com Sales Specialist job posting.

Second, further evidence that Bitmain is at home in California is that its only repair center in the Americas is located in Fremont, California. *See* Marlborough Decl., Exh. 9, Bitmain Repair Guide. Indeed, Bitmain most likely set up shop for its sales and service activities in the heart of Silicon Valley, often referred to as the "mecca of the technology industry," because that is the international center of activity for technology companies like Bitmain. When taking all of the foregoing facts into consideration, it becomes difficult to envision how Bitmain could in

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

good faith stand on its argument that it is not "at home" in California for purposes of general jurisdiction.

### C. Bitmain's Browsewrap Terms of Service Are Unenforceable And Are Not Relevant to This Motion

In support of the motion to dismiss for lack of personal jurisdiction, Bitmain submitted a copy of one of several browsewrap terms of service on its website, but produced no evidence that Plaintiff ever assented to it. *See* Gevorkyan Decl. at ¶ 14 (noting that he never consented to any of Bitmain's terms of service); *McGhee v N. Am. Bancard, LLC*, 755 F App'x 718, 720 ) (9th Cir 2019) ("NAB did not make a "prima facie" showing that McGhee assented to the User Agreement"). *Compare* Bitmain's browsewrap agreements located at https://account.bitmain.com/terms_service ("by using our Services you are agreeing to be bound by the following terms") (submitted as Lui Decl., Exh. 1) with https://www.bitmain.com/disclaimer ("by using our Services, you have acknowledged and agreed that …") (not submitted to the Court). In *Nguyen v Barnes & Noble Inc.*, 763 F3d 1171, 1176 (9th Cir 2014), the Court held that such browsewrap agreements are unenforceable. "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly a party instead gives his assent simply by using the website." (internal citations omitted). Moreover, Bitmain has not brought a motion to compel arbitration.  The terms of service Bitmain presented to the Court does not support Defendant's argument that the Complaint should be dismissed for lack of personal jurisdiction.

### D. Plaintiff's Nationwide Class Allegations Should Not Be Struck

Defendant seeks to strike Plaintiff's nationwide class allegations, arguing that any certified class should be limited to California residents. However, the motion is premature as such matters are more appropriate for determination at the class certification stage. *See Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387, *1, 10 (C.D. Cal. Feb. 19, 2013) (denying motion to strike nationwide class allegations, noting that "[d]efendant has yet to file an answer and discovery has not yet begun; given the early stage of the proceedings . . . it is premature to determine if this matter should proceed as a class action."); *Clancy v. The Bromley*

*Tea Co.*, 308 F.R.D. 564, at 572 (N.D. Cal. 2013) ("Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *Valencia v. Volkswagen Group of America, Inc.*, 2015 U.S. Dist. LEXIS 105545, at \*1 (N.D. Cal. Aug. 11, 2015) ("not a proper inquiry at the pleading stage.").

When evaluating a pre-discovery motion to strike class allegations pursuant to Rule 12(f), courts apply the standard otherwise applicable to a Rule 12(b)(6) motion to dismiss. *See Clark v. State Farm Mut. Auto. Ins. Co.,* 231 F.R.D. 405, 406 (C.D. Cal. 2005) ("when considering a motion to strike, this Court views the pleading in the light more favorable to the pleader.") (citation omitted). "A [m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Id.* at 406. Accordingly, Bitmain's motion should be denied because the FAC adequately alleges that class treatment of Plaintiff's claims is warranted. *Id.* Any doubts as to whether the class allegations should be stricken at this stage should be resolved in Plaintiff's favor. *See In re Charles Schwab Corp. Secur. Litig.,* 257 F.R.D. 534, 562 (N.D. Cal. 2009)(denying motion to strike class allegations and holding that "[i]f there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.").

