**FRONTIER LAW CENTER**
Robert L. Starr (183052)
robert@frontierlawcenter.com
Adam M. Rose (210880)
adam@frontierlawcenter.com
Karo G. Karapetyan (318101)
karo@frontierlawcenter.com
23901 Calabasas Road, Suite 2074
Calabasas, California 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

**POMERANTZ LLP**
Jordan L. Lurie (130013)
jllurie@pomlaw.com
Ari Y. Basser (272618)
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
Facsimile: (310) 861-8591

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (298219)
chris@marlboroughlawfirm.com
445 Broad Hollow Road, Suite 400
Melville, NY 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952

Attorneys for Plaintiff Gor Gevorkyan

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gor Gevorkyan on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>Bitmain, Inc., Bitmain Technologies, Ltd. and DOES 1 to 10,<br><br>    Defendants. | Case Number: 3:18-cv-07004-JD<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, REQUEST FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**<br><br>Date:   December 19, 2019<br>Time:   10:00 a.m.<br>Judge:  Hon. Judge James Donato |

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTS ........................................................................................... 2

        A.      The Parties .............................................................................................. 2

        B.      Plaintiff's Claims .................................................................................... 3

        C.      Bitmain's Substantial Contacts with California............................ 4

III.    LEGAL STANDARD........................................................................................... 8

IV.     ARGUMENT ...................................................................................................... 8

        A.      Bitmain Is Subject to Specific Personal Jurisdiction ........................... 8

                1.      Bitmain's Intentional Acts ........................................................ 9

                2.      Bitmain Expressly Aimed its Conduct at California Residents ................ 9

                3.      Bitmain Knowingly Caused Harm In California ...................... 11

                4.      Personal Jurisdiction Over Bitmain is Constitutionally Reasonable ........ 12

        B.      Bitmain Is Subject to General Jurisdiction ......................................... 12

        C.      Bitmain's Browsewrap Terms of Service are Unenforceable and Irrelevant ....... 13

        D.      Plaintiff's Nationwide Class Allegations Should Not Be Stricken...................... 14

V.      CONCLUSION................................................................................................... 15

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Haj v. Pfizer Inc.*,
    338 F. Supp. 3d 815 (N.D. Ill. 2018) .....................................................................15

*AM Trust v. UBS AG*,
    78 F. Supp. 3d 977 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017) .....................15

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir. 2000) .....................................................................11

*Brayton Purcell LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir. 2010) .....................................................................11

*Bristol-Myers Squibb Co. v. Superior*,
    137 S. Ct. 1773 (2017) .....................................................................2, 14, 15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .....................................................................12

*Cabrera v. Bayer Healthcare, LLC*,
    No. LACV1708525JAKJPRX, 2019 WL 1146828 (C.D. Cal. Mar. 6, 2019) .....................15

*Calder v. Jones*,
    465 U.S. 783 (1984) .....................................................................9

*Clancy v. The Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) .....................................................................14

*Curran v. Bayer Healthcare LLC*,
    No. 17 C 7930, 2019 US Dist LEXIS 15362 (N.D. Ill. Jan. 31, 2019) .....................15

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) .....................................................................10

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) .....................................................................8, 12

*Diaz v. Bautista*,
    2010 US Dist LEXIS 153018 (C.D. Cal. Oct. 20, 2010) .....................................................10

*Fitzhenry-Russell v. Dr. Pepper Snapple Group*,
    No. 17-cv-00564 NC, 2017 US Dist LEXIS 155654 (N.D. Cal. Sep. 22, 2017).....................14, 15

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .......................................................................................... 12

*Grodzitsky v. Am. Honda Motor Co.*,
    2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013) ....................................... 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ............................................................................................ 8

*In re Charles Schwab Corp. Secur. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ......................................................................... 14

*j2 Cloud Servs. V. Fax87*,
    No. 13-05353 (DDP)(AJWx), 2017 US Dist LEXIS 64064 (C.D. Cal. Apr. 27,
    2017) ..................................................................................................................... 9

*McGhee v. N. Am. Bancard, LLC*,
    755 F App'x 718 ................................................................................................... 13

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir 2014) ............................................................................... 13

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir.2006) ............................................................................. 8, 9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................. 8, 9

*Senne v. Kansas City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................. 15

*Starlight Intl., Ltd. v. Lifeguard Health, LLC*,
    2008 US Dist LEXIS 58927 (N.D. Cal. July 22, 2008) .......................................... 10

*Stomp, Inc. v. NeatO, LLC*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) ................................................................. 10

*Tech Heads, Inc. v. Desktop Serv. Ctr.*,
    105 F. Supp. 2d 1142 (D. Or. 2000) ................................................................... 10

*Valencia v. Volkswagen Group of America, Inc.*,
    2015 U.S. Dist. LEXIS 105545 (N.D. Cal. Aug. 11, 2015) ..................................... 14

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*,
    No. C 12-02912 SI, 2012 US Dist LEXIS 144088 (N.D. Cal. Oct. 4, 2012) ............ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wallach v. Johnson*,
   No. CV-19-04564-PHX-DJH, 2019 US Dist LEXIS 174272 (D. Ariz. Oct. 7,
   2019) ..................................................................................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).........................................................................................8, 9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir.2006) (*en banc*) ...............................................................9

**Statutes**

California Unfair Competition Law.......................................................................3, 4

**Rules**

FRCP 4(k)(1)(A).......................................................................................................8

FRCP 12(b)(2) ..........................................................................................................8

**Other Authorities**

*McLaughlin on Class Actions* ...............................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1  Plaintiff Gor Gevorkyan ("Plaintiff"), individually and on behalf of all others similarly

2  situated, by and through his counsel, respectfully submits this memorandum of law in opposition

3  to Defendant Bitmain Technologies, Ltd.'s ("Bitmain" or the "Company") Motion to Dismiss for

4  lack of personal jurisdiction and to strike Plaintiff's nationwide class allegations ("MTD").

5  **I.      INTRODUCTION**

6  Plaintiff's First Amended Complaint ("FAC") alleges that Bitmain shipped its ASIC

7  devices to customers in California with a default configuration that mined cryptocurrency in

8  California using its customers' electricity, generated from California power companies, and using

9  customers' California internet service provided by California internet providers, for Bitmain's

10 benefit rather than the California customers who rightfully owned those devices. Like the ancient

11 Greek soldiers smuggled past the gates of Troy in a wooden horse, Bitmain delivered ASIC

12 devices into California with default configuration settings that were set to exploit Bitmain's

13 recipients in California (hereafter, "Bitmain's Trojan Horse Scheme"). Moreover, Bitmain

14 engaged in what it refers to as "secret mining" practices by intentionally using ASIC devices

15 purchased by Plaintiff for its own financial benefit before shipping those devices to California

16 (hereafter, Bitmain's "Secret Mining Scheme").

17 Specific jurisdiction is maintained based on Bitmain's extensive marketing, advertising,

18 sales, and service of its ASIC devices in the State of California. Defendant Bitmain proudly touts

19 its California sales service and marketing operations to Bitmain's current and future customers on

20 its website, on its social media platforms (including Twitter, Facebook, YouTube and on its own

21 blog), and at a recent California Crypto Mining Forum that it sponsored in Santa Clara,

22 California, a few miles from Bitmain's San Jose sales office. Its San Jose sales office serves as the

23 central hub for Bitmain's North, Central, and South America ("NCSA") sales network.  A top

24 Bitmain executive and speaker at Bitmain's California Crypto Mining Forum works in San Jose,

25 and the company actively and publicly recruits Sales Specialists to work at its San Jose sales

26 office to facilitate its online sales of ASIC devices. Moreover, the Company promotes the sale of

27 its ASIC devices to customers in the United States by touting the convenience of its ASIC device

28 repair center in Fremont, California.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1    Bitmain's substantial, continuous, and systematic contacts with California also subject

2    Bitmain to general jurisdiction in this forum. Therefore, it is appropriate for Bitmain to be haled

3    into court in California to answer for its activities here, and to treat California as Bitmain's home

4    for the purposes of general jurisdiction.

5    Finally, the Court should deny Bitmain's request that the Court strike Plaintiff's

6    nationwide class allegations. Bitmain relies on *Bristol-Myers Squibb Co. v. Superior*, 137 S. Ct.

7    1773 (2017) which is factually inapposite and does not apply to class actions.

**II.    RELEVANT FACTS**

**A.    The Parties**

This is a proposed class action against Defendant Bitmain, a corporation internationally

headquartered in Beijing, China, which maintains its United States sales headquarters in San Jose,

California.[1]  Bitmain manufactures and sells Application Specific Integrated Circuit or "ASIC"

devices under the Antminer brand name, which are used by Bitmain and its customers for mining

cryptocurrency in California and throughout the United States.[2] Bitmain sells ASIC devices on its

highly interactive website, from which California customers log in, place orders, check order

status, track shipping, calculate shipping costs, receive product support, create repair tickets,

engage in online chat with sales and support specialists, and complete interactive customer

satisfaction surveys. *See* Marlborough Declaration, Exh. 3, Bitmain Support Webpages, available

at https://service.bitmain.com/support/contact and pages linked thereto.

Plaintiff is a California customer who purchased several Bitmain ASIC devices from the

State of California, for the purpose of mining cryptocurrency in California. S*ee* Declaration of

---

[1]  *See* Declaration of Christopher Marlborough ("Marlborough Decl."), Exh. 1, Bitmain.com Contact Us webpage available at https://www.bitmain.com/contact. *See also* Marlborough Decl., Exh. 2, Bitmain Technologies, Ltd. ad for sales position in San Jose, at 2 (noting that Bitmain Technologies, Limited [] has offices in … San Francisco").
[2] Defendant Bitmain suggests that Plaintiffs will try to conflate the California contacts of its sister corporation, Bitmain, Inc., a research and development company incorporated in California, which Bitmain admits is not involved with the sales and service of ASIC devices.  *See* Liu Decl. at ¶ 19. However, Plaintiff relies only on the California contacts of Defendant Bitmain concerning the sales and support of its ASIC devices, rather than the R&D activities of non-defendant Bitmain, Inc.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

Gor Gevorkyan filed herewith ("Gevoryan Decl.") at ¶¶ 2-4. Plaintiff purchased numerous ASIC devices from Burbank, California both directly from Bitmain through its highly interactive website, and from a third-party. *See Id.*, ¶ 3-4. The ASIC devices he purchased directly from Bitmain were delivered to him in California approximately three months after placing each of his orders. *Id.*, ¶ 5. Plaintiff received those ASIC devices in poor and used condition. *Id.* He observed that the devices looked worn out and had dust all over them, along with some dents and scrapes. *Id.* Plaintiff set up and used the ASIC devices to mine cryptocurrency in California. *See Id.*, ¶ 6. All of the Bitmain ASIC devices he purchased, including those acquired from a third-party reseller, were preconfigured to deliver cryptocurrency to Bitmain during the extensive setup process. *See Id.*, ¶ 9. During this time, Bitmain derived benefit from the use of Plaintiff's ASIC devices in California while requiring him to pay substantial electricity costs to his local power companies and internet service providers. *See Id.*, ¶¶ 7-11. Several of the devices were defective, most likely due to the harsh conditions under which Bitmain used the devices for its own benefit after the sale to Plaintiff. *See Id.*, ¶¶ 6, 12. When Plaintiff contacted Bitmain's customer support in the United States about the defective devices, he was instructed to keep them running for several days. *See Id.*, ¶ 13. During that time, the devices mined cryptocurrency for Bitmain, not Plaintiff. *Id.* Like Bitmain's other customers in the United States, Plaintiff fell prey to Bitmain's fraudulent Secret Mining Scheme after his purchases and prior to deliveries of the devices, and Bitmain's fraudulent Trojan Horse Scheme after Bitmain delivered the devices to him.

### B.     Plaintiff's Claims

The FAC includes claims for unjust enrichment, conversion and trespass to chattel on behalf of a nationwide class of purchasers of Bitmain's ASIC devices. FAC at ¶¶ 81-91. The FAC also asserts claims for violations of the unfair and fraudulent prongs of the California Unfair Competition Law on behalf of a subclass of California purchasers of Bitmain's ASIC devices (the "California Subclass"). *See Id.* at ¶¶ 92-116. The claims concern both Bitmain's Secret Mining Scheme and Bitmain's Trojan Horse Scheme.

First, with respect to Bitmain's Secret Mining Scheme, Bitmain extracts the value from new ASIC devices by delaying shipment of those products to its customers in California and

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS AND

throughout the United States and by using the devices purchased by its customers to mine cryptocurrency for itself during the window of time when the devices are capable of generating the most income.[3]  Bitmain refers to this practice as "secret mining:"

> 'Secret mining' is a practice whereby an ASIC manufacturer may mine with newly developed equipment prior to selling or distributing such equipment to customers [and] has been criticized as conferring an unfair market advantage to ASIC manufacturers over individual community member miners.[4]

Second, through Bitmain's Trojan Horse Scheme, the Company continued to use its customer-purchased ASIC devices to mine cryptocurrency for itself after delivery to Plaintiff and other customers in California. *See* FAC at ¶¶ 54-61. Until approximately September 2015, Bitmain maintained a lawful practice by which its customers' newly delivered ASIC devices started in low energy consumption mode and contained no preconfigured setting to mine cryptocurrency for anyone. *Id*. at ¶ 58. The customer then configured the devices to deliver cryptocurrency to the customers' cryptocurrency account, at which time the ASIC devices would boot up in high energy consumption mode, which is necessary to mine virtual currency. *Id*.

In or around September 2015, Bitmain changed that practice so that the devices started in high energy consumption mode. *Id*. at ¶ 59. At the same time, Bitmain changed the default configuration for its ASIC devices to ensure that the devices mined cryptocurrency not for its customers, but for its customers' largest competitor – Bitmain ***itself***. *Id*. at ¶ 60. Bitmain now requires its customers to pay the local power companies for the substantial electricity consumption costs incurred during the configuration period, and exploits its customers' internet service while the ASIC devices are mining cryptocurrency for Bitmain in California. *Id*. at 61.

### C.    Bitmain's Substantial Contacts with California

Bitmain argues that the Court lacks personal jurisdiction over the Company because it is a foreign corporation whose only purported contact with California is a website from which

---

[3] For an explanation of the economics relating to cryptocurrency mining, *see* FAC at ¶¶16-38.
[4] *See* Marlborough Decl., Exh. 4, Transparency Policy for Shipping and Mining Practices, dated July 25, 2018, at 2; available at https://blog.bitmain.com/en/transparency-policy-shipping-mining-practices/ (viewed on October 24, 2019).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

California customers can order products. *See* MTD at 3. Bitmain, however, misleads this Court in an attempt to conceal the truth about its substantial presence and ongoing product sales activities in California.

Bitmain falsely maintains that it has no employees and no office in California.[5]  Indeed, Bitmain maintains its NCSA sales office and has employees in San Jose, California.  The Company publicly lists its San Jose sales office on its website, on social media and in its promotional material relating to its continued expansion into the United States market, which it recently described as a "key market[] for its overseas business."[6] Indeed, on Bitmain's website, the very same website from which customers place their orders for the company's ASIC devices, the Company directs customers to its NCSA sales office in San Jose at the following address: 300 Park Ave, STE300, San Jose, CA 95110, USA, Email: sales.ncsa@bitmain.com[7]  Bitmain also provides a tour of its NCSA San Jose sales office and lists its NCSA sales e-mail address in a Youtube video with the following caption:

> Here's a sneak peek into what goes on in Bitmain and ***our office in San Jose, California***! A company that offers you innovative brands such as Antminer and AntBox, taking cryptocurrency mining to greater heights!" (emphasis added).[8]

Bitmain falsely maintains that it has no employees in California, and that it does not maintain sales or service networks in California. *See* MTD at 1 ("None of Bitmain's employees resides in California or works here"); *see* Liu Decl. at ¶ 6 ("Bitmain does not operate sales or service networks within the State of California"). Bitmain indeed has employees in California,

---

[5] *See* Liu Decl. at ¶¶ 6-7 ("Bitmain does not own, use, lease, or possess any real estate in the state of California, nor does it maintain a place of business in the State of California."); *see also* Bitmain MTD at 1:12-13 ("None of Bitmain's employees resides in California or works here.").
[6] *See* Marlborough Decl. Exh., 1, Bitmain Website Contact Us page at 3 (listing the San Jose Sales office address alongside the email address ncsa.sales@bitmain.com); Marlborough Decl. Exh. 2, LinkedIn job posting at 1 (seeking Sales Specialists for the San Jose office), 2 (identifying Bitmain office in San Francisco); Marlborough Declaration, Exh. 5, Application Proof of Bitmain to Hong Kong Stock Exchange at 126 (identifying United States as key market); Marlborough Declaration, Exh. 6, Bitmain YouTube Video Screenshots: A Look Inside Bitmain at .pdf page 4 (disclosing San Jose sales office address and ncsa.sales@bitmain.com email address at end of video).
[7] *See* Marlborough Decl., Exh. 1, Bitmain Website: "Contact Us" Page.
[8] *See* Marlborough Declaration, Exh. 6, Bitmain YouTube Video Screenshots: A Look Inside Bitmain at .pdf page 4, available at https://www.youtube.com/watch?v=Xaa_-jQ4NvM.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

and those employees maintain Bitmain's sales and service networks in California for the entire NCA region.  Bitmain's LinkedIn.com Sales Specialists job posting reveals the Company's recruitment activities for its San Jose sales office. *See* Marlborough Decl. Exh. 2 ("Bitmain Technologies is looking for a sales specialist to join US sales team, and support Bitmain sales team's development oversea."). The job responsibilities for the San Jose Specialists include: 1) communicating with customers about questions through e-mail and live chat; 2) "collecting on unpaid orders, collecting customer demands, fulfilling orders and improving the customer service experience;" 3) "cooperating with logistics department to help customers complete the custom clearance and receive their parcels;" and, 4) managing and maintaining "Newegg and Amazon seller portal." *See Id*. at 1. Moreover, Peng Li, Bitmain's International Sales Manager, indicates in his LinkedIn.com profile that he works for Bitmain in San Jose, California. *See* Marlborough Decl. Exh. 7, LinkedIn.com Peng Profile.

Further belying Bitmain's claim that its California contacts are limited to the operation of a website in China is the existence of Bitmain's repair center for the NCSA region located in Fremont, California. Bitmain's Repair Guide directs California and United States customers to return products to Bitmain's repair site located in Fremont, California. *See* Marlborough Decl., Exh. 8, Bitmain Repair Guide at 4, located at https://service.bitmain.com/support/guide. Bitmain also falsely claims that it does not target California residents in its marketing or solicitations. *See* Lui Decl. at ¶¶ 13 – 14. However, the Company sends its top ASIC device sales and marketing executives to California to promote and sell ASIC devices in California, and spends large sums of money to host a conference to promote the sale of its ASIC devices in California. For example, on August 31, 2019, Bitmain hosted a full day "California Crypto Mining Forum." *See* Marlborough Decl. Exh. 9, California Crypto Mining Forum, Agenda. The event was held at the Shenzhen Bay Innovation Center, less than seven miles from Bitmain's sales office in San Jose, California. *See* Marlborough Decl., Exh. 10, Antminer_main Twitter Posts at 3 of 3; Marlborough Decl. Exh. 11, Google Maps page (providing directions from Bitmain San Jose NCSA Sales Office to Shenzhen Bay Innovation Center). The California Crypto Mining Forum was heavily promoted on Bitmain's social media outreach pages, including on

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1  Facebook and Twitter. *See* Marlborough Decl., Exh. 10, Antminer_main Twitter Posts.  For

2  example, an August 16, 2019 Twitter Post from Bitmain reads:

4  > #CMF California Update: See the list of main speakers and topics focused on
   > cryptocurrency mining optimization. Register now at https://bit.ly/312QGQ0 or
   > contact sales.ncsa@bitmain.com for further questions.

6  *Id*. at 2.The California Crypto Mining Forum featured presentations from Bitmain's top sales

7  executives, who were responsible for the sales of the same ASIC devices at issue in this case,

8  including Bitmain's Antminer Regional Sales Director (NCSA), Customer Service Manager,

9  Managing Director of Marketing Sales & Service, and Peng Li, Bitmain's Antminer US Sales

10  Manager. *See* Marlborough Decl. Exh. 9, California Crypto Mining Conference Agenda. Mr.

11  Peng, works for Bitmain in San Jose., a few miles from the conference site.  *See* Marlborough

12  Decl., Exh. 7, LinkedIn.com, Peng Profile.

13      The California Crypto Mining Forum was clearly directed at current and future Bitmain

14  customers in California who make up the prospective California subclass in this Action. Indeed,

15  Bitmain noted on its blog site that "[t]he California Crypto Mining Forum provided … a special

16  focus on **how Bitmain provides enhanced services for current and future customers.**" *See*

17  Marlborough Decl., Exh. 12, Bitmain Blog, California Crypto Mining Forum (emphasis added).

18  Topics discussed at the California Crypto Mining Forum included: (1) Antminer Sales, Order and

19  Purchasing; (2) Antminer Aftersales Service; (3) Improving Mining Profits in the United States;

20  and, (4) Electricity Fees, Factors Influencing Mining Profits. *See* Marlborough Decl., Exh. 9,

21  California Crypto Mining Forum Agenda. On Bitmain's online Blog and in other press, Bitmain

22  touted its California Crypto Mining Forum as a huge success for the Company.[9] Nevertheless, in

23  its MTD, Bitmain deceives this Court by claiming that its only connection to California was its

24  operation of a website from Beijing, China.

26  ---

27  [9] *See* Marlborough Decl. Exh. 10, Bitmain Twitter post, dated September 4, 2019 ("The 4th Crypto
    Mining Forum was successfully held in California! Aligning with the new focus in providing
    enhanced resource management to customers, the #CMF event delivered innovated speeches while
    also pre-announcing an upcoming new miner.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1  **III.    LEGAL STANDARD**

2          When a party moves for dismissal under FRCP 12(b)(2), the plaintiff bears the burden of

3  proving that personal jurisdiction exists by a preponderance of the evidence. *See Pebble Beach*

4  *Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006). When a district court decides a pretrial

5  personal jurisdiction motion without an evidentiary hearing, the plaintiff need only make a *prima*

6  *facie* showing of personal jurisdiction. *Ibid*. In deciding whether the plaintiff has proved a *prima*

7  *facie* case of personal jurisdiction, "the court resolves all disputed facts in favor of the plaintiff."

8  *See ibid*.; *see also, Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)

9  (resolving dispute over statements contained in affidavits in plaintiff's favor).

10          When determining the bounds of their jurisdiction, federal courts ordinarily follow state

11  law. *See* FRCP 4(k)(1)(A); *see also, Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

12  Generally, a determination of personal jurisdiction is a two-step inquiry, but because "California's

13  long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under

14  the U.S. Constitution" (*Id*. at 125), the statutory inquiry necessarily merges with the constitutional

15  inquiry, and the two inquiries essentially become one. The question then is whether the defendant

16  has sufficient minimum contacts with the forum state such that "the maintenance of the suit does

17  not offend traditional notions of fair play and substantial justice." *Id*. at 126 (citations omitted).

18          A defendant may be subject to two types of personal jurisdiction – specific and general.

19  Specific jurisdiction exists when the defendant's conduct or contact within the forum state is

20  "connected to the suit." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

21  414 n.8 (1984). General jurisdiction exists where the defendant engages in "continuous and

22  systematic" contacts with the forum state, without regard to whether those contacts concern the

23  claims in the case. *See Id*. at 127.

24  **IV.    ARGUMENT**

25      **A.    Bitmain Is Subject to Specific Personal Jurisdiction**

26          *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) provides the general rule

27  where, as in California, the long arm statute extends as far as the Constitution will allow. The

28  forum state "does not exceed its powers under the Due Process Clause if it asserts personal

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the forum State." *World-Wide Volkswagen Corp.*, 444 U.S. at 298; *see also j2 Cloud Servs. V. Fax87*, 2017 U.S. Dist. LEXIS 64064, at **10-11 (C.D. Cal. Apr. 27, 2017). Where, as here, the underlying action sounds in tort, the court employs the "Calder Effects Test" to determine whether a defendant has sufficient contacts with a forum state to be subject to specific jurisdiction. *See Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (*en banc*) (citations omitted). Additionally, the Plaintiff must show that the exercise of jurisdiction comports with due process. *See Schwarzenegger*, 374 F.3d at 802. Under this test, there is no requirement that the defendant have any physical contacts with the forum state. *Id*. at 803.

### 1.    *Bitmain's Intentional Acts*

In this case, the "intentional acts" supporting specific jurisdiction are demonstrated by Defendant Bitmain's Trojan Horse and Secret Mining Schemes, whereby Bitmain: (1) preconfigured the devices to mine cryptocurrency in California for the benefit of Bitmain, while leaving Plaintiff to pay the local California electricity and internet service expenses; (2) used Plaintiff's devices to mine cryptocurrency for itself after he purchased them in California but before Bitmain delivered them to him; (3) provided logistical services from Sales Specialists in Bitmain's San Jose NCSA sales office; and, (4) serviced often defective devices at Bitmain's Fremont, California Repair Center.[10]

### 2.    *Bitmain Expressly Aimed its Conduct at California Residents*

The second part of the *Calder*-effects test requires that the defendant's conduct be expressly aimed at the forum. *See Pebble Beach*, 453 F.3d at 1156. First, California courts

---

[10] *See* Marlborough Decl., Exh. 8, Bitmain.com Webpage US-CA Service Center Information, at 4.  *See also* FAC at ¶ 50 (noting the harsh conditions in which Bitmain uses the ASIC devices on its mining farms which results in a high defect rate).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

routinely hold that a defendant's maintenance of an online interactive website is sufficient to establish express aiming where the claims relate to online orders from that website. *See Diaz v. Bautista*, 2010 U.S. Dist. LEXIS 153018, at *8 (C.D. Cal Oct. 20, 2010) ("doing business via an interactive website with California citizens … is sufficient to establish her purposeful direction to the State of California."); *Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 U.S. Dist. LEXIS 144088, at *10 (N.D. Cal. Oct. 4, 2012) ("Vanity Shop argues that merely selling to California customers via its website is insufficient to confer personal jurisdiction. The Court disagrees."); *Starlight Intl., Ltd. v. Lifeguard Health, LLC*, 2008 U.S. Dist. LEXIS 58927, at **13-14 (N.D. Cal. July 22, 2008) ("Courts within the Ninth Circuit have concluded [] that a company's use of an interactive website may constitute purposeful availment of a forum."); *Stomp, Inc. v. NeatO, LLC,* 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (although the actual number of sales to California citizens may be small, the act of engaging in internet commerce with California citizens was sufficient to establish minimum contacts); *Tech Heads, Inc. v. Desktop Serv. Ctr.*, 105 F. Supp. 2d 1142, 1151 (D. Or. 2000) (Defendant "intentionally availed itself of jurisdiction" by "posting a highly commercial, highly interactive Web site on the World Wide Web, engaging in Internet commerce with at least one [forum state] resident").

Bitmain relies on cases in which courts held that maintaining a "passive" website is not sufficient to establish express aiming. *See* Bitmain MTD at 9, *citing Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (noting that a "passive website" is one which merely posts information" and the distinction between passive websites and interactive websites which can be sufficient to warrant the exercise of jurisdiction). In contrast to the "essentially passive" website in *Cybersell*, Bitmain's highly commercial and interactive website allows customers to place orders for ASIC devices online through the website, receive technical support, log in to their account, review and modify orders, track shipping, obtain customs forms, engage in online chat with sales and support specialists, and complete interactive customer satisfaction surveys. *See* Marlborough Declaration, Exh. 3, Bitmain Support page.

Second, Bitmain employees in California facilitated customer orders in California and throughout the United States by providing customer service, logistical, "custom clearance" services,

and live chat from San Jose, California. *See* Marlborough Decl. Exh. 2, LinkIn.com Sales Specialist, Job Posting for Bitmain Technologies, Ltd. at 1; Marlborough Decl., Exh. 1, Bitmain.com Contact Us webpage. Moreover, one of the Company's top sales executives works in the San Jose NCSA sales office. *See* Marlborough Decl., Exh. 7, LinkedIn.com, Peng Profile. In addition, Bitmain maintains its NCSA Repair Center for ASIC devices in Fremont, California. *See* Marlborough Decl. Exh. 8, Bitmain Repair Guide, at 4.

Third, through its Trojan Horse Scheme, Bitmain shipped its used ASIC devices across the United States border and into California, with default configuration settings designed to cause economic harm to California customers from the moment they powered up the devices and connected them to the internet. The devices mined cryptocurrency in California for the benefit of Bitmain rather than Plaintiff and other California customers. The ASIC devices caused Plaintiff and other California customers to incur charges to their local power companies in California.

### 3. *Bitmain Knowingly Caused Harm In California*

"The final element" under Calder—likely harm—requires that [a defendant's] conduct caused harm that it knew was likely to be suffered in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 at 1131 (9th Cir. 2010)*; see also Wallach v. Johnson*, 2019 U.S. Dist. LEXIS 174272, at \*12 (D. Ariz. Oct. 7, 2019. Bitmain knowingly caused harm to customers in the State of California. This element is satisfied when defendant's intentional act has "foreseeable effects" in the forum state. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

In this case it was entirely foreseeable to Bitmain that its conduct would cause harm to California and its residents by: (1) causing substantial impairment to both the device's functionality and economic value through Defendant's Secret Mining Scheme; and, (2) co-opting of California customers' ASIC devices located in California to mine cryptocurrency through the Trojan Horse Scheme while using the customers' local California-based electricity and internet connections. Without question, all of these acts caused harm within the State of California generally, and to Plaintiff and Bitmain's California customers specifically.

///

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1

### 4.     *Personal Jurisdiction Over Bitmain is Constitutionally Reasonable*

The final prong of the due process inquiry is intended to ensure that litigation "'is not so gravely difficult and inconvenient' that a party is unfairly at a 'severe disadvantage' in comparison to his opponent." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 478 (1985) citing *The Bremen* v. *Zapata Off-Shore Co*., 407 U.S. 1, 18 (1972).

Here, the only purported burden faced by Bitmain in litigating this case in California is that its international headquarters is in China. However, Bitmain maintains its United States sales office in San Jose, California, and a top Bitmain sales executives works in San Jose.[11]  Indeed, Bitmain's San Jose NCSA sales office is less than an hour's drive from the Courthouse.[12] Plaintiff, on the other hand, has no connection to or presence in China and would face a heavy burden if he were forced to litigate this case in China. *See* Gevorkyan Decl. at ¶¶ 15, 17.

### B.     Bitmain Is Subject to General Jurisdiction

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the United States Supreme court noted that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761 n.19; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 , 919 (2011) (finding a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations when their affiliations are sufficient to render them essentially at home in the forum state). Some examples of where a finding of general jurisdiction would ostensibly comport with due process include "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," "efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States," having its largest distribution of its product in the forum State, *or* the "continuous[] and deliberate[] exploit[ation]" of the forum State's market. *See, e.g., Daimler*, 134 S. Ct. at 755 n.7 (quoting *Asahi Metal Industry Co. v. Superior Court of Cal*., 480 U.S. 102, 112 (1987) (emphasis added);

---

[11]  *See* Marlborough Decl. Exhs. 1, Bitmain.com Contact Us page, and 7, Peng LinkedIn Profile.
[12]  *See* Marlborough Decl. Exh. 11, Google Maps (showing directions from Bitmain San Jose NCSA Sales Office to U.S. District Courthouse in San Francisco).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1  *World-wide Volkswagen*, 444 U.S. at 297 (1980); *Calder*, 465 U.S. at 789-90; *Keeton v. Hustler*

2  *Magazine, Inc.*, 465 U.S. 770, 780-81 (1984)). In this case, Bitmain has continuously and

3  deliberately exploited California's market, which serves as the central hub of Bitmain's sales and

4  service operations for two continents.

5      First, Bitmain admits on its website that its NCSA sales office is located in San Jose, and

6  it is the only United States office indicated on Bitmain's Contact Us page. *See* Marlborough Decl.

7  Exh. 1, Bitmain Contact Webpage (including sales.NCSA@bitmain.com email address).  Bitmain

8  also employs Sales Specialists and its NCSA Regional sales executive in the San Jose NCSA

9  sales office and has claimed to have an office in San Francisco. *See* Marlborough Decl., Exh. 2,

10  LinkedIn.com Sales Specialist job posting.

11      Second, further evidence that Bitmain is at home in California is that its only repair center

12  in the U.S. is located in Fremont, California. *See* Marlborough Decl., Exh. 8, Bitmain Repair

13  Guide, at 4. Indeed, Bitmain most likely set up shop for its sales and service activities in the heart

14  of Silicon Valley, often referred to as the "mecca of the technology industry," because that is the

15  international center of activity for technology companies like Bitmain. Taking all of the foregoing

16  facts into consideration, Bitmain cannot in good faith stand on its argument that it is not "at

17  home" in California for purposes of general jurisdiction.

18      **C.      Bitmain's Browsewrap Terms of Service are Unenforceable and Irrelevant**

19      In support of the motion to dismiss for lack of personal jurisdiction, Bitmain submitted a

20  copy of one of several browsewrap terms of service on its website, but produced no evidence that

21  Plaintiff ever assented to it.  Indeed, he did not.[13]  In *Nguyen v. Barnes & Noble Inc.*, 763 F.3d

22  1171, 1176 (9th Cir 2014), the Court held that such browsewrap agreements are unenforceable.

23  "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest

24  assent to the terms and conditions expressly a party instead gives his assent simply by using the

25  website." (internal citations omitted). Moreover, Bitmain has not brought a motion to compel

26

27      [13] *See* Gevorkyan Decl. at ¶ 14 (Plaintiff never consented to any of Bitmain's terms of service);

28  *McGhee v. N. Am. Bancard, LLC*, 755 F App'x 718, 720 ) (9th Cir 2019) ("NAB did not make a
    "prima facie" showing that McGhee assented to the User Agreement").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

1  arbitration.  The terms of service Bitmain presented to the Court do not support Defendant's
2  argument that the Complaint should be dismissed for lack of personal jurisdiction.

3  **D.      Plaintiff's Nationwide Class Allegations Should Not Be Stricken**

4         Defendant seeks to strike Plaintiff's nationwide class allegations, arguing that any
5  certified class should be limited to California residents. However, the request is premature as
6  such matters are more appropriate for determination at the class certification stage. *See*
7  *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387, *1, 10 (C.D. Cal. Feb. 19,
8  2013) (denying motion to strike nationwide class allegations, noting that "[d]efendant has yet to
9  file an answer and discovery has not yet begun; given the early stage of the proceedings . . . it is
10  premature to determine if this matter should proceed as a class action."). *See also Clancy v. The*
11  *Bromley Tea Co.*, 308 F.R.D. 564, at 572 (N.D. Cal. 2013); *Valencia v. Volkswagen Group of*
12  *America, Inc.*, 2015 U.S. Dist. LEXIS 105545, at *1 (N.D. Cal. Aug. 11, 2015). Any doubts as to
13  whether the class allegations should be stricken at this stage should be resolved in Plaintiff's
14  favor. *See In re Charles Schwab Corp. Secur. Litig.*, 257 F.R.D. 534, 562 (N.D. Cal. 2009) ([I]f
15  there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the
16  court should deny the motion.").

17         Bitmain's argument that the Supreme Court's decision in *Bristol-Myers Squibb Co. v.*
18  *Superior*, 137 S. Ct. 1773 (2017) requires the Court to strike Plaintiff's nationwide class
19  allegations has no merit. First, *Bristol Myers* was not a prospective class action and the case does
20  not extend to class actions. *See Fitzhenry-Russell v. Dr. Pepper Snapple Group*, 2017 U.S. Dist.
21  LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("For all of its arguments, Dr. Pepper has not
22  presented the Court with persuasive argument—much less binding law—compelling the
23  extension of *Bristol-Myers* to class actions."). Justice Sonia Sotomayor squarely addressed this
24  question in her dissent in *Bristol-Myers*. Specifically, noting: "the Court today does not confront
25  the question whether its opinion here would also apply to a class action in which a plaintiff
26  injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were
27  injured there." *See Bristol-Meyers*, 137 S. Ct. at 1789 n.4. Indeed, a leading treatise states that

28

1   most courts "have concluded that *Bristol-Myers* does not apply to class actions." *See McLaughlin*
2   *on Class Actions*, § 2.44 n. 5 (collecting cases).

3        The *Bristol Myers* case concerned a mass tort action where many of the named plaintiffs'
4   claims were not connected to the forum state. Class actions are fundamentally different from mass
5   torts actions, like the one at issue in *Bristol Myers*. This case has only one named plaintiff and his
6   claims are clearly connected to the State of California. In a class action, like this one, the claims
7   of unnamed class members are "irrelevant to the question of specific jurisdiction." *AM Trust v.*
8   *UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017); *see*
9   *also Cabrera v. Bayer Healthcare, LLC*, No. LACV1708525JAKJPRX, 2019 WL 1146828, at *8
10  (C.D. Cal. Mar. 6, 2019) (same); *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d
11  981, 1022 (N.D. Cal. 2015); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 818-22 (N.D. Ill. 2018)
12  (denying motion to strike nationwide class allegations); *Curran v. Bayer Healthcare LLC*, 2019
13  U.S. Dist. LEXIS 15362, at *9-10 (ND Ill Jan. 31, 2019) (same); *Fitzhenry—Russell*, 2017 U.S.
14  Dist. LEXIS 155654, 2017 WL 4224723, at *5. In *Al Haj*, the court explained that to apply
15  *Bristol-Myers* to class actions would be to hold that "[a]lthough absent class members are *not*
16  parties for purposes of diversity of citizenship, amount in controversy, Article III standing, and
17  venue, they *are* parties for purposes of personal jurisdiction over the defendant." 338 F. Supp. 3d
18  815 at 820. The court concluded "[t]hat cannot be right." *See Id.*

19       Finally, in this case, even the claims of the unnamed class members are connected to
20  California because Bitmain facilitates sales and provides service and support to customers
21  throughout the United States from both its San Jose NCSA sales office and Fremont NCSA repair
22  center. Therefore, Bitmain's request to strike Plaintiff's class allegations should be denied.

23  **V.    CONCLUSION**

24       For the foregoing reasons, the Court should deny Bitmain's Motion in its entirety. If the
25  Court is inclined to grant Defendants' Motion for lack of personal jurisdiction, Plaintiff
26  respectfully requests that he be afforded the opportunity to take jurisdictional discovery and/or
27  amend his complaint to address the Court's concerns.
28  ///

1    Dated:  October 25, 2019                FRONTIER LAW CENTER

2

3                                            */s/ Karo G. Karapetyan*_____
                                             Robert Starr (183052)
4                                            Adam Rose (210880)
                                             Karo G. Karapetyan (318101)
5                                            23901 Calabasas Rd, Suite 2074
                                             Calabasas, CA 91302
6                                            Telephone: (818) 914-3433
                                             Facsimile: (818) 914-3433
7                                            E-Mail:        robert@frontierlawcenter.com
8                                                           karo@frontierlawcenter.com
9                                                           manny@frontierlawcenter.com

10                                           Jordan L. Lurie (130013)
                                             Ari Y. Basser (272618)
11                                           POMERANTZ LLP
                                             1100 Glendon Avenue, 15th Floor
12                                           Los Angeles, CA 90024
                                             Telephone: 310-405-7190
13                                           Facsimile: 917-463-1044
                                             E-mail:        jllurie@pomlaw.com
14
                                                            abasser@pomlaw.com
15

16                                           Christopher Marlborough (298219)
                                             THE MARLBOROUGH LAW FIRM, P.C.
17                                           445 Broad Hollow Road, Suite 400
                                             Melville, NY 11747
18                                           Telephone: (212) 991-8960
                                             Facsimile: (212) 991-8952
19                                           E-Mail:        chris@marlboroughlawfirm.com
20
                                             Attorneys for Plaintiff
21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BITMAIN TECHNOLOGIES, LTD.'S
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS