*The Stock Exchange of Hong Kong Limited and the Securities and Futures Commission take no responsibility for the contents of this Application Proof, make no representation as to its accuracy or completeness and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this Application Proof.*

Application Proof of

# BITMAIN

# BitMain Technologies Holding Company
# 比特大陸科技控股公司

### (the "Company")

*(A company controlled through weighted voting rights and incorporated in the Cayman Islands with limited liability)*

## WARNING

The publication of this Application Proof is required by The Stock Exchange of Hong Kong Limited (the "**Exchange**")/the Securities and Futures Commission (the "**Commission**") solely for the purpose of providing information to the public in Hong Kong.

This Application Proof is in draft form. The information contained in it is incomplete and is subject to change which can be material. By viewing this document, you acknowledge, accept and agree with the Company, its sponsor, advisers or member of the underwriting syndicate that:

(a)     this document is only for the purpose of providing information about the Company to the public in Hong Kong and not for any other purposes. No investment decision should be based on the information contained in this document;

(b)     the publication of this document or supplemental, revised or replacement pages on the Exchange's website does not give rise to any obligation of the Company, its sponsor, advisers or members of the underwriting syndicate to proceed with an offering in Hong Kong or any other jurisdiction. There is no assurance that the Company will proceed with the offering;

(c)     the contents of this document or supplemental, revised or replacement pages may or may not be replicated in full or in part in the actual final listing document;

(d)     the Application Proof is not the final listing document and may be updated or revised by the Company from time to time in accordance with the Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited;

(e)     this document does not constitute a prospectus, offering circular, notice, circular, brochure or advertisement offering to sell any securities to the public in any jurisdiction, nor is it an invitation to the public to make offers to subscribe for or purchase any securities, nor is it calculated to invite offers by the public to subscribe for or purchase any securities;

(f)     this document must not be regarded as an inducement to subscribe for or purchase any securities, and no such inducement is intended;

(g)     neither the Company nor any of its affiliates, advisers or underwriters is offering, or is soliciting offers to buy, any securities in any jurisdiction through the publication of this document;

(h)     no application for the securities mentioned in this document should be made by any person nor would such application be accepted;

(i)     the Company has not and will not register the securities referred to in this document under the United States Securities Act of 1933, as amended, or any state securities laws of the United States;

(j)     as there may be legal restrictions on the distribution of this document or dissemination of any information contained in this document, you agree to inform yourself about and observe any such restrictions applicable to you; and

(k)     the application to which this document relates has not been approved for listing and the Exchange and the Commission may accept, return or reject the application for the subject public offering and/or listing.

If an offer or an invitation is made to the public in Hong Kong in due course, prospective investors are reminded to make their investment decisions solely based on the Company's prospectus registered with the Registrar of Companies in Hong Kong, copies of which will be distributed to the public during the offer period.

# REGULATORY OVERVIEW

refers to the direct investment in China by PRC residents or entities through SPVs, which means someone establishes foreign-invested enterprises to obtain the ownership, control rights and management rights. Prior to contributing domestic and overseas legitimate assets or interests to an SPV, a domestic resident shall apply to SAFE for foreign exchange registration of overseas investment. The Circular No. 37 supersedes the Circular No. 75 and revises and regulates the relevant matters involving foreign exchange registration for round-trip investment. Under the Circular No. 37, in the event the change of basic information of the registered offshore special purpose vehicle such as the individual shareholder, name, operation term, etc., or if there is a capital increase, decrease, equity transfer or swap, merge, spin-off or other amendment of the material items, the domestic resident shall complete the change of foreign exchange registration formality for offshore investment. If a non-listed SPV uses its own equity interests or options to grant equity incentives to the directors, supervisors, senior management and other employees of a domestic enterprise which is under its direct or indirect control, relevant domestic resident individuals may apply to SAFE for foreign exchange registration of the SPV before exercising their rights.

## SAFE Circular 13

Pursuant to Circular on Further Simplifying and Improving the Direct Investment-related Foreign Exchange Administration Policies (《關於進一步簡化和改進直接投資外匯管理政策的通知》) (the "**SAFE Circular 13**") promulgated by SAFE on February 13, 2015 and with effect from June 1, 2015, the administrative approvals of foreign exchange registration of direct domestic investment and direct overseas investment are canceled. In addition, it simplifies the procedure of registration of foreign exchange and investors shall register with banks to have the registration of foreign exchange under the condition of direct domestic investment and direct overseas investment.

## REGULATORY OVERVIEW OF CERTAIN OVERSEAS JURISDICTIONS

We export our products to various overseas markets, including countries mainly in North America and Europe, and our sales may be affected by the regulatory environment in these overseas markets. The following sets forth a description of certain laws, regulations and government policies relating to cryptocurrencies and cryptocurrency mining in the United States, Canada and Hong Kong which we consider key markets for our overseas business.

## United States

The United States has a patchwork of United States federal and individual states' regulations that govern various types of cryptocurrency related activities. We are not aware of any United States federal law that currently prohibits any legal entity or natural person from engaging in the importation of mining hardware to the United States, or the manufacturing or sale of mining hardware within the United States. However, the legal status of Bitcoin and other cryptocurrencies continues to evolve in the United States, both under U.S. federal law and the laws of the U.S. states. Whether any digital asset that is labeled as a cryptocurrency is regulated by United States federal and/or state law depends on the characteristics and use of the particular asset and the analysis of the relevant United States federal or state regulatory body.