

O'Melveny & Myers LLP          T: +1 213 430 6000
400 South Hope Street          F: +1 213 430 6407
18th Floor                     omm.com
Los Angeles, CA 90071-2899

May 26, 2020                                          **Carlos M. Lazatin**
                                                     D: +1 213 430 6655
**VIA ECF**                                          clazatin@omm.com

Hon. James Donato
United States District Judge
U.S. District Court, Northern District of California
Courtroom 11
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    _**Gor Gevorkyan v. Bitmain, Inc., et al.**_, N.D. Cal. Case No. 3:18-cv-07004-JD

Dear Judge Donato:

Contrary to what Plaintiff contends in his May 14, 2020 Letter to the Court ("Motion"), it is Plaintiff, not Bitmain, who has run out the clock. It is Plaintiff who spent most of the past five months pursuing discovery on legally irrelevant contacts that cannot support specific jurisdiction as a matter of law. It is Plaintiff who waited a month after Bitmain completed its document production on February 20 to first raise (on March 18) any concerns about the sufficiency of that production. It was Plaintiff who, over a month later (on April 24), took the untenable position that the Court's order denying _Bitmain's_ motion to compel "pending further developments" resolved all of _Plaintiff's_ outstanding issues with Bitmain's discovery responses. And it was Plaintiff who then waited another three weeks to file this Motion, which is based on his unsupported contentions that (i) defendant Bitmain Technologies Ltd. ("Bitmain HK") and third party Bitmain Inc. (collectively, "Bitmain") are required to produce documents that Plaintiff's counsel told the Court have no bearing on specific jurisdiction, (ii) Bitmain HK, Bitmain, Inc., and Luyao Liu must scour the files of other Bitmain companies and turn over those companies' documents, and (iii) Mr. Liu, a Chinese citizen who resides in Shanghai, can be forced to sit for deposition in violation of Chinese law and current COVID-related travel restrictions. The Motion should be denied in its entirety.

As discussed below, the majority of Plaintiff's requests (35 of 61) concern alleged California contacts that are completely unrelated to Plaintiff's claims arising from his purchases, and therefore cannot support the Court's exercise of specific jurisdiction over those claims as a matter of law. As for the few requests covering topics that may arguably have some connection to jurisdiction—_e.g._, the relationships between Bitmain entities, communications with Plaintiff, and California sales figures—Bitmain simply does not have many responsive documents and it turned over the documents it was able to locate back in February. Those documents detailed the roles of and relationship between various Bitmain entities, in line with the Court's original rationale for ordering jurisdictional discovery. (Tr. at 5:2–3 ("I think someone is doing a tap dance around the name of the company.").) But rather than pursuing those leads and directing his inquiries to the appropriate entities—those documents identified exactly who they are—Plaintiff now contends _Bitmain_ needs to search for and produce _other companies'_ records. Though that is not the law and though it had no obligation to do so, Bitmain has requested and produced to Plaintiff relevant



information from its affiliated companies. As for the deposition of Mr. Liu, Bitmain HK's CFO, Plaintiff is well aware that Mr. Liu cannot travel outside China for a deposition and that it is illegal to hold one there. Bitmain has repeatedly offered to have Mr. Liu respond to written interrogatories, but Plaintiff has refused those offers.

### A.    Plaintiff's Requests Exceed the Scope of Jurisdictional Discovery

On December 19, 2019, this Court granted Plaintiff leave to conduct discovery **solely on the issue of specific personal jurisdiction**. (*See* Ex. 5 at 4.) The majority of Plaintiff's requests, however, have no apparent connection to that issue. For specific jurisdiction, it is not enough that Bitmain have contacts with California—**Plaintiff's claims must "arise out of" <u>those</u> forum contacts**. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017). As this Court has noted, a defendant's "general business dealings" in a forum are not enough to establish specific jurisdiction. *Zithromia Ltd. v. Gazeus Negocios de Internet SA*, 2018 WL 6340875, at *2 (N.D. Cal. Dec. 5, 2018) (Donato, J.). "What is needed is a demonstration that the lawsuit arises out of [defendant's] contacts with this forum." *Id.* at *3. That is why, in *Bristol-Myers*, despite the fact that the defendant there operated five California research facilities and employed over 200 California sales representatives, the Supreme Court found that such contacts were not sufficient, "or even relevant," to establishing specific jurisdiction. 137 S. Ct. at 1781. And that is why in *Erickson v. Nebraska Machinery Co.*, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015) (Donato, J.), this Court held that the defendant's California-directed license negotiations and its unrelated sales to California entities were "irrelevant [to specific jurisdiction] because plaintiffs' … claim does not arise out of those" forum contacts. *Id.* Thus, unless Plaintiff's claims arise out of a forum contact, that contact is irrelevant to specific jurisdiction and outside the scope of jurisdictional discovery.

Here, there is no question that Plaintiff's claims do not arise out of any of the alleged California contacts that are the subject of his discovery requests. Plaintiff does not allege that his claims arise from, or even have any connection with, for example, Bitmain employees with whom Plaintiff never says he interacted, Bitmain websites and social media posts Plaintiff never claims he read or relied upon, and leasing documents for offices in San Jose that Plaintiff never even alleges he visited. (*See* ECF 56 at 2, Exs. 2–4.) Bitmain asked Plaintiff's counsel to confirm whether Plaintiff ever interacted with any of those purported Bitmain employees, websites, social media, or offices. His counsel refused to do so. At the April 21 hearing, however, Plaintiff's counsel stated explicitly, in response to the Court's inquiry, that Plaintiff is **not basing his claim of personal jurisdiction on any of these alleged contacts**. That admission is dispositive of these requests.

Finally, Plaintiff contends that the Court's April 21 ruling "addressed" and "overruled" Bitmain's arguments concerning these contacts. The Court did no such thing. In fact, it was the Court's question to Plaintiff, asking why he could not provide information about his connections to these contacts, that prompted Mr. Marlborough's response that Plaintiff was not seeking to establish jurisdiction based on those contacts. The Court then "denied" Bitmain's motion to compel responses from Plaintiff "pending further developments." (ECF 53.) Plaintiff's renewed insistence on pursuing discovery on these subjects may constitute a "further development" that warrants revisiting that ruling. Regardless, however, this Court never ruled that Plaintiff could seek discovery from Bitmain on contacts that have nothing to do with his claims—nor could it have done so consistent with the Supreme Court's controlling decision in *Bristol-Myers* and this Court's own precedents in *Erickson* and *Zithromia*.



### B.   Bitmain Properly Declined to Respond on Behalf of Non-Parties

As for the remaining requests—concerning sales volumes, the relationship between Bitmain and its affiliates, and Plaintiff's purchases of ASIC devices—Bitmain responded that it would produce responsive documents in its possession, custody, or control—*and it has*. Plaintiff complains that Bitmain originally produced only 19 pages (ECF 56 at 1), but that reflects Plaintiff's decision to focus the bulk of his discovery on subjects that have nothing to do with jurisdiction—not a lack of cooperation by Bitmain. In fact, Bitmain's February production identified entities more likely to have responsive documents, but Plaintiff never served subpoenas on any of them. Yet despite this lack of diligence, in an effort to cooperate and assist Plaintiff, Bitmain recently requested, obtained, and produced information related to Plaintiff's requests that its affiliates were willing to provide, even though it had no obligation to do so.[1] Still, Plaintiff continues to insist that Bitmain HK, Bitmain Inc., and Mr. Liu personally must somehow **search for, obtain, and produce** files of those other entities over which Bitmain has no control, without those companies' permission.

It is black letter law that "[a] subsidiary is required to produce documents from its parent [or sister] company [only] where the subsidiary has legal control over the documents"—meaning the subsidiary has "the legal right to obtain [the] documents upon demand." *Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) (Westmore, M.J.). And it is "[t]he party seeking the documents [that] bears the burden of demonstrating that the responding party exercises such control." *Doe v. AT&T W. Disability Benefits Program*, 2012 WL 1669882, at *2 (N.D. Cal. May 14, 2012) (Ryu, M.J.). Plaintiff does not even contend—let alone carry his burden to show—that Bitmain HK, Bitmain Inc., or Mr. Liu has legal control over the documents he is seeking from other Bitmain entities. That failure alone warrants denial of his Motion.

### C.   Mr. Liu Is Unavailable for Deposition[2]

To the extent Plaintiff seeks to compel Mr. Liu to appear for a deposition,[3] Plaintiff is well aware that conducting a deposition in China, even via video, is illegal under Chinese law. (*See* Ex. 6 at 1.) When Plaintiff first sought to depose Mr. Liu when travel was still possible, Bitmain offered to make Mr. Liu available for a video deposition from Hong Kong, where depositions may legally be conducted. (*Id.*) Plaintiff refused Bitmain's offer then, insisting on an in-person deposition. It was not until the Court recently directed him to explore "remote" means that Plaintiff requested to schedule a video deposition of Mr. Liu. But, as Bitmain explained, it is now no longer possible for Mr. Liu to travel to Hong Kong due to the visa and quarantine restrictions in place in Hong Kong and Shanghai (*id.*), not to mention such travel would subject him to serious health risks. Bitmain has, on no fewer than four occasions, proposed alternatives to a deposition, including written interrogatories. To date, Plaintiff has refused to consider any of these alternatives.

For the foregoing reasons, Plaintiff's Motion should be denied.

---

[1] Bitmain produced these documents subject to and while preserving its objections to Plaintiff's requests.

[2] Plaintiff's motion raises the issue of deposing Mr. Liu, but he does not attach any correspondence between the parties on that issue. Bitmain attaches as **Exhibit 6** correspondence that summarizes the parties' communications. This exhibit is numbered consecutively from Plaintiff's exhibits.

[3] To be clear, Mr. Liu is **not** "Bitmain's FRCP 30(b)(6) deponent." (ECF 56 at 2.) Bitmain never designated Mr. Liu as its 30(b)(6) witness, and Plaintiff's letter makes clear that Plaintiff seeks to depose him as a *fact* witness based on the declarations Mr. Liu submitted in support of Bitmain's motion to dismiss. (*Id.* at 3.)

O'Melveny

Respectfully,

Carlos M. Lazatin
of O'Melveny & Myers LLP