CARLOS M. LAZATIN (S.B. #229650)
clazatin@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
JASON A. ORR (S.B. #301764)
jorr@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California 90071-2899
Telephone:   +1 213 430 6000
Facsimile:   +1 213 430 6407

Attorneys for Defendant
Bitmain Technologies, Ltd.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOR GEVORKYAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BITMAIN, INC., BITMAIN TECHNOLOGIES, LTD., and DOES 1 to 10,<br><br>Defendants. | Case No. 3:18-cv-07004-JD<br><br>Judge:   Hon. James Donato<br><br>**DEFENDANT BITMAIN TECHNOLOGIES, LTD.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. PLAINTIFF'S PROFFERED EVIDENCE DOES NOT ESTABLISH SPECIFIC PERSONAL JURISDICTION ................................................................................................ 2

    A. Bitmain's Revenues from California Sales Do Not Support Jurisdiction ............... 2

    B. Bitmain's Globally Accessible Website Does Not Support Jurisdiction ................ 4

    C. Bitmain's "Intercontinental Sales Office" Does Not Support Jurisdiction ............. 5

    D. Bitmain HK's Sharing of a Common Trade Name, Directors, or Senior Management with Other Bitmain Entities Does Not Establish Jurisdiction ........... 6

    E. Plaintiff's Conduct in California Is Irrelevant to Jurisdiction over Bitmain ........... 9

III. BITMAIN COOPERATED ON JURISDICTIONAL DISCOVERY ............................... 10

IV. CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adobe Systems Inc. v. Cardinal Camera & Video Ctr., Inc.*,
2015 WL 5834135 (N.D. Cal. Oct. 7, 2015) (Tigar, J.) ............................................................ 10

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ................................................................................................... 10

*AirWair Int'l Ltd. v. Pull & Bear España SA*,
2020 WL 2113833 (N.D. Cal. May 4, 2020) ............................................................................. 5

*AM Tr. v. UBS AG*,
78 F. Supp. 3d 977 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017) ........................ 2

*Ambriz v. Coca Cola Co.*,
2014 WL 296159 (N.D. Cal. Jan. 27, 2014) .............................................................................. 3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ................................................................................................... 4

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
2019 WL 5963149 (N.D. Cal. Nov. 13, 2019) ....................................................................... 3, 4

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir.1995) ...................................................................................................... 3

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ................................................................................................. 10

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .............................................................................................................. 6

*Calvert v. Huckins*,
875 F. Supp. 674 (E.D. Cal. 1995) ............................................................................................ 7

*Caracal Enters. LLC v. Suranyi*,
2017 WL 446313 (N.D. Cal. Feb. 2, 2017) (Seeborg, J.) ........................................................ 10

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ..................................................................................................... 4

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ................................................................................................... 3

*Dynamic Software Servs. v. Cyberbest Tech., Inc.*,
2014 WL 3373924 (N.D. Cal. July 9, 2014) .............................................................................. 5

*Erickson v. Nebraska Mach. Co.*,
2015 WL 4089849 (N.D. Cal. July 6, 2015) (Donato, J.) ............................................. 3, 4, 9, 10

*Escude Cruz v. Ortho Pharmaceutical Corp.*,
619 F.2d 902 (1st Cir. 1980) ...................................................................................................... 7

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) ................................................................................................................... 6

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) .................................................................................. 8

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) ................................................................................................ 2

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ......................................................................................................... 3, 5

*Orler v. Commercial Servs. Grp., Inc.*,
    2006 WL 8455380 (S.D. Cal. Mar. 8, 2006) ........................................................................ 5

*Sharpe v. Puritan's Pride, Inc.*,
    2019 U.S. Dist. LEXIS 6526 (N.D. Cal. Jan. 14, 2019) ....................................................... 9

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ................................................................................................. 9

*Spy Optic Inc. v. AreaTrend, LLC*,
    2020 WL 1849672 (S.D. Cal. Apr. 13, 2020) ............................................................... 3, 4, 5

*Sullivan v. Commissioner of Social Sec.*,
    2014 WL 6685075 (E.D. Cal. Nov. 25, 2014) ...................................................................... 7

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
    99 Cal. App. 4th 228 (2002) ................................................................................................. 8

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ............................................................................ 7, 8

*Walden v. Fiore*,
    571 U.S. 277 (2014) ....................................................................................................... 4, 10

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .............................................................................................. 7

*Zithromia Ltd. v. Gazeus Negocios de Internet SA*,
    2018 U.S. Dist. LEXIS 205704 (N.D. Cal. Dec. 5, 2018) .............................................. 6, 10

I.      INTRODUCTION

This Court gave Plaintiff six months to conduct jurisdictional discovery on specific jurisdiction, including the broader corporate structure of Defendant Bitmain Technologies Ltd. ("Bitmain HK"). But as Plaintiff's supplemental brief demonstrates, all he has to show for it are the same inconsequential facts that do not come close to establishing personal jurisdiction.

Plaintiff identifies eight forum contacts that he claims are attributable to Bitmain HK and that he asserts "give rise to the claims" in this lawsuit. (Suppl. MOL at 3.) Those eight alleged contacts boil down to three basic factual assertions: (1) Bitmain HK sells ASIC devices to California customers through a website that can be accessed from California; (2) Bitmain HK conducts some unspecified "sales" operations out of an office in San Jose, California (in fact, it does not); and (3) Bitmain HK is part of a family of companies, including at least one company operating in California. (*Id.* at 3-6.) These are essentially the same facts that Plaintiff argued supported jurisdiction in his response to Bitmain HK's motion to dismiss months ago.

But even if these contacts were Bitmain HK's contacts—and in many instances they are not—they fall far short of establishing specific personal jurisdiction. It is well established that ▬▬▬▬▬▬▬▬▬ sales through a globally accessible website does not constitute the sort of "express aiming" required for specific jurisdiction. Nor is it sufficient for Bitmain HK to have an office in California (which it does not), unless that office actually relates to Plaintiff's claims. Here, Plaintiff does not even contend that his claims "arise out of" any conduct at the San Jose office. And to the extent Plaintiff seeks to attribute to Bitmain HK the conduct of its corporate affiliates, Plaintiff does not meet his burden to show the affiliates are alter egos of Bitmain HK. There is no "shell game" here—as is common for multinational corporations, Bitmain HK is part of a family of corporate entities that each have separate operations somewhere in the world. It is black letter law that this corporate relationship, by itself, does not establish alter ego status.

Lastly, Plaintiff appears to be using his supplemental brief as an unauthorized reply in further support of his letter-motion seeking to compel discovery responses. For the reasons already set forth in Bitmain HK's response to that letter, Bitmain HK did not "stonewall" Plaintiff and in fact exceeded its obligations under the Federal Rules to obtain and provide the information

Plaintiff was seeking. The reality is that Plaintiff squandered his opportunity to take jurisdictional discovery by focusing his requests on subjects that are irrelevant to the jurisdictional analysis.

Because Plaintiff has not shown any legal or factual basis for this Court to assert personal jurisdiction over Bitmain HK, this Court should grant Bitmain HK's motion to dismiss.

## II. PLAINTIFF'S PROFFERED EVIDENCE DOES NOT ESTABLISH SPECIFIC PERSONAL JURISDICTION

After six months of jurisdictional discovery, Plaintiff can show no reason it would be proper for this Court to assert personal jurisdiction over Bitmain HK. Indeed, Plaintiff's current submission cites next to no legal authority and focuses on the same irrelevant contacts that he presented in his brief last year in opposition to Bitmain's motion to dismiss. Under controlling law, these contacts do not support specific personal jurisdiction even if they were *Bitmain HK's* contacts—and in many instances, Plaintiff has failed to prove even that. Given that Plaintiff has completely failed to meet his burden to show jurisdiction is proper, this Court should grant Bitmain HK's motion to dismiss and put an end to Plaintiff's fruitless fishing expedition.

### A. Bitmain's Revenues from California Sales Do Not Support Jurisdiction

Plaintiff contends that it is "sufficient to establish specific jurisdiction" that "Bitmain HK generated more than ▓▓▓▓▓▓ in revenue from its sale of ASIC devices to customers in California" over five years. (Suppl. MOL at 3.) But sales to parties other than Plaintiff are not relevant to establishing specific jurisdiction *over Plaintiff's claims* because they fail the "nexus" prong of the three-part test for specific jurisdiction—the requirement that a plaintiff's claims arise from the defendant's contacts. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("[T]he claim must be one which arises out of or relates to the defendant's forum-related activities … ."). Here, *Plaintiff's* claims do not "arise out of" sales to other customers.[1] *Id.* The Ninth Circuit employs a "but for" test to determine if a plaintiff's

---

[1] Plaintiff may argue these included sales to putative class members, but in a class action, the "claims of unnamed members are irrelevant to the question of specific jurisdiction." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017). "[A] defendant's contacts with the named plaintiff in a class action, without reference to the defendant's contacts with unnamed members of the proposed class, must be sufficient for the Court to exercise specific personal jurisdiction over the defendant. … [I]t is the named plaintiff's

1  claims arise from a given forum contact. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995)
2  ("We rely on a 'but for' test to determine whether a particular claim arises out of forum-related
3  activities and thereby satisfies the second requirement for specific jurisdiction."). And in
4  *Erickson*, this Court made clear that sales to *other customers* in California do not meet that "but
5  for" test where the "claim at issue … would be unchanged whether or not those sales were made."
6  *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015) (Donato, J.).
7  Plaintiff's claims here, too, would be unchanged even if Bitmain HK had not made *any* other
8  sales in California. Where, as here, the plaintiff's claim "does not arise out of those contacts, …
9  those contacts cannot form the basis for exercising personal jurisdiction" over the defendant. *Id.*

10  Even if Bitmain HK's sales to other California customers were somehow relevant, the
11  ▇▇▇▇▇▇ sales in California falls far short of showing the "express aiming"
12  required for this Court to assert jurisdiction over Bitmain. *See Dole Food Co. v. Watts*, 303 F.3d
13  1104, 1111 (9th Cir. 2002) (for specific personal jurisdiction to obtain, defendant must have
14  committed an act "expressly aimed at the forum state"); *J. McIntyre Mach., Ltd. v. Nicastro*, 564
15  U.S. 873, 882 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction
16  only where the defendant can be said to have targeted the forum … ."). Plaintiff's Exhibit 2
17  shows annual California sales of Bitmain ASIC devices (which can cost thousands of dollars
18  apiece) ranging from ▇▇▇ in 2016 to ▇▇▇ in 2018. (*See* Ex. 2.) However, these
19  California sales accounted for ▇▇▇ of global sales in 2015, ▇▇ in 2016, ▇▇ in 2017,
20  ▇▇ in 2018, and ▇▇▇ in 2019. (*See id.*) In some years, there were ▇▇▇▇
21  units sold in California. (*See id.*) District courts in this Circuit routinely decline to exercise
22  personal jurisdiction even where California sales account for a ▇▇▇▇ proportion of sales
23  than this. *See, e.g., Spy Optic Inc. v. AreaTrend, LLC*, 2020 WL 1849672, at *8-9 (S.D. Cal. Apr.
24  13, 2020) (no jurisdiction where California sales represented 4.7% of defendant's gross sales);
25  *Ayla, LLC v. Alya Skin Pty. Ltd.*, 2019 WL 5963149, at *2, *4 (N.D. Cal. Nov. 13, 2019) (no
26  jurisdiction where "less than 2% of [defendant's] sales have been to California"). The fact that

---

27  claim that 'must arise out of or result from the defendant's forum-related activities,' not the
28  claims of the unnamed members of the proposed class, who are not party to the litigation absent
    class certification." *Ambriz v. Coca Cola Co.*, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014).

Bitmain HK made ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in California relative to its total sales does not establish personal jurisdiction. *Ayla*, 2019 WL 5963149, at *4.

### B.  Bitmain's Globally Accessible Website Does Not Support Jurisdiction

Nor does it change the analysis if these sales were made "through Bitmain HK's commercial and highly interactive website." (Suppl. MOL at 4.) As Bitmain HK has maintained all along, Bitmain HK does not own or operate the bitmain.com website (*see* 11/7/2019 Liu Decl. ¶ 12), and after months of discovery, Plaintiff has no evidence that proves otherwise. Regardless of who operates the website—as Plaintiff is aware, it is operated by Bitmain Beijing, a sales and marketing subsidiary—the website does not support personal jurisdiction over Bitmain HK.

Following the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014),[2] district courts in this Circuit have recognized that it takes more than an interactive website accessible to Californians to establish personal jurisdiction over a defendant in California. To support specific personal jurisdiction, the website must be *specifically directed at Californians*. *See Spy Optic*, 2020 WL 1849672, at *5 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)). Common features of a "standard, modern website"—such as the ability to make online purchases, leave reviews, or send messages to the company about a purchase—are insufficient to show that California is the target of the defendant's conduct. *Ayla*, 2019 WL 5963149, at *4. Yet that is all Plaintiff points to here: the Bitmain website "allows customers to place orders … , receive technical support, log in to their account, review and modify orders, track shipments, obtain customs forms, engage in online chat with sales and support specialists, and complete interactive customer satisfaction surveys." (Suppl. MOL at 4.)

Plaintiff has no evidence that the Bitmain.com website targets California. To support specific jurisdiction, he must show California-directed activity where "the target audience is

---

[2] As explained *infra* in Section E, *Walden* "overrides" precedents that would support personal jurisdiction based on a defendant's knowledge of a plaintiff's forum contacts, like, for example, a defendant's knowledge that its website can be accessed by California consumers. In *Erickson*, this Court noted that the Ninth Circuit's *Cybersell* decision had "applie[d] a special test … in evaluating whether a defendant purposefully directs its activities at a forum state by setting up a website," but this Court nonetheless concluded that the "express aiming" analysis in *Walden* now applied regardless of "whether the Internet was used." 2015 WL 4089849, at *4 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). Thus, regardless of how "interactive" a website is, the controlling analysis is the "express aiming" test set forth in *Walden*.

consumers in California, rather than the U.S." generally. *AirWair Int'l Ltd. v. Pull & Bear España SA*, 2020 WL 2113833, at *5 (N.D. Cal. May 4, 2020) (U.S.-facing website did not show Spanish company was targeting California market); *see also J. McIntyre*, 564 U.S. at 884-85 (for specific jurisdiction, defendant must target the forum state, not U.S. generally). Evidence of such express aiming at California could include "selling more products to consumers in California than in any other state" or "maintaining a website containing a page directed specifically to California consumers." *Spy Optic*, 2020 WL 1849672, at *8. Plaintiff has not submitted *any* evidence that demonstrates Bitmain HK tailored its website and sales specifically to California. To the contrary, his evidence shows that California was a marginal and insignificant market for the company.

In addition, communications *that Plaintiff initiated* through the Bitmain website cannot establish that Bitmain HK purposefully directed its activities at California. (*See* Suppl. MOL at 4 ("Plaintiff Gevorkyan interacted with … Bitmain HK personnel through the website's chat feature to follow up on his orders").) For starters, Plaintiff provides no evidence that these communications were with Bitmain HK employees. And in any event, those communications cannot establish "purposeful availment" as a matter of law because *Plaintiff* was the one who reached out to *Bitmain HK*. *See Dynamic Software Servs. v. Cyberbest Tech., Inc.*, 2014 WL 3373924, at *8 (N.D. Cal. July 9, 2014) (no purposeful availment where "it was Plaintiff who solicited business from Defendant in an e-mail"); *Orler v. Commercial Servs. Grp., Inc.*, 2006 WL 8455380, at *2 (S.D. Cal. Mar. 8, 2006) (no purposeful availment where "only direct contacts between Plaintiff and Defendant are Plaintiff's telephone calls to Defendant to complain").

### C. Bitmain's "Intercontinental Sales Office" Does Not Support Jurisdiction

Plaintiff contends that "Bitmain HK maintains its sales office for the intercontinental North, South and Central American sales in San Jose, California." (Suppl. MOL at 5.) This is pure fiction. There is no "sales office" in San Jose; Plaintiff cannot point to a single sale of an ASIC device from the San Jose office. And as Bitmain HK explained long ago, *Bitmain HK* does not operate any offices in California (11/7/2019 Liu Decl. ¶ 5), and none of Plaintiff's exhibits identifies any office in California as an "intercontinental sales office." Plaintiff is well aware that the San Jose office and the Sunnyvale office before it were both leased by Bitmain Inc., a separate

research-and-development affiliate. (*See* Orr Decl. Ex. A (Bitmain Inc. Lease).) Although Plaintiff points to one insurance policy from 2018 that listed "Bitmain Technologies Ltd." as the insured on the property, the insurer had issued that policy in error, and it promptly corrected the policy to name Bitmain Inc. as the actual policyholder. (Christenson Decl. ¶¶ 3-5 & Ex. A.)

None of this ultimately matters, of course, because there is no evidence that Plaintiff's claims arise from the San Jose office or any activities in that office. As Plaintiff acknowledges, he "needs to show what [defendant] did in this district, if anything, to give rise to [plaintiff's] claim." (Suppl. MOL at 2 (citing *Zithromia Ltd. v. Gazeus Negocios de Internet SA*, 2018 U.S. Dist. LEXIS 205704, at *4 (N.D. Cal. Dec. 5, 2018); *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).) "A corporation's 'continuous activity of some sorts within a state … is not enough to support the demand that the corporation be amenable to suits *unrelated to that activity*." *Goodyear*, 564 U.S. at 927 (emphasis added). Yet Plaintiff does not even *attempt* to connect his claims to any Bitmain HK activities that allegedly occurred at the San Jose office. He does not allege he communicated with individuals at this office, he does not allege he visited this office, and he does not allege he bought his ASIC devices through this office.

As the Supreme Court made clear in *Bristol-Myers Squibb*, it is not sufficient for a defendant simply to have offices or personnel in the forum for a district court to assert specific personal jurisdiction over that defendant. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). The *Bristol-Myers* Court held that specific jurisdiction could not be based on "extensive forum contacts that are unrelated to [the plaintiffs'] claims," which included "[f]ive of the company's research and laboratory facilities, which employ a total of around 160 employees," "250 sales representatives in California," and "a small state-government advocacy office in Sacramento." *Id.* at 1778, 1781. So even if the San Jose office and all activities in that office could be attributed to Bitmain HK (activities that are far less extensive than the contacts of the defendant in *Bristol-Myers*), Plaintiff's complete failure to explain how his claims "arise out of" those activities renders the San Jose office (and its employees and insurance policies) irrelevant to specific personal jurisdiction.

    **D.**    **Bitmain HK's Sharing of a Common Trade Name, Directors, or Senior Management with Other Bitmain Entities Does Not Establish Jurisdiction**

Plaintiff has not argued that Bitmain Inc. or Bitmain Beijing are alter egos of Bitmain HK,

and he cites no support for that argument. However, he does cite facts that would only be relevant if he were arguing that Bitmain HK's affiliates are its alter egos: (1) "Bitmain Beijing is a wholly owned subsidiary" of Bitmain HK (Suppl. MOL at 5); (2) "Bitmain HK's holding company operates numerous corporations including several companies relating to the marketing and sale of its ASIC devices" (*id.* at 6), and (3) Bitmain HK and its sister companies "operate using the same Bitmain.com domain name" and "share the same management and resources" (*id.*).

Plaintiff's failure to cite any legal authority for the argument that these facts support a finding of alter ego status effectively waives any such argument. *See Sullivan v. Comm. of Social Sec.*, 2014 WL 6685075, at *1 n.4 (E.D. Cal. Nov. 25, 2014) ("[B]ecause plaintiff's brief provides no substantive argument and legal authorities in that regard, any such issue is waived."). But if this Court were to consider whether jurisdiction were supported on that basis, controlling California law compels the conclusion that it is not.

If Plaintiff is attempting to argue that Bitmain HK is subject to personal jurisdiction based on its affiliates' contacts, he has not met the high burden to show the companies are alter egos. Alter ego doctrine is an "extreme remedy" to be used only in "exceptional circumstances" where the "presumption of corporate separateness … [is] overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)). To show an alter ego relationship, Plaintiff must prove something "more than a normal parent-subsidiary relationship" in which there is some measure of control of the subsidiary by the parent. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1298-1300 (S.D. Cal. 2003). The bare fact that the parent company owns the subsidiary company does not support a finding of alter ego status. *See id.* It is immaterial, then, that Bitmain Beijing is "wholly owned" by Bitmain HK, or that the same holding company that owns Bitmain HK "operates numerous corporations" including some U.S. subsidiaries. (Suppl. MOL at 5-6.) Plaintiff needs to show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017). He has shown neither.

In fact, the only supposed indicia of alter ego status Plaintiff points to here have been rejected by controlling appellate decisions. Plaintiff argues that Bitmain HK and its affiliates "operate using the same Bitmain.com domain name." (Suppl. MOL at 6.) He cites no court decision finding personal jurisdiction or alter ego status on that ground, nor could he. The "common use of a trade name" such as Bitmain "[i]s not a sufficient basis for establishing personal jurisdiction." *Von Grabe*, 312 F. Supp. 2d at 1301; *see also In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) (a company being "portrayed as a single brand to the public … does not demonstrate the necessary control by defendant parent over the subsidiaries"). It is therefore immaterial that Bitmain HK and other companies all operate under the "Bitmain" trademark or the "Bitmain.com" web domain name.

Although overlapping management or shared resources can *sometimes* weigh in favor of alter ego status, Plaintiff falls far short of his burden to show that Bitmain HK, on the one hand, and Bitmain Inc. and Bitmain Beijing, on the other, have "such a unity of interest and ownership" that the separate personalities of the two entities no longer exist. *See VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) ("use of the same offices" and "identical directors and officers" are among "numerous factors" courts consider in alter ego analysis, and "[n]o single factor is determinative"). At most, Plaintiff shows (i) Jihan Wu signed a contract for both Bitmain HK and Bitmain Inc. because he was on the board of directors for both companies, (ii) one job posting, for employment at Bitmain Inc., described a role that involved, in part, "directly report[ing] to senior management in HQ [Beijing, China]," and (iii) two examples of communications in which *third parties* confuse Bitmain Inc. with other Bitmain entities. (*See* Exs. 10, 13, 15, 16.) This evidence does not support Plaintiff's statement that "Bitmain HK's United States entities [*sic*] are centrally controlled from Bitmain HK's offices in Haidan District." (Suppl. MOL at 6.) In fact, none of Plaintiff's evidence controverts Bitmain HK's evidence that it is separate and independent from its parent and sister companies, and that it has its own books and records, its own workforce, and its own offices. (*Compare* 10/1/2019 Luyao Decl., *with* Ex. 13 (Bitmain Inc. Services Agreement).) To the extent there is some overlap in personnel, "[i]t is considered a normal attribute of ownership that officers and directors of the parent serve as

officers and directors of the subsidiary." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 531, 548-49 (2000) (finding no alter ego relationship where "some of Sonora Mining's directors and officers were also directors and officers of Diamond").[3]

Thus, even if Plaintiff were attempting to make an alter ego argument, he fails to provide evidence that would show such a relationship between Bitmain HK and its affiliates. Instead, he suggests facts that fail to show alter ego status whether considered separately or in the aggregate. *See Sonora Diamond*, at 551 ("The sum of a series of zeros, no matter how many, is still zero.").

### E. Plaintiff's Conduct in California Is Irrelevant to Jurisdiction over Bitmain

Lastly, Plaintiff contends this Court has jurisdiction over Bitmain HK because he alleges that Bitmain HK sold ASIC devices "with a default configuration that mined cryptocurrency in California using its customer's electricity, generated from California power companies, and using its customers' California internet service provided by California internet providers." (Suppl. MOL at 3.) Even if all these allegations were true, none of these facts would matter. As Plaintiff himself acknowledges, "[t]he proper focus … is on the defendant and its connection to the forum, *regardless of what contacts the plaintiff might have there*." (*Id.* at 2 (quoting *Sharpe v. Puritan's Pride, Inc.*, 2019 U.S. Dist. LEXIS 6526, at *11-12 (N.D. Cal. Jan. 14, 2019)) (emphasis added).) Contradicting his own authorities, Plaintiff argues that *his* California contacts, by themselves, are sufficient to establish personal jurisdiction over Bitmain HK. (*Id.* at 3, 6.) He is wrong.

To the extent Plaintiff is suggesting that specific jurisdiction obtains because Bitmain could foresee that its actions would result in harm in California, he relies on bad law. As this Court has recognized, the Supreme Court's decision in *Walden* "overrides," at least in part, the effects test articulated in *Calder* and its progeny. *Erickson*, 2015 WL 4089849, at *3. Under the *Calder* test, specific jurisdiction could obtain where the defendant's actions "caus[e] harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). But as this Court explained in *Erickson*, the

---

[3] Plaintiff cites blog posts from "CoinGeek" and "CoinTelegraph" that he contends call into question Mr. Liu's "authority to act on behalf of Bitmain HK." (Suppl. MOL at 7 & nn.1-2.) But Mr. Liu's declarations are based on his personal knowledge, not his authority to act on behalf of Bitmain HK or any other entity. Plaintiff submits no evidence that conflicts with Mr. Liu's statements, or which would undermine the foundation for Mr. Liu's testimony.

Supreme Court in *Walden* "rejected the idea … that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis." 2015 WL 4089849, at *3; *accord Caracal Enters. LLC v. Suranyi*, 2017 WL 446313, at *3 n.3 (N.D. Cal. Feb. 2, 2017) (Seeborg, J.); *Adobe Systems Inc. v. Cardinal Camera & Video Ctr., Inc.*, 2015 WL 5834135, at *4 (N.D. Cal. Oct. 7, 2015) (Tigar, J.). Here, Plaintiff asks this Court to assert personal jurisdiction over Bitmain HK based on contacts that are entirely of his making: *his* choice to live in California, *his* choice to set up ASIC devices in California, and *his* choice to contract with Californian public utilities for power or internet. But "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (citing *Walden*, 571 U.S. at 285). Indeed, "[a]ny decision that implies otherwise can no longer be considered authoritative." *Id.*

### III.  BITMAIN COOPERATED ON JURISDICTIONAL DISCOVERY

Plaintiff repeats his contention that Bitmain "stonewalled" his discovery efforts after he waited months to raise issues with Bitmain. (Suppl. MOL at 9-10.) Bitmain has responded to Plaintiff's discovery letter on that subject and will not repeat itself here. (Dkt. 58) However, Bitmain notes that Plaintiff has apparently abandoned his argument that *all* of Bitmain HK's forum contacts are relevant to specific personal jurisdiction, even if those contacts have no connection to his claims. He now concedes that to meet his burden to show specific jurisdiction is proper, he must "demonstrat[e] that the lawsuit arises out of [Bitmain's] contacts with this forum … [and] needs to show what [Bitmain] did in this district, if anything to give rise to [Plaintiff's] claim." (Suppl. MOL at 2 (citing *Zithromia Ltd.*, 2018 U.S. Dist. LEXIS 205704, at *4).) Plaintiff thus acknowledges that Bitmain HK's forum contacts are relevant to specific jurisdiction only if his "lawsuit arises out of" those contacts. Yet he has made no attempt to explain how his claims arise out of the contacts on which he sought discovery.

### IV.  CONCLUSION

For the foregoing reasons, the Court should find it lacks personal jurisdiction over Bitmain HK and dismiss Plaintiff's First Amended Complaint with prejudice.

DATED: July 2, 2020

Respectfully submitted,

/s/ Carlos M. Lazatin
Carlos M. Lazatin
William K. Pao
Jason A. Orr
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: clazatin@omm.com
Email: wpao@omm.com
Email: jorr@omm.com

*Counsel for Defendant Bitmain Technologies, Ltd.*