# Exhibit A

IN WITNESS WHEREOF, this First Amendment has been executed as of the day and year first above written.

| "LANDLORD" | "TENANT" |
|---|---|
| RIVERPARK TOWER II OWNER LLC, a Delaware limited liability company | BITMAIN INC., a Delaware corporation |

By: _____
Name: Steve Novick
Its: Authorized Signatory

By: _____
Name: Ron Hoyl
Its Authorized Signatory

By: _____
Name: Wen guang Wang
Its: Director

FIRST AMENDMENT TO OFFICE LEASE

This FIRST AMENDMENT TO OFFICE LEASE (this "**First Amendment**") is made and entered into as of August 8, 2019, by and between RIVERPARK TOWER II OWNER LLC, a Delaware limited liability company ("**Landlord**"), and BITMAIN INC., a Delaware corporation ("**Tenant**").

R E C I T A L S :

A.   Landlord and Tenant entered into that certain Office Lease dated June 27, 2018 (the "**Lease**"), whereby Landlord leased to Tenant and Tenant leased from Landlord those certain premises consisting of approximately 19,735 rentable square feet, commonly known as Suite 300 (the "**Original Premises**"), and located on the third (3rd) floor of the building located at 300 Park Avenue, San Jose, California 95110 (the "**Building**").

B.   Landlord and Tenant desire to (i) relocate the leased premises from the Original Premises to that certain space consisting of approximately 3,556 rentable square feet of space, commonly known as Suite 100 (the "**Substitute Premises**"), and located on the first floor of the Building, as delineated on **Exhibit A** attached hereto and made a part hereof, (ii) extend the Lease Term, and (iii) make other modifications to the Lease, and in connection therewith, Landlord and Tenant desire to amend the Lease as hereinafter provided.

A G R E E M E N T :

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.   **Capitalized Terms**. All capitalized terms when used herein shall have the same meaning as is given such terms in the Lease unless expressly superseded by the terms of this First Amendment.

2.   **Original Premises**.

2.1   **In General**. Landlord and Tenant hereby acknowledge and agree that, on or before the date (the "**Surrender Date**") immediately preceding the Substitute Premises Commencement Date (as that term is defined in Section 3.1 below), notwithstanding any provision to the contrary contained in the Lease, Tenant shall quit and surrender and deliver exclusive possession to Landlord of the Original Premises in accordance with the terms of the Lease as if the Lease had terminated. Accordingly, effective as of the Surrender Date, provided that Tenant has paid the Relocation Fee (as that term is defined in Section 2.5 below), Tenant's lease of the Original Premises shall automatically terminate and be of no further force and effect, and Landlord and Tenant shall be relieved of their respective obligations under the Lease with respect to the Original Premises, except those obligations of Tenant set forth in the Lease, as amended hereby,

which relate to the term of Tenant's lease of the Original Premises and/or which specifically survive the expiration or earlier termination of Tenant's lease of the Original Premises, including, without limitation, the payment by Tenant of all amounts owed by Tenant under the Lease, as amended, with respect to the Original Premises through and including the Surrender Date (collectively, the "**Survival Obligations**"). Effective as of the day immediately following the Surrender Date, the Original Premises shall no longer be a part of the "Premises" and, effective as of the Substitute Premises Commencement Date, the term "Premises" shall refer solely to the Substitute Premises.

    2.2    **Condition of Original Premises**. Tenant acknowledges that Tenant has been and is in occupancy of the Original Premises pursuant to the Lease, and is fully aware of the condition of the Original Premises. In addition, Tenant shall continue to accept the Original Premises in its "as is" condition, and Landlord shall not be obligated to provide or pay for any improvements or alterations to the Original Premises. Tenant also acknowledges that neither Landlord nor any agent of Landlord has made any representation or warranty regarding the condition of the Original Premises, the Building, or the Project or with respect to the suitability of the same for the conduct of Tenant's business.

    2.3    **Surrender of Original Premises**. Effective as of the Surrender Date, Tenant hereby agrees to vacate the Original Premises and surrender and deliver exclusive possession of the Original Premises to Landlord on or before the Surrender Date in accordance with the provisions of the Lease and thereafter, Tenant shall have no further obligations with respect to the Original Premises, except with respect to the Survival Obligations. In the event that Tenant fails to vacate the Original Premises and surrender and deliver exclusive possession of the Original Premises to Landlord on or before the Surrender Date in accordance with the provisions of the Lease, then Tenant shall be deemed to be in holdover of the Original Premises and shall be subject to the terms of Article 16 of the Lease.

    2.4    **Representations of Tenant**. Tenant represents and warrants to Landlord that (i) Tenant has not heretofore assigned or sublet all or any portion of its interest in the Lease or in the Original Premises; (ii) no other person, firm or entity has any right, title or interest in the Lease or in the Original Premises through Tenant; (iii) Tenant has the full right, legal power and actual authority to enter into this First Amendment and to terminate Tenant's lease with respect to the Original Premises without the consent of any person, firm or entity; and (iv) Tenant has the full right, legal power and actual authority to bind Tenant to the terms and conditions hereof. Tenant further represents and warrants to Landlord that as of the date hereof there are no, and as of the Surrender Date there shall not be any, mechanic's liens or other liens encumbering all or any portion of the Original Premises, by virtue of any act or omission on the part of Tenant, its predecessors, contractors, agents, employees, successors or assigns. Notwithstanding the termination of the Lease with respect to the Original Premises, the representations and warranties set forth in this Section 2.4 shall survive the Surrender Date and Tenant shall be liable to Landlord for any inaccuracy or any breach thereof.

    2.5    **Relocation Fee**. In consideration for Tenant's relocation from the Original Premises to the Substitute Premises, concurrently with Tenant's execution of this First Amendment, Tenant shall pay to Landlord a relocation fee (the "**Relocation Fee**") in the amount of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00).

3. **Modification of Premises**.

3.1 **In General**. Effective as of the date (the "**Substitute Premises Commencement Date**") which is the earlier to occur of (i) the date upon which Tenant commences to conduct business in the Substitute Premises, and (ii) the date upon which the Substitute Premises is "Ready for Occupancy," as that term is defined in Section 3 of the "Tenant Work Letter," as that term is defined in Section 3.3, below, which date is anticipated to be October 1, 2019, Tenant shall lease from Landlord and Landlord shall lease to Tenant the Substitute Premises on the terms and conditions set forth in the Lease, as hereby amended. Tenant hereby acknowledges that the Substitute Premises are currently occupied by another tenant of the Building. If Landlord is unable for any reason to deliver possession of the Substitute Premises to Tenant on any specific date, then Landlord shall not be subject to any liability for its failure to do so, and such failure shall not affect the validity of this First Amendment or the obligations of Tenant hereunder. However, for avoidance of doubt, if Landlord is unable for any reason to cause the Substitute Premises Commencement Date to occur on or before September 1, 2019, then Tenant shall have the right to stay in the Original Premises until the Substitute Premises Commencement Date; provided that from and after September 1, 2019 until the Substitute Premises Commencement Date, Tenant shall only be obligated to pay Base Rent in the amount set forth in Section 4.2 of this First Amendment, below.

3.2 **Substitute Premises Term**. Landlord and Tenant acknowledge that the Lease Term is scheduled to expire on November 30, 2022, pursuant to the terms of the Lease. Notwithstanding anything to the contrary set forth in the Lease, except as provided in Section 2 above, the Lease Term is hereby extended and shall expire on the day immediately preceding the fifth (5th) anniversary of the Substitute Premises Commencement Date, if the Substitute Premises Commencement Date is on the first day of a calendar month, or the last day of the month in which the fifth (5th) anniversary of the Substitute Premises Commencement Date, if the Substitute Premises Commencement Date shall be other than the first day of a calendar month, unless sooner terminated as provided in the Lease, as hereby amended (the "**New Lease Expiration Date**"). The period of time beginning on the Substitute Premises Commencement Date and ending on the New Lease Expiration Date shall be referred to herein as the "**Substitute Premises Term**."

3.3 **Condition of Substitute Premises**. Except as specifically set forth in Section 7 below and **Exhibit B** attached hereto (the "**Tenant Work Letter**"), Landlord shall not be obligated to provide or pay for any improvement work or services related to the improvement of the Substitute Premises, and Tenant shall accept the Substitute Premises in its presently existing, "as-is" condition. Tenant also acknowledges that neither Landlord nor any agent of Landlord has made any representation or warranty regarding the condition of the Substitute Premises, the Building, or the Project or with respect to the suitability of the same for the conduct of Tenant's business.

4. **Base Rent**.

4.1 **Original Premises**. On and prior to the Surrender Date, Tenant shall continue to pay the Monthly Installment of Base Rent and Annual Base Rent for the Original Premises in accordance with the terms of the Lease.

4.2 **Substitute Premises**. Notwithstanding anything to the contrary set forth in the Lease, commencing on the Substitute Premises Commencement Date and continuing throughout the Substitute Premises Term, Tenant shall pay to Landlord the Monthly Installment of Base Rent and Annual Base Rent for the Substitute Premises as follows, and otherwise in accordance with the terms of the Lease:

| Period During Substitute Premises Term | Annual Base Rent | Monthly Installment of Base Rent | Monthly Base Rent per Rentable Square Foot of Substitute Premises |
|---|---|---|---|
| Months 1-12 | $204,825.60 | $17,068.80 | $4.80 |
| Months 13-24 | $210,970.32 | $17,580.86 | $4.94 |
| Months 25-36 | $217,299.48 | $18,108.29 | $5.09 |
| Months 36 – 48 | $223,818.48 | $18,651.54 | $5.25 |
| Months 48 – New Lease Expiration Date | $230,533.08 | $19,211.09 | $5.40 |

5. **Additional Rent**.

5.1 **Original Premises**. Notwithstanding anything in the Lease, as hereby amended, to the contrary (i) Tenant shall continue to be obligated to pay Tenant's Share of Direct Expenses in connection with the Original Premises, which arise or accrue on and prior to the Surrender Date in accordance with the terms of the Lease, and (ii) subject to the terms of Section 2.3, above, Tenant shall not be obligated to pay Tenant's Share of Direct Expenses in connection with the Original Premises, attributable to any period of time on after the Substitute Premises Commencement Date.

5.2 **Substitute Premises**. Commencing on the Substitute Premises Commencement Date, Tenant shall pay Tenant's Share of Direct Expenses, which arise or accrue on and after the Substitute Premises Commencement Date in connection with the Substitute Premises in accordance with the terms of the Lease; provided, however, Tenant's Share shall be deemed to equal 1.18%.

6. **Security Deposit**. Concurrent with Tenant's execution of this First Amendment, Tenant shall deposit with Landlord a security deposit (the "**Security Deposit**") in the amount of One Hundred Fifteen Thousand Two Hundred Sixty-Six and 54/100 Dollars ($115,266.54), as security for the faithful performance by Tenant of all of its obligations under the Lease (as hereby amended). If Tenant defaults with respect to any provisions of the Lease (as hereby amended), including, but not limited to, the provisions relating to the payment of Rent, the removal of property and the repair of resultant damage, Landlord may, without notice to Tenant, but shall not be required to, apply all or any part of the Security Deposit for the payment of any Rent or any other sum in default and Tenant shall, upon demand therefor, restore the Security Deposit to its original amount. Any unapplied portion of the Security Deposit shall be returned to Tenant, or, at

Landlord's option, to the last assignee of Tenant's interest hereunder, within sixty (60) days following the expiration of the Lease Term. Tenant shall not be entitled to any interest on the Security Deposit and Landlord shall have the right to commingle the Security Deposit with Landlord's other funds. Tenant hereby irrevocably waives and relinquishes any and all rights, benefits, or protections, if any, Tenant now has, or in the future may have, under Section 1950.7(c) of the California Civil Code, any successor statute, and all other provisions of law, now or hereafter in effect, including, but not limited to, any provision of law which (i) establishes the time frame by which a landlord must refund a security deposit under a lease, or (ii) provides that a landlord may claim from a security deposit only those sums reasonably necessary to remedy defaults in the payment of rent, to repair damage caused by a tenant, or to clean the subject premises.

7.     **No Letter of Credit**. Landlord and Tenant hereby acknowledge and agree that Tenant did not provide Landlord with the L-C contemplated under Article 21 of the Lease. Instead, Tenant shall deliver to Landlord the Security Deposit pursuant to Section 6 above. In connection with the foregoing, Article 21 of the Lease is hereby deleted in its entirety and of no further force or effect.

8.     **Allowance**. Tenant and Landlord hereby acknowledge and agree that Tenant shall no longer be entitled to the undisbursed portion of the Tenant Improvement Allowance under Section 2 of **Exhibit B** to the Lease. Instead, notwithstanding any provision to the contrary contained herein, Tenant shall be entitled to a one-time tenant improvement allowance (the "**Allowance**") in an aggregate amount equal to Thirty One Thousand Eight Hundred Ninety-Four and 79/100 Dollars ($31,894.79), for the costs relating to the design and construction of Tenant's improvements that are permanently affixed to the Substitute Premises (the "**Tenant Improvements**"). In no event shall Landlord be obligated to make disbursements from the Allowance prior to the Substitute Premises Commencement Date, nor for costs which are unrelated to the Tenant Improvements or in a total amount which exceeds the Allowance. Except as otherwise provided in this Section 8, Tenant shall perform the Tenant Improvements at its sole cost and expense and in accordance with the terms of Articles 8 and 9 of the Lease. Subject to the provisions of this Section 8 above, following the completion of the Tenant Improvements in accordance with Articles 8 and 9 of the Lease, Landlord shall deliver a check made payable to Tenant in payment for the applicable portion of the Allowance, provided that (i) if applicable, Tenant's architect delivers to Landlord a certificate, in a form reasonably acceptable to Landlord, certifying that the construction of the Tenant Improvements has been completed, (ii) Tenant delivers to Landlord properly executed unconditional mechanic's lien releases in compliance with both California Civil Code Section 8134 and Section 8138, (iii) Landlord has determined that no substandard work exists which adversely affects the mechanical, electrical, plumbing, heating, ventilating and air conditioning, life-safety or other systems of the Building, the curtain wall of the Building, the structure or exterior appearance of the Building, or any other tenant's use of such other tenant's leased premises in the Building, and (iv) Tenant delivers to Landlord all invoices, marked as having been paid, from all general contractors, subcontractors, laborers, materialmen, and suppliers used by Tenant for labor rendered and materials delivered to the Premises in connection with the Tenant Improvements. In the event that the Allowance is not fully utilized by Tenant by September 30, 2020, then such unused amounts shall revert to Landlord, and Tenant shall have no further rights with respect thereto.

9. **Parking**. Notwithstanding anything to the contrary in the Lease, commencing on the Substitute Premises Commencement Date, Tenant may rent from Landlord up to eight (8) unreserved parking passes (i.e., two and one-quarter (2¼) unreserved parking passes for every 1,000 rentable square feet of the Substitute Premises) pursuant to the terms and conditions of Article 28 of the Lease.

10. **Broker**. Landlord and Tenant hereby warrant to each other that they have had no dealings with any real estate broker or agent in connection with the negotiation of this First Amendment other than Newmark Knight Frank (the "**Broker**"), and that they know of no other real estate broker or agent who is entitled to a commission in connection with this First Amendment. Each party agrees to indemnify and defend the other party against and hold the other party harmless from and against any and all claims, demands, losses, liabilities, lawsuits, judgments, and costs and expenses (including, without limitation, reasonable attorneys' fees) with respect to any leasing commission or equivalent compensation alleged to be owing on account of the indemnifying party's dealings with any real estate broker or agent, other than the Broker. The terms of this Section 10 shall survive the expiration or earlier termination of the Lease, as hereby amended.

11. **California Required Disclosures**. For purposes of Section 1938 of the California Civil Code, Landlord hereby discloses to Tenant, and Tenant hereby acknowledges, that the Substitute Premises have not undergone inspection by a Certified Access Specialists (CASp). As required by Section 1938(e) of the California Civil Code, Landlord hereby states as follows: "A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises." In furtherance of the foregoing, Landlord and Tenant hereby agree as follows: (a) any CASp inspection requested by Tenant shall be conducted, at Tenant's sole cost and expense, by a CASp designated by Landlord, subject to Landlord's reasonable rules and requirements; (b) Tenant, at its sole cost and expense, shall be responsible for making any improvements or repairs within the Substitute Premises to correct violations of construction-related accessibility standards; and (c) if anything done by or for Tenant in its use or occupancy of the Substitute Premises shall require any improvements or repairs to the Building or Project (outside the Substitute Premises) to correct violations of construction-related accessibility standards, then Tenant shall reimburse Landlord upon demand, as Additional Rent, for the cost to Landlord of performing such improvements or repairs.

12. **Notices**. Notwithstanding anything to the contrary contained in the Lease, as of the Substitute Premises Commencement Date, any Notices to Tenant must be sent, transmitted, or delivered, as the case may be to the Substitute Premises.

13.     **No Further Modification**. Except as set forth in this First Amendment, all of the terms and provisions of the Lease shall apply with respect to the Substitute Premises and shall remain unmodified and in full force and effect.

14.     **Counterparts and Electronic Signatures**.  This First Amendment may be executed in one or more counterparts, each of which shall be an original, and all of which together shall constitute a single instrument. Further, the parties hereto consent and agree that this First Amendment may be signed and/or transmitted by e-mail of a .pdf document or using electronic signature technology (e.g., via DocuSign or similar electronic signature technology), and that such signed electronic record shall be valid and as effective to bind the party so signing as a paper copy bearing such party's handwritten signature. The parties further consent and agree that (1) to the extent a party signs this First Amendment using electronic signature technology, by clicking "SIGN", such party is signing this First Amendment electronically, and (2) the electronic signatures appearing on this First Amendment shall be treated, for purposes of validity, enforceability and admissibility, the same as handwritten signatures.

[signatures follow on next page]

# EXHIBIT A

## OUTLINE OF SUBSTITUTE PREMISES



803382.03/WLA
377252-00013/8-8-19/svlpmr

EXHIBIT A
-1-

RIVERPARK TOWER II
[First Amendment]
[BitMain Inc.]

# EXHIBIT B

## TENANT WORK LETTER

1.     Improvements. Except as provided below, Landlord shall not be obligated to construct or install or pay for any improvements or facilities of any kind in the Substitute Premises, and Tenant shall accept the Substitute Premises in its currently-existing, "as-is" condition. Notwithstanding the foregoing, subject to the terms of this Tenant Work Letter, Landlord shall (i) paint the interior painted areas of the Substitute Premises with one (1) coat of Building standard paint, in a Building standard color selected by Tenant, subject to availability within two (2) business days following demand by Landlord, and (ii) install new Building standard carpet throughout the Premises, in a Building standard color selected by Tenant, subject to availability within two (2) business days following demand by Landlord (collectively the "**Improvements**"). The Improvements shall be completed by Landlord in accordance with Building standards. Tenant shall have no right to modify or alter the Improvements.

2.     Warranties and Guaranties. Landlord hereby assigns to Tenant all warranties and guaranties by the contractor who constructs or installs the Improvements, and Tenant hereby waives all claims against Landlord relating to or arising out of the construction or installation of the Improvements.

3.     Ready for Occupancy. The Substitute Premises shall be considered "Ready for Occupancy" upon the substantial completion by Landlord of the Improvements. For purposes of this First Amendment, "Substantial Completion" of the Improvements shall occur upon the completion of the Improvements, with the exception of any punchlist or other items which do not prevent or materially adversely affect Tenant's use or occupancy of the Substitute Premises. In the event that the acts or omissions of Tenant shall delay the Substantial Completion of the Improvements, then the Substitute Premises shall be deemed to be Ready for Occupancy as of the date the same would have occurred but for such act or omission of Tenant.

803382.03/WLA
377252-00013/8-8-19/sv/pmr

EXHIBIT B
-1-

RIVERPARK TOWER II
[First Amendment]
[BitMain Inc.]