**FRONTIER LAW CENTER**
Robert L. Starr (183052)
robert@frontierlawcenter.com
Adam M. Rose (210880)
adam@frontierlawcenter.com
Karo G. Karapetyan (318101)
karo@frontierlawcenter.com
Manny Starr (319778)
manny@frontierlawcenter.com
23901 Calabasas Road, Suite 2074
Calabasas, California 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

**POMERANTZ LLP**
Jordan L. Lurie (130013)
jllurie@pomlaw.com
Ari Y. Basser (272618)
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
Facsimile: (310) 861-8591

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (298219)
chris@marlboroughlawfirm.com
445 Broad Hollow Road, Suite 400
Melville, NY 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952

Attorneys for Plaintiff Gor Gevorkyan

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Gor Gevorkyan on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Bitmain, Inc., Bitmain Technologies, Ltd. and DOES 1 to 10,<br><br>Defendants. | Case Number: 3:18-cv-07004-JD<br><br>**PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Gor Gevorkyan submits this second supplemental brief in opposition to Defendant Bitmain Technologies, Ltd.'s ("Bitmain Hong Kong") Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") (D.E. No. 33). Plaintiff previously submitted a brief in opposition to the Motion on October 23, 2019 (D.E. No. 35) and a First Supplemental Opposition Brief on June 11, 2020 (D.E. No. 62-4). The parties have conducted a period of jurisdictional discovery which was delayed as a result of restrictions relating to the coronavirus pandemic and China's prohibition against taking depositions for U.S. cases in China.

Before the deposition, this Court noted that there was already substantial evidence in the record to support jurisdiction against Bitmain Hong Kong. *See* Declaration of Manny Starr ("Starr Decl.," filed herewith), Exh. 1, 12/19/19 Hearing Tr. at 2:14-18, ("I was initially inclined just to find jurisdiction because there is certainly a lot in the record about Bitmain Technologies."). That evidence includes the following: 1) Bitmain Hong Kong's highly interactive website from which Bitmain Hong Kong sells ASIC devices to customers in California;[1] 2) Bitmain Hong Kong's "Official YouTube Channel" with a video promoting its intercontinental sales office in San Jose, California (D.E. 35-8), 3) Bitmain Hong's Kong's efforts to hire sales specialists to work in Bitmain's San Jose Office and listing its office in San Francisco, California (D.E. 35-4); 4) a LinkedIn page for Bitmain Sales Representative (Peng Li) listing his office in San Jose (D.E. 35-9); and 5) documents concerning Bitmain's California ASIC device sales forum in California (D.E. 35-12).

This evidence shows the court may exercise jurisdiction over Bitmain, because Bitmain purposefully directed its activities toward residents of California and the Northern District's exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*

---

[1] As stated in the declaration of former CFO for Bitmain Hong Kong and Bitmain's Holding Company, Luyao Liu, who admitted that customers purchase ASIC devices from Bitmain Hong Kong's website. D.E. 32-1, Liu Decl. at ¶1 (Defining "Bitmain" as "Defendant Bitmain Technologies Ltd."), ¶6 ("when a customer purchases ASIC devices from Bitmain's website…"). Mr. Liu also produced Bitmain Hong Kong's purported terms of service from Bitmain Hong Kong's website. See id. at Exh. 1.


*Corp. v. Rudzewicz* (1985) 471 U.S. 462, 477-478; *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme* (9th Cir. 2006) 433 F.3d 1199, 1206 (en banc). *See also Starlight Intl., Ltd. v. Lifeguard Health, LLC*, 2008 U.S. Dist. LEXIS 58927, at **13-14 (N.D. Cal. July 22, 2008) ("Courts within the Ninth Circuit have concluded [] that a company's use of an interactive website may constitute purposeful availment of a forum.").

Plaintiff's supplemental briefing set forth additional evidence, including: 1) generation of revenue for Bitmain Hong Kong from the sales of ASIC devices in California (D.E. 62-9); and 2) proof of insurance for real property in the state of California listing Bitmain Hong Kong as the insured party (D.E. 62-18).[2]

The Court previously expressed concern that Bitmain Hong Kong was doing a "tap dance around the company name" to avoid jurisdiction in California and stated that "if I get the sense that anybody has played hide the ball with jurisdiction, there are going to be consequences ... and the consequences will be significant." Starr Decl. Exh. 1, 12/19/19 Hearing Tr. at 3:2-5; 5:2-3. Jurisdictional discovery has confirmed that this is exactly how Defendant and the other Bitmain entities operate.

Bitmain Hong Kong produced a witness employed by a wholly owned subsidiary of the Defendant, Beijing Bitmain Technology Co. ("Beijing Bitmain"), for a deposition concerning jurisdiction over Bitmain Hong Kong. As confirmed by the Beijing Bitmain employee, Bitmain Hong Kong uses several entities in connection with the sales of Bitmain ASIC devices in the United States, including Beijing Bitmain and other Bitmain entities, to sell the devices, and receive and process orders, while Bitmain Hong Kong receives the revenue from the sale of the devices. As the witness admitted, U.S. customers contract directly with Bitmain Hong Kong for

---

[2] In response to the filing, Defendant submitted a proposed amendment to that document. *See* Dkt. No. 68-1. However, even this amendment lists Bitmain Hong Kong as a "Name Insured." Plaintiff notes that Bitmain Hong Kong failed to produce either the proof of insurance or the amendment in the course of jurisdictional discovery. Instead, the proof of insurance document was obtained only through third-party discovery and the amendment was only produced after Bitmain Hong was again caught hiding the ball.

the purchase of Bitmain ASIC devices, and revenue from the sale of Bitmain ASIC devices flows directly to Bitmain Hong Kong.

Moreover, the Bitmain employees who facilitate and process these transactions include individuals who frequently work from Bitmain's California office, acting as agents on behalf of Bitmain Hong Kong. In addition to the evidence previously presented to the Court, this new evidence strongly militates in favor of finding that Bitmain Hong Kong is subject to jurisdiction in the State of California.

## II.     Argument

When required by stipulated Order of this Court (D.E. No. 73) to produce a witness to testify about the statements in the declarations submitted by Defendant Bitmain Hong Kong on its Motion, Defendant did not produce one of its own employees as knowledgeable about its affairs. Instead, Defendant designated Gang Ren (the "PMK") as the deponent. The PMK is a manager of Beijing Bitmain and claims that he has never been employed by Bitmain Hong Kong. *See* Star Decl. Exh. 2, PMK Tr. Excerpts (hereafter, "PMK Tr.") at 22:12-22:21. The PMK testified that he had only a "rough idea" about the affairs of Bitmain Hong Kong, which is based, in part, on his preparation for the deposition. *Id*. at 22:24, 33:23-34:1. The PMK was unable to state whether Bitmain Hong Kong's revenues in the United States for any year were less than $10 million or more than $100 million. *Id*. at 95:7-96:12.

Even though he claims never to have worked for Defendant Bitmain Hong Kong, the PMK testified that he "voluntarily" participated in the deposition at the request of the legal representative of Bitmain Hong Kong and Bitmain's Cayman Islands based holding company. *See id*., PMK Tr. at 35:8-37:6, D.E. 35-5, Corporate Structure Chart. As noted by his counsel, who also happens to be counsel for Defendant Bitmain Hong Kong, the PMK appeared for the deposition "at great personal sacrifice" *See* PMK Tr. at 112:6-14. The PMK traveled twenty hours to get to the deposition and was subject to a mandatory 21-day quarantine in a government facility during which he was separated from his family. *Id*. This is quite a sacrifice for someone who never worked for the Defendant company and who claims to have appeared voluntarily, without being directed to do so by his superiors. *Id*. at 24:4-6.

The PMK confirmed the Court's suspicion that the Bitmain entities "tap dance around the company name," stating that nobody can tell which of the many Bitmain companies is being referred to when the formal name of the Defendant is used. When asked if Defendant Bitmain Technologies Limited was Bitmain Hong Kong, the PMK admitted "one cannot tell from these shortened names which company it is." *Id*. at 58:7-14. He further stated:

> If a Bitmain Technologies Limited is taken out from a particular context or a certain document we may tell what that entity actually is but when such an overbroad and generalized question containing the phrase Bitmain Technologies Limited is raised nobody can tell the real identity of this company.

*Id*. at 58:23-59:4.

Even when presented with an invoice which reads: "Seller: Bitmain Technologies Limited" bearing a "Company Stamp" which reads "Bitmain Technologies Limited," the PMK testified, "I cannot tell from looking at this document which company this seal represents." *See* Starr Decl. Exh. 3, Gevorkyan Invoice. PMK Tr. at 62:19-64:4 ("Q. Do you have any reason to believe that it is a company other than Bitmain Hong Kong? … A. As I said, I cannot tell which company this is. I cannot say which company this is.").



*Starr Decl. Exh. 3, Gevorkyan Invoice*

Though Defendant failed to produce the relevant documents in violation of its discovery obligations, Plaintiff independently uncovered further evidence of Beijing Bitmain's sales employees generating revenue paid directly to Bitmain Hong Kong for the sale of ASIC devices in California and throughout the United States. Beijing Bitmain and other Bitmain entities and their employees acted as agents for Defendant Bitmain Hong Kong, covertly and collectively to generate revenue from the sale of ASIC devices paid directly to Defendant Bitmain Hong Kong.

It is well-settled that minimum contacts of a non-resident's agents or employees may be imputed to the principal for purposes of establishing specific jurisdiction. *See Burger King* at 471 U.S. at 479, n. 22 (noting "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party.") *See also College-Source, Inc. v.*

*AcademyOne, Inc.*, 653 F.3d 1066, 1078 (9th Cir. 2011) (acts of Chinese contractor engaged by defendant to download California company's website materials attributed to defendant for purposes of specific jurisdiction); *see also Daimler AG v. Bauman* 571 U.S. 117, 135 (2014) ("Agency relationships … may be relevant to the existence of specific jurisdiction").

   When confronted by Plaintiff's evidence, the PMK admitted that sales of ASIC devices are generated by sales employees of Beijing Bitmain, but the revenue from those sales is received by Bitmain Hong Kong. *See id.* at 42:9-12 ("to enter into contracts with overseas clients Bitmain Hong Kong is used."), *id.* at 43:1-3 ("The Hong Kong Company is the main body that enters into contracts with overseas clientele for the purchase of the equipment."). The PMK admitted that Bitmain Hong Kong has only two employees (one who handles legal affairs and who handles financial affairs), while Beijing Bitmain, which generates millions of dollars in sales of ASIC devices directly to the Defendant, has 400 to 600 employees, including employees who frequently perform work in the United States from Bitmain's San Jose office in connection with the sale of Bitmain ASIC devices. *Id.* at 69:20-22, 70:2-70:13, 70:24-71:3. The PMK further admitted that website orders for the sale of Bitmain ASIC devices are accepted and processed by Beijing Bitmain. *Id.* at 51:13-51:21 ("Once an order is placed online Bitmain Beijing receives this order and in turn Bitmain Beijing will instruct the production company to make the shipment"). However, Bitmain Hong Kong is designated the seller for these transactions.

   The PMK's testimony is supported by documentary evidence including Plaintiff's own invoice generated from his purchase of ASIC devices in California, and numerous SEC filings representing millions of dollars of revenue to Bitmain Hong Kong from the sale of ASIC devices to purchasers in the United States. *See e.g.,* Starr Decl. Exh. 3, Gevorkyan Invoice from Bitmain Technologies, Ltd.; Starr Decl. Exh. 4, Riot Blockchain, Inc., Form 8-K ("Riot Blockchain Filing") at pdf pages 2, 29 (concerning two agreements with Bitmain Hong Kong for the sale of Bitmain ASIC devices for $8.6 million and $26.3 million respectively to the U.S-based company); *see also id.* at pdf pages 19, 42 (listing the business contact for the transactions as Peng Li, who Defendant claims is an employee of Beijing Bitmain), and pdf pages 26 and 49

1  (indicating that the revenue from the transactions were to be transferred to one or more bank
2  accounts held by Bitmain Technology Limited).

3        First, the PMK was questioned about the invoice Plaintiff received from Defendant
4  Bitmain Hong Kong in connection with some of the ASIC devices he purchased from Defendant.
5  *See* Starr, Decl. Exh. 3, 3/20/18 Gevorkyan Invoice. *See also* PMK Dep Tr. at 59-66. The PMK
6  identified the name on the signature as Chen Jie. *Id*. at 64:6-64:10. According to Bitmain's blog,
7  Chen Jie is the Customer Service Director of Bitmain. *See* Starr Decl. Exh. 5, 3/15/21 Bitmain
8  Blog Post at 5/9. The PMK also identified Chen Jie as a person in charge of Bitmain customer
9  service that was employed by a Bitmain entity other than Defendant Bitmain Hong Kong. *See*
10 PMK Tr. at 63:20-66:7.

11       Just as Defendant "dances around the company name" to mislead the Court, the PMK
12 repeatedly attempted to dance around the names of numerous Bitmain employees during the
13 course of his testimony, including Ms. Jie. *See id*. The PMK admitted that Bitmain has an
14 employee in charge of customer service named Chen Jie. However, the PMK claimed he had no
15 way of knowing if the Chen Jie, whose signature appears on the invoice, is the same Chen Jie in
16 charge of Bitmain's customer service operations or just happens to be someone with the exact
17 same name performing the same job.

18       Second, the PMK was questioned about California sales activities of Bitmain sales
19 manager Peng Li on behalf of Bitmain Hong Kong. As set forth in Plaintiff's opening papers,
20 Peng Li's LinkedIn page indicates that he maintains an office with Bitmain in San Jose,
21 California. *See* Plaintiff's Opp. at 35-12; D.E. 35-9, LinkedIn Page for Peng (Leo) LI. Mr. Li
22 was also a featured speaker at Bitmain's California sales conference, referred to as the Crypto
23 Mining Forum. *See* D.E. 35-12 (listing Mr. Li as Antminer U.S. Sales Manager). In Defendants'
24 reply papers it admitted that the same Peng Li often works out of Bitmain's San Jose office. *See*
25 D.E. 38-1, Liu Reply Decl. at 38-1 at ¶ 8.

26       With respect to Mr. Li, the PMK testified that he was an employee of Beijing Bitmain
27 and denied that Mr. Li generates income for Defendant Bitmain Hong Kong. PMK Tr. at 74:4-
28 75:15. However, when Bitmain Hong Kong completed the sale of $34.9 million worth of ASIC

1 devices directly to Riot Blockchain in two separate transactions, Mr. Li acted as Defendant
2 Bitmain Hong Kong's business contact for the transactions. *See* Starr Decl. Exh. 4, the Riot
3 Blockchain Filing pdf pages 2, 19 and 42; Starr Decl. Exh. 2, PMK Tr. at 101:1-110:21.

4       When confronted about Mr. Li's role in the Riot Blockchain transaction, the PMK
5 attempted to dance around the name of this Bitmain employee. He claimed to have no way of
6 knowing if the Peng Li listed as the business contact for the Riot Blockchain transaction was the
7 same Peng Li that he knows as a sales representative of Beijing Bitmain. *See* Starr Decl. Exh. 2,
8 PMK Tr. at 103:7-103:17 ("I don't think we should ascertain that this Peng Li is that Peng Li or
9 Li Peng who is the sales rep in Bitmain Beijing"). Nevertheless, the PMK admitted several times
10 that revenue generated from sales of ASIC devices in the United States is paid directly to
11 Bitmain Hong Kong. *Id*. at 42:9-12 ("to enter into contracts with overseas clients Bitmain Hong
12 Kong is used."), *id*. at 43:1-3 ("The Hong Kong Company is the main body that enters into
13 contracts with overseas clientele for the purchase of the equipment.").

14       Third, the PMK was questioned about a Bitmain employee named Tianlin (Irene) Gao.
15 *See* Starr Decl. Exh. 2, PMK Tr. 106:21-110:21. Ms. Gao's LinkedIn page includes her
16 photograph and indicates that she is Director of NCSA Bitmain in San Jose, California. *See* Starr
17 Decl. Exh. 6, LinkedIn Page of Tianlin (Irene) Gao at 2. Ms. Gao is referenced in the Riot
18 Blockchain Filing as the "Antminer Sales Director of NCSA Region, Bitmain." *See* Starr Decl.
19 Exh. 4, Riot Blockchain Filing at pdf page 52. She is quoted in the filing as saying: "**We** are
20 extremely excited to expand and deepen our partnership with Riot Blockchain." (emphasis
21 added).

22       In yet another "tap dance around the name" of a Beijing Bitmain employee, the PMK
23 admitted that he knows a Tianlin Gao as an employee of Beijing Bitmain and this time the PMK
24 positively identified the employee's photo on her LinkedIn Page (under the name Tianlin (Irene)
25 Gao). Starr Decl. Exh. 2, PMK Dep. Tr. at 109:3-109:8 ("I recognize the photo and I know the
26 individual"). However, he stated that he had no way of knowing whether this was the same
27 person referenced in the Riot Blockchain Filing, even though both the LinkedIn Page and the
28 Riot Blockchain filing state that Ms. Gao was Bitmain's Director of NCSA. *See* PMK Tr. at

106:22-110:21. The PMK's doublespeak and consistently evasive testimony serves as further evidence that Defendant Bitmain Hong Kong is still playing hide the ball with jurisdiction, which the Court has cautioned will result in "significant consequences." *See* Starr Decl. Exh. 1, 12/19/19 Hearing Tr. at 3:2-5; 5:2-3.

### A. The Liu Declarations Provided Inconsistent Testimony From the Same Witness

Defendant's motion was supported almost entirely by the denials of Luyao Liu, the CFO of Bitmain Hong Kong and Bitmain's holding company. *See* D.E. 33-1, 10/1/19 Liu Decl., D.E. 28-1, 11/7/19 Liu Reply Decl. *See also* D.E. 62-29, (Liu Declaration submitted on behalf of Bitmain's holding company in another litigation). However, Mr. Liu has provided inconsistent testimony in several sworn declarations concerning the sales of Bitmain devices in the United States in this litigation and a separate litigation in Florida. *See* D.E. 33-1, 38-1. *See also* 3/27/2020 Starr Decl., Liu Decl. submitted in *United American Corp. v. Bitmain, Inc., et. al.*, Case No. 1-18-cv-25106 (S.D. Fl.) (The "Liu FL Decl.").

In his First Supplemental Brief, Plaintiff identified inconsistencies between Mr. Liu's 10/19/19 declaration and his 11/17/19 reply declaration in this case. Mr. Liu first stated that customers purchase ASIC devices from Defendant Bitmain Hong Kong's website and he also attached Bitmain Hong Kong's purported terms of service from the same website. *See* D.E. 63 Supp. Brief at 8; D.E. 33-1, Liu Decl. at ¶ 1, 16, Liu Decl. Exh. 1 ("The services are provided by Bitmain Technologies Limited"). Mr. Liu later denied that Bitmain Hong Kong operates the website and instead attributed that conduct to Beijing Bitmain. *See* Liu Reply Decl. at ¶ 12.

Mr. Liu also admitted in this litigation that as of 10/19/19, customers purchased ASIC devices from Bitmain Hong Kong through Bitmain Hong Kong's website. *See* 10/19/19 Liu Decl. at ¶ 1, 16 ("When a customer purchases ASIC devices from Bitmain [Hong Kong's] website …). However, in the Florida litigation, Mr. Liu, speaking on behalf of Bitmain Hong Kong, informed another federal judge that:

> Bitmain Hong Kong has not sold ASIC mining devices to customers in the United States since July 31, 2018. Since August 1, 2018, an affiliated entity based in Singapore has handled all sales of ASIC mining devices in the United States.

*See* Starr Decl. Exh. 7, 3/25/20 Liu FL Decl. at ¶ 11. The PMK testified that he knew nothing about any revenue for the sale of devices in the United States ever going to Bitmain's Singapore entity. *See PMK* Tr. at 42:2-7. Moreover, the Riot Blockchain Filing confirms that Bitmain Hong Kong continues to receive revenue directly from the sale of Bitmain ASIC devices in the United States. *See* Exh, 4, Riot Blockchain Filing. The inconsistencies in Defendant Bitmain Hong Kong's conflicting statement are further reason for the Court to deny the motion.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Bitmain Technologies Limited's Motion to Dismiss for Lack of personal jurisdiction so that this matter may be at issue; Bitmain's purposeful availment of California contacts created a substantial connection that justifies personal jurisdiction. *Burger King Corp.*, at 477-478.

Dated: October 4, 2021

FRONTIER LAW CENTER

/s/ Manny Starr
Manny Starr (319778)
Robert Starr (183052)
Adam Rose (210880)
Karo G. Karapetyan (318101)
23901 Calabasas Rd, Suite 2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433
E-Mail:    manny@frontierlawcenter.com
           robert@frontierlawcenter.com
           adam@frontierlawcenter.com
           karo@frontierlawcenter.com

Jordan L. Lurie (130013)
Ari Y. Basser (272618)
POMERANTZ LLP
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: 310-405-7190
Facsimile: 917-463-1044
E-mail:    jllurie@pomlaw.com
           abasser@pomlaw.com

Christopher Marlborough (298219)
THE MARLBOROUGH LAW FIRM, P.C.
445 Broad Hollow Road, Suite 400
Melville, NY 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952
E-Mail:          chris@marlboroughlawfirm.com

Attorneys for Plaintiff Gor Gevorkyan

**ECF CERTIFICATION**

Pursuant to Civil Local Rule 5-1, I, Manny Starr, hereby attest that concurrence in the filing of this document has been obtained from all signatories.

DATED:  October 4, 2021                     FRONTIER LAW CENTER

By:     /s/ Manny Starr
            Manny Starr