Bitmain argues that the Supreme Court's decision in *Bristol-Myers Squibb Co. v Superior*, 137 S. Ct. 1773 (2017), requires the Court to strike Plaintiff's nationwide class allegations. However, that argument has no merit. First, *Bristol Myers* was not a prospective class action and the case does not extend to class actions. *See Fitzhenry-Russell v. Dr. Pepper Snapple Group*, 2017 US Dist LEXIS 155654, at \*15 (ND Cal Sep. 22, 2017, No. 17-cv-00564 NC) ("For all of its arguments, Dr. Pepper has not presented the Court with persuasive argument—much less binding law—compelling the extension of *Bristol-Myers* to class actions."). Justice Sonia Sotomayor squarely addressed this question in her dissent in *Bristol-Myers*. Specifically, she noted, "the Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *See Bristol-Meyers*, 137 S. Ct. at 1789 n.4. Indeed, a leading treatise states that most courts "have

concluded that *Bristol-Myers* does not apply to class actions." *See McLaughlin on Class Actions*, § 2.44 n. 5 (collecting cases).

Class actions are fundamentally different from mass torts actions, like the one at issue in *Bristol Myers*. The *Bristol Myers* case concerned a mass tort action where many of the named plaintiffs' claims were not connected to the forum state. This case has only one named plaintiff and his claims are clearly connected to the State of California. In a class action, like this one, the claims of unnamed class members are "irrelevant to the question of specific jurisdiction." *AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017); *see also Cabrera v. Bayer Healthcare, LLC*, No. LACV1708525JAKJPRX, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019) (same); *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 818-22 (N.D. Ill. 2018) (denying motion to strike nationwide class allegations); *Curran v. Bayer Healthcare LLC*, 2019 US Dist LEXIS 15362, at *9-10 (ND Ill Jan. 31, 2019, No. 17 C 7930) (same); *Fitzhenry—Russell*, 2017 U.S. Dist. LEXIS 155654, 2017 WL 4224723, at *5 ("[T]his factor materially distinguishes this action from *Bristol—Myers* because in class actions, the citizenship of the unnamed plaintiffs is not taken into account for personal jurisdiction purposes."  In *Al Haj*, the court explained that to apply *Bristol-Myers* to class actions would be to hold that "[a]lthough absent class members are *not* parties for purposes of diversity of citizenship, amount in controversy, Article III standing, and venue, they *are* parties for purposes of personal jurisdiction over the defendant." 338 F. Supp. 3d 815 at 820. The court concluded "[t]hat cannot be right." *See Id.*

Finally, in this case, even the claims of the unnamed class members are connected to California because Bitmain facilitates sales and provides service and support to customers throughout the United States from both its San Jose NCSA sales office and Fremont NCSA repair center. Therefore, Bitmain's request to strike Plaintiff's class allegations should be denied.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should deny Bitmain's Motion in its entirety. If the Court is inclined to grant Defendants' Motion for lack of personal jurisdiction, Plaintiff

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1   respectfully requests that he be afforded the opportunity to take jurisdictional discovery and/or

2   amend his complaint to address the Court's concerns.

3   ///

4   ///

5   Dated:  October 23, 2019                    FRONTIER LAW CENTER

6

7                                             */s/ Karo G. Karapetyan*
                                            Robert Starr (183052)
8                                           Adam Rose (210880)
                                            Karo G. Karapetyan (318101)
9                                           23901 Calabasas Rd, Suite 2074
                                            Calabasas, CA 91302
10                                          Telephone: (818) 914-3433
                                            Facsimile: (818) 914-3433
11                                          E-Mail:      robert@frontierlawcenter.com
12                                                       karo@frontierlawcenter.com
                                                         manny@frontierlawcenter.com
13

14                                          Jordan L. Lurie (130013)
                                            Ari Y. Basser (272618)
15                                          POMERANTZ LLP
                                            1100 Glendon Avenue, 15th Floor
16                                          Los Angeles, CA 90024
                                            Telephone: 310-405-7190
17                                          Facsimile: 917-463-1044
                                            E-mail:      jllurie@pomlaw.com
18                                                       abasser@pomlaw.com
19

20                                          Christopher Marlborough (298219)
                                            THE MARLBOROUGH LAW FIRM, P.C.
21                                          445 Broad Hollow Road, Suite 400
                                            Melville, NY 11747
22                                          Telephone: (212) 991-8960
                                            Facsimile: (212) 991-8952
23                                          E-Mail:      chris@marlboroughlawfirm.com
24

25                                          Attorneys for Plaintiff

26

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS