Atkinson Baker, a Veritext Company
www.depo.com

1  of some of the products that were to be introduced to the R&D --

2  development for R&D so that they may be marketed to customers.

3      Q.   Are you still in that position?

4      A.   Yes.

5      Q.   You understand Beijing Bitmain Technologies to be a

6  different company than Beijing -- excuse me.  I'm going to

7  rephrase the question.

8      You understand that Beijing Bitmain Technologies to be a

9  different company than Bitmain Technologies Limited?

10         MR. LAZATIN:  Objection to form.  Calls for legal

11     conclusion.  Objection, vague and ambiguous.

12         THE WITNESS:  I don't know what question you are asking

13     me but I can tell you that I worked for Beijing Bitmain

14     which is an independent entity.

15  BY MR. MARLBOROUGH:

16     Q.   Are you familiar with an entity named Bitmain

17  Technologies Limited?

18     A.   We go like this, normally when we refer to Bitmain

19  Technology we refer to it as Bitmain Hong Kong.

20     Q.   Have you ever worked for Bitmain Hong Kong?

21     A.   No.

22     Q.   Do you have knowledge of the operations of Bitmain Hong

23  Kong?

24     A.   I have a rough idea about Bitmain Hong Kong.

25     Q.   Do you currently hold any other positions with any

1 BY MR. MARLBOROUGH:

2     Q.   You don't understand the question?

3          MR. LAZATIN:  Objection, asked and answered.

4          THE WITNESS:  Counsel, you just asked me if I have been

5     directed by any of my superiors to appear for the deposition

6     and my answer is, no.

7 BY MR. MARLBOROUGH:

8     Q.   How is it that you heard about the opportunity to

9 participate in this deposition?

10    A.   It was a Max Hua who asked me if I would like to

11 participate in it.  I said, yes.  So here I am today.

12    Q.   Can you spell the name of Max Hua?

13    A.   Max Huang.  Max is M-A-X, Huang, H-U-A-N-G.  No.  Let

14 me take that back.  That is not correct.  Hua is H-U-A.  Sorry.

15    Q.   Does Max not work for Beijing Bitmain?

16    A.   Max is the person in charge of the legal affairs for

17 Hong Kong Bitmain.

18    Q.   What did Max tell you about the appearance at this

19 deposition?

20    A.   Max told me that as far as discovery is concerned, due

21 to the pandemic outbreak we cannot travel to the United States,

22 however, we can go to Korea.  He asked me if I would be willing

23 to come over to Korea for this.  I agreed to that.  He then

24 briefed me a bit about the background about the case.

25    Q.   What did he tell you?

1    September 2015.

2        THE CHECK INTERPRETER:  Sorry.  Just a correction.  I

3    think the time is September 2015, right?

4        THE INTERPRETER:  I heard 2018.  Counsel, can you

5    clarify that, please?

6        MR. MARLBOROUGH:  September 2015.

7        THE INTERPRETER:  '15.  All right.  So that is a

8    mistake on my part.  I am sorry.  (Speaks in Mandarin.)

9        THE WITNESS:  To my knowledge the board members of

10   Bitmain Hong Kong involved a Wu Ji Han and Zhan Ke Tuan and

11   also Mr. Zhu Xiang.  To my knowledge these individuals have

12   been or are the Hong Kong Bitmain board members.

13       THE CHECK INTERPRETER:  Just another correction.  The

14   exact name should be Mr. Wu Ji Han and Mr. Zhan Ke Tuan.

15       THE INTERPRETER:  Yes.  Wu Ji Han, Zhan Ke Tuan.  Well

16   for our court reporter, Wu Ji Han is W-U space J-I space

17   H-A-N.  And the next one is Zhan Ke Tun is Z-H-A-N space

18   K-E space T-U-N.

19       THE CHECK INTERPRETER:  T-U-A-N.

20       THE INTERPRETER:  T-U-A-N.  You are right.  And the

21   last part is Zhu Xiang I think it is, Z-H-U  X-I-A-N-G.

22 BY MR. MARLBOROUGH:

23   Q.  Were you familiar with them as board members of Bitmain

24 Hong Kong before you prepared for this deposition?

25       MR. LAZATIN:  Objection, vague and ambiguous.

Atkinson Baker, a Veritext Company
www.depo.com

1          THE WITNESS:  No.

2 BY MR. MARLBOROUGH:

3     Q.   Are you authorized to speak on behalf of Bitmain Hong

4 Kong?

5          MR. LAZATIN:  Objection.  The question calls for a

6      legal conclusion but the witness is authorized to speak on

7      behalf of Bitmain Hong Kong for the purposes of this

8      deposition.

9          MR. MARLBOROUGH:  I object to Mr. Lazatin's answering

10      of the question directly to the witness.

11          There is still a question to the witness right now.

12          THE WITNESS:  I understand that.  Yes, I am authorized.

13 BY MR. MARLBOROUGH:

14     Q.   On whose authority are you authorized to speak on

15 behalf of Bitmain Hong Kong?

16          THE INTERPRETER:  Can you repeat the question.

17 BY MR. MARLBOROUGH:

18     Q.   Yes.  On whose authority are you authorized to speak on

19 behalf of Bitmain Hong Kong?

20          MR. LAZATIN:  Objection.  The question is vague,

21      ambiguous and calls for a legal conclusion.

22          MR. MARLBOROUGH:  You can state your objections to form

23      but these specific objections amount to coaching the

24      witness.

25          MR. LAZATIN:  I disagree.  It is not what Rule 30 says

1    or permits but we can proceed.

2         THE WITNESS:  So, I am allowed to answer the question,

3    am I?

4         MR. MARLBOROUGH:  Yes -- I am sorry.  That is his

5    lawyer's job to say that.  Carlos, is he allowed to answer

6    the question?

7         MR. LAZATIN:  Yes.

8         THE WITNESS:  As I testified previously it was Max who

9    was the person in charge of legal affairs of Hong Kong, He

10   asked me if I would like to attend this deposition and I

11   agreed to that and I understand that to be the

12   authorization.

13 BY MR. MARLBOROUGH:

14   Q.   Is Max associated with Beijing Bitmain?

15        MR. LAZATIN:  Objection, vague.

16        THE WITNESS:  What do you mean by, associated?  In what

17   respect do you mean?

18 BY MR. MARLBOROUGH:

19   Q.   Does he work for Beijing Bitmain?

20   A.   He is the person in charge of legal affairs in Hong

21 Kong and currently he is also the CFO of our Bitmain group.

22   Q.   So he is the CFO of what Bitmain group?

23   A.   He is the CFO of our Bitmain headquarters located in

24 Haidian.

25        THE CHECK INTERPRETER:  I would like to make a

Atkinson Baker, a Veritext Company
www.depo.com

1    correction here.  This group should be translated as Bitmain

2    Cayman parenting company, not parent holder.

3  BY MR. MARLBOROUGH:

4      Q.   Is he in charge of legal affairs for Beijing Bitmain?

5      A.   No.

6      Q.   Is he in charge of legal affairs for Bitmain Hong Kong?

7      A.   Yes.

8      Q.   And he is in charge of legal affairs for the Beijing --

9  Bitmain holding company; is that correct?

10     A.   Counsel, are you asking if he is also in charge of the

11 legal affairs of Bitmain Beijing holding?

12     Q.   That was the latest question.

13          MR. LAZATIN:  I am going to object to the terminology

14     as vague and ambiguous.

15          THE WITNESS:  I can answer you by saying that he is in

16     charge of the legal matters in Hong Kong Bitmain.

17 BY MR. MARLBOROUGH:

18     Q.   For Bitmain Hong Kong, right.  I am asking you about

19 Bitmain holding company?

20          MR. LAZATIN:  Objection, vague.

21          THE WITNESS:  No, he is not.

22 BY MR. MARLBOROUGH:

23     Q.   Is he chief financial officer of any other Bitmain

24 entities other than Bitmain Hong Kong?

25     A.   I just said that he is the CFO of our Cayman company.

Atkinson Baker, a Veritext Company
www.depo.com

1      Q.   Is the Cayman company Bitmain's holding company?

2           MR. LAZATIN:  Objection.  Vague, legal conclusion.

3           THE WITNESS:  The relationships among these companies

4      you may check that out.  We call it Cayman Bitmain but as to

5      whether it is a holding company or not, all you have to do

6      is to check that out online.

7  BY MR. MARLBOROUGH:

8      Q.   And you do not know the answer to that yourself; is

9  that correct?

10          MR. LAZATIN:  Objection.  Vague and ambiguous,

11     argumentative.

12          THE WITNESS:  It goes like this, Cayman Bitmain is the

13     headquarters of our Bitmain -- let me take that back.

14          Cayman Bitmain is the headquarters of the holding

15     company of our Bitmain companies.

16          THE CHECK INTERPRETER:  Correction.  I think it would

17     be better if we just translate Cayman Bitmain is the holding

18     company of the Bitmain companies in China.

19  BY MR. MARLBOROUGH:

20     Q.   I am going to ask you to look at Mr. Starr's video.  He

21  is going to put on the screen what we have previously marked as

22  Exhibit 2.

23      (Documents referred to were marked for identification as

24                    Plaintiff's Exhibit 2.)

25          MR. STARR:  Can everyone see my screen?

Atkinson Baker, a Veritext Company
www.depo.com

1  BY MR. MARLBOROUGH:

2      Q.   Do you know if Bitmain Singapore has ever received

3  revenue from the sale of Bitmain devices, Antminer devices in the

4  United States?

5          MR LAZATIN:  Objection.  Lacks foundation, calls for

6      speculation.

7          THE WITNESS:  I do not know that.

8  BY MR. MARLBOROUGH:

9      Q.   Do you know if Bitmain Hong Kong has ever received

10 revenue from the sale of ASIC devices in the United States?

11         THE WITNESS:  To my knowledge sometimes to enter into

12     contracts with overseas clients Bitmain Hong Kong is used.

13         THE CHECK INTERPRETER:  Correction.  I think maybe we

14     can just translate, I know previously Bitmain Hong Kong used

15     to be an entity who signed overseas sales contracts with our

16     clients.

17 BY MR. MARLBOROUGH:

18     Q.   Has Bitmain Singapore ever signed overseas contracts

19 with companies in the United States for the sale of Bitmain ASIC

20 devices?

21     A.   I don't know.

22     Q.   Did you say that Bitmain Hong Kong in the past received

23 revenue from contracts with companies in the United States for

24 the sale of Bitmain ASIC devices?

25         MR. LAZATIN:  Objection.  Asked and answered.

Atkinson Baker, a Veritext Company
www.depo.com

1           THE WITNESS:  As I said, the Hong Kong company is the
2      main body that enters into contracts with overseas clientele
3      for the purchase of the equipment.  I believe the funds by
4      the overseas clientele have been made to the Hong Kong
5      company although I have not personally seen the money
6      flowing to Bitmain Hong Kong but I believe that has
7      happened.
8  BY MR. MARLBOROUGH:
9      Q.   Do you believe that money from the sale of ASIC devices
10 in the United States is paid directly to Beijing Bitmain
11 Technologies?
12     A.   No.  I do not believe so.
13     Q.   Do you know a company named Bitdeer?
14          THE INTERPRETER:  Counsel, can you repeat the question,
15     please.
16          MR. MARLBOROUGH:  Do you know a company named Bitdeer,
17     B-I-T-D-E-E-R.
18          MR. LAZATIN:  Objection.  Outside the scope,
19     foundation.
20          THE WITNESS:  Bitdeer, I have heard about it.
21 BY MR. MARLBOROUGH:
22     Q.   Is it a company that is part of the Bitmain family of
23 companies?
24          MR. LAZATIN:  Objection.  Vague, ambiguous,
25     speculation.

1          MR. MARLBOROUGH:  I insist that Mr. Lazatin stop

2      coaching the witness.

3          MR. LAZATIN:  I am not coaching the witness.

4          MR. MARLBOROUGH:  By making more objections than are

5      necessary to protect the record.  You can object on the

6      basis of form.

7          MR. LAZATIN:  I am going to again object to commentary

8      of counsel as to the nature of my objections.  They are

9      entirely proper under Rule 30 which calls for a short brief

10     statement on the grounds for the objection and that is

11     exactly what I have done.

12 BY MR. MARLBOROUGH:

13     Q.   On what website are orders placed for customers to

14 order Bitmain devices in the United States?

15     A.   www.bitmain.com.

16     Q.   What company receives those orders?

17     A.   So the question is if an order is placed online by a

18 client, who receives the order.

19     To my knowledge once an order is placed online Bitmain

20 Beijing receives this order and in turn Bitmain Beijing will

21 instruct the production company to make the shipment.

22     Q.   And who receives the revenue from that order?

23     A.   Like I previously said, I have not seen in which

24 account the client deposits the payment.  So I am not able to

25 tell you that.

Atkinson Baker, a Veritext Company
www.depo.com

1      simply refer to these entities using their simplified names

2      such as Bitmain Beijing, Bitmain Hong Kong and so on and so

3      forth, however, as to the exact specific legal names of each

4      of these entities, they all have the full legal names and

5      those can be very easily checked out online.

6   BY MR. MARLBOROUGH:

7      Q.   Is Bitmain Technologies Limited Bitmain Hong Kong?

8           MR. LAZATIN:  Objection.  Vague, lacks foundation,

9      misleading.

10          THE WITNESS:  Counsel's reference of Bitmain Technology

11     Beijing or Bitmain Technology Hong Kong or elsewhere cannot

12     identify exactly which entity it is.  So one cannot tell

13     from the casual reference of these shortened names which

14     company it is.

15          MR. MARLBOROUGH:  I am going to ask the court reporter

16     to repeat the question.

17        (The court reporter read back the last question.)

18          MR. LAZATIN:  Objection.  Vague, lacks foundation,

19     calls for speculation.  [Audio distortion] question five or

20     six times.

21          THE WITNESS:  Mr. Translator, I want you to translate

22     exactly what I am about to say to counsel in detail because

23     I really want to make sure that I get myself across to him.

24          If a Bitmain Technologies Limited is taken out from a

25     certain statement or a particular context or a certain

Atkinson Baker, a Veritext Company
www.depo.com

1      document we may tell what that entity actually is but when

2      such an overbroad and generalized question containing the

3      phrase Bitmain Technologies Limited is raised, nobody can

4      tell the real identity of this company.

5   BY MR. MARLBOROUGH:

6      Q.   If I ask you the same straightforward question again

7   are you going to continue to not answer it?

8          MR. LAZATIN:  Objection.  Asked and answered,

9      argumentative, now harassing.  This question has been asked

10     and answered about six times.  He has told you he does not

11     know what that term used on this exhibit refers to.  You

12     don't like that answer and you --

13         MR. MARLBOROUGH:  You are making speaking objections

14     which are inappropriate which you are telling me you have

15     not been doing and you are constantly doing it.

16         MR. LAZATIN:  I am not doing that but --

17         MR. MARLBOROUGH:  I would like an answer --

18         MR. LAZATIN:  We are speaking over each other.  We are

19     speaking over each other, Mr. Marlborough.

20         I am making an appropriate objection because what you

21     are now doing amounts to harassing the witness.  He has told

22     you about six different times he does not know to which that

23     term refers.  You don't like that answer and you have now

24     asked a harassing and argumentative question to him which is

25     inappropriate.  Mr. Huang?

1      document we may tell what that entity actually is but when

2      such an overbroad and generalized question containing the

3      phrase Bitmain Technologies Limited is raised, nobody can

4      tell the real identity of this company.

5   BY MR. MARLBOROUGH:

6      Q.    If I ask you the same straightforward question again

7   are you going to continue to not answer it?

8          MR. LAZATIN:  Objection.  Asked and answered,

9      argumentative, now harassing.  This question has been asked

10     and answered about six times.  He has told you he does not

11     know what that term used on this exhibit refers to.  You

12     don't like that answer and you --

13         MR. MARLBOROUGH:  You are making speaking objections

14     which are inappropriate which you are telling me you have

15     not been doing and you are constantly doing it.

16         MR. LAZATIN:  I am not doing that but --

17         MR. MARLBOROUGH:  I would like an answer --

18         MR. LAZATIN:  We are speaking over each other.  We are

19     speaking over each other, Mr. Marlborough.

20         I am making an appropriate objection because what you

21     are now doing amounts to harassing the witness.  He has told

22     you about six different times he does not know to which that

23     term refers.  You don't like that answer and you have now

24     asked a harassing and argumentative question to him which is

25     inappropriate.  Mr. Huang?

Atkinson Baker, a Veritext Company
www.depo.com

```
 1            MR. STARR:  (Complied.)
 2   BY MR. MARLBOROUGH:
 3       Q.   Do you recognize this document?
 4            MR. LAZATIN:  Sorry.  Objection.  Lacks foundation and
 5       I object to any questioning about this document which is
 6       entirely in English without a Chinese translation being
 7       provided.
 8            THE WITNESS:  Counsel, the question to your question
 9       is, no.  I do not recognize it.
10   BY MR. MARLBOROUGH:
11       Q.   Do orders from the Bitmain website result in the
12   production of commercial invoices?
13            MR. LAZATIN:  Objection.  Vague, foundation.
14            THE WITNESS:  I cannot tell.
15   BY MR. MARLBOROUGH:
16       Q.   What is the entity listed on the company stamp?
17            MR. LAZATIN:  Objection.  Lacks foundation, calls for
18       speculation and the document speaks for itself.
19            THE WITNESS:  So the question asks me what the seal is.
20       First of all, I do not know where this document comes from
21       and I cannot tell by looking at this document which company
22       this seal represents.
23   BY MR. MARLBOROUGH:
24       Q.   Do you have reason to believe that it is a company
25   other than Bitmain Hong Kong?
```

1          MR. LAZATIN:  Objection.  Lacks foundation, calls for

2     speculation.

3          THE WITNESS:  As I said, I cannot tell which company

4     this is.  I cannot say which company this is.

5 BY MR. MARLBOROUGH:

6     Q.   Do you recognize the name on the signature line?

7          MR. LAZATIN:  Objection.  Foundation, speculation.

8          THE WITNESS:  I don't.

9          MR. MARLBOROUGH:  I will show you another document.

10          MR. LAZATIN:  Chris, it is 1:40 here.  We have not had

11     lunch.  Let's take a break soon.

12          MR. MARLBOROUGH:  Does that work for you?  Would you

13     like to take a break now, Mr. Ren?

14          THE WITNESS:  Yes.  It is already 1:40-something in our

15     time.  Is it possible for us to grab something to eat before

16     we go on?

17          MR. MARLBOROUGH:  Yes.  Let me just ask you one more

18     question about this document and then we will move on.

19 BY MR. MARLBOROUGH:

20     Q.   This document appears to have Chinese letters next to

21 the signature line.  Do you recognize the signature on that

22 document?

23          MR. LAZATIN:  Objection, foundation.

24          THE WITNESS:  I do not know which individual this

25     signature in this document represents.

1 BY MR. MARLBOROUGH:

2     Q.   Can you tell me what those characters say?

3          MR. LAZATIN:  Same objection.  Foundation, speculation.

4          THE WITNESS:  You mean those Chinese characters?

5 BY MR. MARLBOROUGH:

6     Q.   Yes.  What those Chinese characters say?

7          MR. LAZATIN:  Same objections.

8          THE WITNESS:  Well, these two Chinese characters are

9     Chen Jie.

10    Q.   Do you know an employee with that name?

11    A.   I do not know which Chen Jie in this document is

12 because in China many people share identical names.

13         MR. MARLBOROUGH:  I don't want to keep you too long on

14    the break so we will take a break and we will continue with

15    this document.  How much time would you like for lunch?

16         THE VIDEOGRAPHER:  We are now going off the record.

17    The time is exactly 9:41 PM, the end of File number 4.

18                   (Off the record at 9:41 PM.)

19                   (On the record at 10:46 PM.)

20         THE VIDEOGRAPHER:  We are now going back on the record.

21    The time is approximately 10:46 PM, the beginning of File

22    Number 5.

23         Counsel, please proceed, sir.

24 BY MR. MARLBOROUGH:

25    Q.   Do you know Chen Jie (phonetic) who is the customer

1 service Director of Bitmain?

2     A.   What director did you say, Counsel.

3     Q.   A former customer service director of Bitmain?

4     A.   We do have a person in charge of customer service by

5 the name of Chen Jie.

6     Q.   Did I ask you earlier if you knew anyone named Chen

7 Jie?

8     A.   I am not sure of whether the name Chen Jie you

9 referenced in that piece of paper is this Chen Jie that we are

10 currently talking about?

11     Q.   What company does Chen Jie who is a customer service

12 director, what company does she work for?

13     A.   She works for Shenzhen intelligence cloud core.

14     THE CHECK INTERPRETER:  Correction.  I think the exact

15     name is Shenzhen Century Cloud corporation.  It is not

16     intelligence but century.

17     MR. MARLBOROUGH:  Is that what he said?  He said

18     intelligence or century, Mr. Huang?

19     THE INTERPRETER:  Let me ask him again.

20     MR. MARLBOROUGH:  Mr. Huang, let me just be clear.  If

21     what you heard was intelligence then I would like to know

22     that.  I do not want to have the interpreter using words

23     that were not used.

24     THE INTERPRETER:  Yes, sir.  Let me make sure of that.

25     MR. MARLBOROUGH:  Okay.

1          THE WITNESS:  The company that I previously referenced

2      is Shenzhen S-H-E-N-Z-H-E-N, Century.  Shenzhen Century

3      Cloud chip making company limited.

4  BY MR. MARLBOROUGH:

5      Q.   And there is another company named Shenzhen

6  intelligence cloud core technology also; correct?

7      A.   I don't think so.  I don't know.

8      Q.   If I were to send an email to legal@bitmain.com what

9  entity would receive that email?

10         MR. LAZATIN:  Objection.  Lacks foundation, calls for

11     speculation.

12         THE WITNESS:  I don't know if there is such an email

13     account and I do not know who will receive the message at

14     this email account.

15  BY MR. MARLBOROUGH:

16     Q.   What is your email address with Bitmain?

17     A.   Are you asking me my personal email account?

18     Q.   Not your personal.  I am asking you your business email

19  address, yes.

20     A.   Well, at work the email I use is gang.ren.@bitmain.com.

21     Q.   Do the email addresses for Bitmain employees

22  distinguish which entity they work for?

23     A.   Can you be more specific with your question, counsel?

24  I mean, for instance can you show me an email account to see if I

25  can identify that because the way you phrase your question I

Atkinson Baker, a Veritext Company
www.depo.com

1      counsel should not confuse the two with each other.

2  BY MR. MARLBOROUGH:

3      Q.   In 2018 how many employees did Bitmain Hong Kong have?

4      A.   For the year of 2018 to my knowledge there were

5  supposed to be about 30 employees.

6          THE CHECK INTERPRETER:  Correction.  Maybe you should

7      be -- it would be more accurate to say more than 30

8      employees in 2018.

9  BY MR. MARLBOROUGH:

10     Q.   2019 there were 30 employees or 2018 there were 30

11 employees?

12     A.   You asked me about 2018 so my answer was in response to

13 2018.

14 BY MR. MARLBOROUGH:

15     Q.   How many Bitmain employees were there in 2019?  Let me

16 clarify.  How many Bitmain HK employees were there in 2019?

17     A.   Seems that back in 2019 there were 20-plus employees.

18     Q.   How many Bitmain HK employees were there in 2020?

19     A.   I believe there were around 10 in 2020.

20     Q.   How many Bitmain HK employees were there in 2021?

21     A.   In the year of 2021 the employees in Hong Kong that I

22 know are two.

23     Q.   How many Bitmain HK employees were there outside of

24 Hong Kong in 2021?

25     A.   Does that comprise or does that cover the people on

```
 1 business trips?  What do you mean by outside of Hong Kong?

 2     Q.   You said that there were two employees that you know of

 3 in 2021 in Hong Kong.

 4     A.   Yes.

 5     Q.   Are you saying at Bitmain Hong Kong -- at Bitmain Hong

 6 Kong?

 7     A.   Yes.

 8     Q.   What did these two employees do for Bitmain Hong Kong?

 9     A.   One is working on legal matters while the other one is

10 working on investment and the financing related matters.

11     Let me supplement my answer.  The employee who is working on

12 legal matters may also engage in some other job responsibilities

13 such as communication with TSMC of the wafer, purchasing matters.

14     Q.   Is that Max who you referred to earlier in this

15 deposition?

16     A.   That is correct.  A Max is the individual that is in

17 charge of the legal affairs in Hong Kong, yes.

18          THE INTERPRETER:  Counsel, just a moment please.  This

19     is from the interpreter to the court reporter.  TSMC, I

20     wonder if you got that?

21          THE COURT REPORTER:  Yes, sir.

22          THE INTERPRETER:  Okay.  TSMC, thank you.  Okay, go.

23 BY MR. MARLBOROUGH:

24     Q.   How many employees does Beijing Bitmain have currently?

25     A.   Are we talking about this very moment in 2021?
```

Atkinson Baker, a Veritext Company
www.depo.com

1      Q.   Yes.

2      A.   Well, I do not know an exact number but I will say at

3  least four to five hundred or five to six hundred employees.

4      Q.   How many of them work in the United States?

5           MR. LAZATIN:  Objection.  Vague and ambiguous, assumes

6      facts.

7           THE WITNESS:  Counsel, do you mean the people who

8      travel to the United States on business or else?  What do

9      you mean by the people working in the United States?

10  BY MR. MARLBOROUGH:

11     Q.   How many people travel to the United States on business

12 would be the first question.

13          MR. LAZATIN:  Objection.  Lacks foundation.

14          THE WITNESS:  For this year at this moment the ones who

15     are in the United States on business should be five or six.

16  BY MR. MARLBOROUGH:

17     Q.   How many work in the United States all the time?

18          MR. LAZATIN:  Objection.  Lacks foundation, assumes

19     facts.

20          THE WITNESS:  Counsel, would you please define how long

21     is all the time?

22  BY MR. MARLBOROUGH:

23     Q.   How many people, if any, are stationed to work in the

24 United States on a regular basis?

25          MR. LAZATIN:  Objection.  Assumes facts, lacks

 1 not Pi.

 2      Q.   So how do you spell his name?

 3      A.   Li Peng (phonetic)

 4      Q.   What does this person do?  He works for Bitmain.  What

 5 does this person do?

 6           MR. LAZATIN:   Objection.  Vague and ambiguous.

 7           THE WITNESS: Li Peng is a sales manager.

 8 BY MR. MARLBOROUGH:

 9      Q.   What company did he work for?

10      A.   Li Peng is with Bitmain Beijing.

11      Q.   Did he generate revenue for Bitmain Hong Kong?

12           MR. LAZATIN:  Objection.  Vague and ambiguous, lacks

13      foundation.

14           THE WITNESS:  I don't believe he does.  He is an

15      employee of Bitmain Beijing.

16 BY MR. MARLBOROUGH:

17      Q.   Do you know someone named Peng Wang who works for one

18 of the Bitmain entities?

19      A.   In order to save time, counsel, would you please write

20 down that name?  The way you ask the question is wasting people's

21 time.

22      Q.   Who is Peng Wang P-E-N-G, W-A-N-G?

23      A.   Among the people that I am acquaintance with there are

24 several Peng Wangs and I don't know which one you are referring

25 to.

Atkinson Baker, a Veritext Company
www.depo.com

1    Q.   You see in this exhibit where it indicates San Jose,

2 California?

3    A.   Yes.

4    Q.   Did this gentleman work in San Jose, California?

5         MR. LAZATIN:  Objection.  Lacks foundation, calls for

6    speculation.

7         THE WITNESS:  I have already answered counsel's

8    question.  Peng Li that you asked about is an employee of

9    Bitmain Beijing.

10 BY MR. MARLBOROUGH:

11   Q.   The question is did he work in San Jose, California?

12        MR. LAZATIN:  Objection.  Vague, speculation.

13        THE WITNESS:  Well, as I previously said, counsel, you

14   have to define the word work and as to this individual, with

15   people like him who travel to the United States on business,

16   he probably goes to that office in San Jose to perform some

17   of his job duties.  He also probably does not go to that

18   office in San Jose and that depends on the circumstances he

19   is in.

20        MR. MARLBOROUGH:  Please pull up Exhibit 9.

21        MR. STARR:  (Complied)

22 BY MR. MARLBOROUGH:

23   Q.   This is a LinkedIn page for Tianlin Gao.  Do you know

24 this person?

25 (Picture referred to was previously marked as Plaintiff's Exhibit

1                  (On the record at 12:55 PM.)

2            THE VIDEOGRAPHER:  We are now going back on the record.

3      The time is approximately 12:55 AM, the beginning of File

4      Number 6.

5            Counsel, please proceed, sir.

6  BY MR. MARLBOROUGH:

7      Q.   What were the revenues from the sale of ASIC devices

8  for Bitmain Hong Kong in 2018?

9      A.   In which region, or globally?

10     Q.   In the United States?

11     A.   I don't recall the exact figure.

12     Q.   Do you recall an estimate?

13     A.   The sales revenue in the United States for 2018, I

14 don't recall the approximate number.  Correct, I don't recall

15 that because I am not a financial guy.

16     Q.   Is it more than a $100 million dollars?

17           THE COURT REPORTER:  I am sorry.  Mr. Lazatin, was that

18     an objection or no?

19           MR. LAZATIN:  I did not say anything.

20           THE WITNESS:  I don't recall that figure.

21 BY MR. MARLBOROUGH:

22     Q.   Was it more than $10 million dollars?

23     A.   I don't recall the exact figure so I cannot give you a

24 range now.

25     Q.   Have you ever known the number?

Atkinson Baker, a Veritext Company
www.depo.com

1    A.   Yes, I have.  If I come across this figure I will be

2  reminded.

3    Q.   But you don't know if it is more than $10 million or

4  more than a $100 million?

5    A.   Correct.

6    Q.   How about 2019?

7    A.   I have not been able to remember these figures.

8    Q.   Do you know if 2019 was more than $10 million or more

9  than $100 million?

10    A.   I don't recall the exact number.

11    Q.   How about 2020?

12    A.   I am sorry.  I have seen these figures but I just don't

13  recall them.  I am not able to give you even a rough range.

14    Q.   And you do not know if it is more than $10 million or

15  more than $100 million?

16    A.   I have already told you that I do not recall the exact

17  range of these figures.  So I am not able to tell you that.  I

18  can't just randomly speculate on those, if you know what I am

19  talking about.

20    Q.   That answer is different than the question of if you

21  know it is more than $10 million or more than $100 million.

22    I don't want you to speculate but I would like to be able to

23  move it forward if you can answer either one of those questions?

24        MR. LAZATIN:   Objection.  Asked and answered,

25    speculation.

1      Q.    Do you know a company named Riot Blockchain?

2      A.    Can you please show me the company name?

3      Q.    Yes.

4            MR. MARLBOROUGH:  Exhibit 15.

5  BY MR. MARLBOROUGH:

6      Q.    If it helps you the document indicates that it is a

7  Nevada company.  Nevada is a state in the United States and the

8  office is in Colorado which is another Unite State state.

9     (Documents referred to were previously marked as Plaintiff's

10                  Exhibit 15 for identification.)

11           MR. LAZATIN:  Objection to the testimony of counsel.

12     Lacks foundation, calls for speculation.

13           THE WITNESS:  I do not know this company.

14  BY MR. MARLBOROUGH:

15           MR. MARLBOROUGH:  If you can go to PDF page 2.  On

16     December 18th 2020, if you can highlight that section and

17     ask the court reporter [sic] to read the first sentence up

18     to the comma.

19           So only highlight up to the Bitmain in parentheses.

20           THE COURT REPORTER:  You meant interpreter?  You said

21     court reporter.

22           MR. MARLBOROUGH:  Yeah, I meant the interpreter.  Sorry

23     about that.  Getting early.

24           MR. LAZATIN:  I am going to again object to the line of

25     questioning on this document that is entirely in English,

1      this 53 pages of dense text without a Chinese translation

2      being given.  Go ahead, Mr. Huang.

3          THE INTERPRETER:  (Complied.)  (Speaks in Mandarin.)

4  BY MR. MARLBOROUGH:

5      Q.  Does this appear to be an agreement between Riot

6  Blockchain -- I will rephrase.

7      Does this appear to refer to an agreement between Riot

8  Blockchain and Bitmain Hong Kong?

9          MR. LAZATIN:  Objection.  Lacks foundation, calls for

10      speculation and misstates the document.

11          THE WITNESS:  I have never seen this document before.

12      If I get to know the content of this document, if I get to

13      know what the document talks about, I may be able to provide

14      you an accurate response.  If I get to know the content of

15      this document in its entirety.  But without knowing the

16      content of this document in its entirety, by just looking at

17      one sentence out of this document I cannot draw any

18      conclusion.

19          MR. MARLBOROUGH:  We are going to go to PDF page 19,

20      Section 13, which concerns the contact information and we

21      are going to highlight the section that says Bitmain's

22      business contact name Peng Li.

23          THE WITNESS:  Yes.

24  BY MR. MARLBOROUGH:

25      Q.  We have established that you know who Peng Li is;

Atkinson Baker, a Veritext Company
www.depo.com

 1  correct?

 2      A.   I know that there is a sales rep in our company named

 3  Peng Li.

 4      Q.   And you are referring to Beijing Bitmain?  He is a

 5  sales rep for Beijing Bitmain; is that correct?

 6      A.   Yes.

 7      Q.   Why is the sales rep for Beijing Bitmain the business

 8  contact for Bitmain HK?

 9          MR. LAZATIN:   Objection.  Misleading, misstates the

10      document, misstates his testimony, lacks foundation.

11          THE WITNESS:  I did not prepare this document and I did

12      not participate in the drafting of this document therefore

13      whether Peng Li or Li Peng referenced in this document is

14      the Li Peng who is the sales rep with Bitmain Beijing or

15      not, I do not know that for sure and I don't think we should

16      ascertain that this Peng Li is that Peng Li or Li Peng who

17      is the sales rep in Bitmain Beijing.

18  BY MR. MARLBOROUGH:

19      Q.   You did not participate in this document -- would it be

20  inappropriate for you to participate in a document for Bitmain

21  Hong Kong?

22          MR. LAZATIN:  Objection.  The question is

23      unintelligible.  To the extent I understand it, it calls for

24      a legal conclusion.

25  BY MR. MARLBOROUGH:

1      Q.   I am going to rephrase the question.

2      You said you did not participate in creating this document.

3  Would it be inappropriate for you to participate in creating this

4  document since it is an agreement between Bitmain Hong Kong and

5  another company and you were not a Bitmain employee?

6           MR. LAZATIN:   Objection.  Calls for legal conclusion,

7      vague, ambiguous.

8           THE WITNESS:  Counsel, it is just like you just stated.

9      I did not participate in the drafting of this document.  So

10      that as you said, is a fact.

11  BY MR. MARLBOROUGH:

12      Q.   You would have no business participating in the

13  creation of a document that is a contract between Bitmain Hong

14  Kong and another entity because you do not work for Bitmain Hong

15  Kong; is that correct?

16           MR. LAZATIN:   Objection.  Vague, ambiguous,

17      unintelligible.

18           MR. MARLBOROUGH:  Did you receive an answer from the

19      witness?

20           THE WITNESS:  Just like what counsel just said, I did

21      not create the document and I did not participate in the

22      drafting of this document.  So the Peng Li referenced in the

23      document is whomever that it refers to, I don't know.  I'm

24      not sure.

25  BY MR. MARLBOROUGH:

Atkinson Baker, a Veritext Company
www.depo.com

1    Q.   Would it be inappropriate for you to participate in the

2 drafting of a document from Bitmain Hong Kong?

3         MR. LAZATIN:   Objection.  Vague, ambiguous,

4      speculation, asked and answered.

5         THE WITNESS:  I said I did not create a document and I

6      did not participate in the drafting of this document.  How

7      come counsel asked me whether it was inappropriate or not

8      for me to participate in the creation of this document?  I

9      do not know who Peng Li in this document is referring to.

10        MR. MARLBOROUGH:  We are going to move to page 19, PDF

11     page 24.  If you could highlight Bitmain Technologies

12     Limited and the signature?

13        MR. STARR:  (Complied.)

14 BY MR. MARLBOROUGH:

15    Q.   Jihan Wu was the CEO of Bitmain Technologies Limited;

16 correct?

17        MR. LAZATIN:   Objection.  Vague and ambiguous.

18        THE WITNESS:  This is dependent upon the period of time

19     in which Mr. Wu was or is the CEO of the company.

20 BY MR. MARLBOROUGH:

21    Q.   When was Mr. Wu CEO of the company?

22    A.   I answered the question in the morning session of the

23 deposition.  I know back in 2018 he was an executive director of

24 the Hong Kong company.

25    Q.   In 2020 was he CEO of Bitmain Hong Kong?

1    A.   Just a moment, please.  Let me think about it.  Let me

2 see.

3    I know in the first half of 2020 or before November of 2020

4 Mr. Wu was an executive director of Bitmain Hong Kong but whether

5 he was the CEO of the company or not, I have not come across that

6 information.

7    Q.   Do you know if he was ever CEO of the company?

8    A.   The information that we have come across, the

9 information that we have had access to was that Mr. Wu was an

10 executive director of Bitmain Hong Kong.  We have not had

11 information about whether he was the CEO of Bitmain Hong Kong or

12 not.

13    Q.   We are going to move to page 52.  At the top of this

14 page, this is an exhibit to that document which was a filing with

15 the Securities and Exchange Commission.  The title of the

16 document is Riot Blockchain purchases additional 15,000 Antminers

17 from Bitmain expanding 2021 total hash rate capacity over 3.8

18 EH/s.

19    Have you ever seen this document before?

20    A.   No, I have not.

21    Q.   I am going to move to the last sentence of that page.

22 The last sentence reads:  I am confident that with the new

23 purchase Riot can continue to grow there mining operation and

24 play an increasingly vital role in bitcoin mining across North

25 America, said Irene Gao, Antminer sales director of the NCSA

1 region Bitmain.  You previously testified --

2          MR. LAZATIN:  I am sorry.  I am going to again object

3      to the presentation of this exhibit within the exhibit that

4      is entirely in English without a Chinese translation.

5 BY MR. MARLBOROUGH:

6      Q.   Did you previously testify that Irene Gao is an

7 employee of Beijing Bitmain?

8      A.   Counsel, you must have remembered it wrong.  I

9 previously said that Gao Peng Li (phonetic) is an employee of

10 Bitmain Beijing.

11     Q.   Is Irene Gao an employee of Bitmain Beijing?

12     A.   I don't know who Irene Gao in this context refers to.

13          MR. MARLBOROUGH:  Can we go to Exhibit 9, please?

14          MR. STARR:  (Complied.)

15 BY MR. MARLBOROUGH:

16     Q.   Do you recognize the person in that picture?

17     A.   Yes.  Tianlin.

18     Q.   Does it say Irene in parentheses?

19     A.   Yes.

20     Q.   And this is a person that claims to be working from the

21 San Jose office; correct?

22          MR. LAZATIN:  Objection.  Misstates the document.

23      Counsel is testifying.

24          THE WITNESS:  No.

25 BY MR. MARLBOROUGH:

1    Q.    No, that person does not indicate that they work in San

2  Jose?

3          MR. LAZATIN:  Objection.  Foundation, speculation.

4          THE WITNESS:  Correct.

5          MR. MARLBOROUGH:  So returning to Exhibit 15.

6  BY MR. MARLBOROUGH:

7    Q.    Why would an employee of Beijing Bitmain be providing a

8  comment in a press release for a transaction concerning Bitmain

9  Hong Kong?

10         MR. LAZATIN:  Objection.  Lacks foundation, calls for

11    speculation, misstates his testimony and the document.

12         THE WITNESS:  I don't see that an employee of Bitmain

13    Beijing goes to Hong Kong and makes a press release.

14         MR. MARLBOROUGH:  Can you repeat my question to the

15    witness, please?

16         THE INTERPRETER:  Yes, counsel. (Speaks in Mandarin.)

17         MR. LAZATIN:   Objection.  Misstates the document and

18    his testimony, lacks foundation.

19         THE WITNESS:  What I said was that I did not hear an

20    employee from Beijing making any comments of a certain

21    transaction of Hong Kong.

22  BY MR. MARLBOROUGH:

23    Q.    Is it your position that Irene Gao is not an employee

24  of Beijing Bitmain?

25         MR. LAZATIN:  Objection.  Vague, ambiguous, foundation,

Atkinson Baker, a Veritext Company
www.depo.com

1     speculation.

2          THE WITNESS:  In the other document there is a photo of

3     Tianlin Gao and there is the wording of Bitmain.  I

4     recognize the photo and I know the individual.  So I can

5     tell you for certain that that individual is an employee of

6     Bitmain Beijing but whether this individual named Gao in

7     this context is the same individual that we previously

8     talked about or not, I cannot tell.  I cannot be sure of.

9  BY MR. MARLBOROUGH:

10     Q.  Why would the individual in the photo who you

11  acknowledge is Tianlin Gao provide comment for a transaction

12  between Bitmain Hong Kong and another company when she works for

13  Bitmain Beijing and not Bitmain Hong Kong?

14          MR. LAZATIN:  Objection.  Asked and answered,

15     harassing, misstates the evidence.

16          THE WITNESS:  Counsel, we have to first of all

17     determine whether this individual named Gao in this document

18     is the same individual in the other document Tianlin Gao.

19     If we can confirm that these two are the same individual we

20     can go on from here.  If we cannot confirm that these two

21     are the same individual how come counsel insists using the

22     statement that these two are the same person?  What evidence

23     does counsel have to support the statement that these two

24     are the same individual?  I cannot tell whether these two

25     are the same individual or not.

1  BY MR. MARLBOROUGH:

2      Q.   You can answer the question whether or not they are the

3  same individual.  Why would the woman in that picture, Tianlin

4  Gao, why would she provide a statement for a press release for

5  Bitmain Hong Kong?

6          MR. LAZATIN:  Objection.  Asked and answered for now

7      the fifth or sixth time.  This is totally harassing.

8      Misleading, misstates his testimony and misstates his

9      document.

10         MR. MARLBOROUGH:  If I receive an answer we can move

11     forward.

12         THE WITNESS:  You had better translate fully what I am

13     about to say to counsel.

14         By looking at this document at this time I cannot

15     ascertain that this Gao is Gao Tianlin in the other document

16     with a picture of the her attached to it.  When that is not

17     able to be ascertained I cannot answer why this alleged Gao

18     has made comments about a transaction made by Bitmain Hong

19     Kong at their press conference because I do not know if this

20     Gao is that Gao Tianlin who is an employee of Bitmain

21     Beijing.

22         MR. MARLBOROUGH:  Since the witness won't answer the

23     question I will conclude the deposition.

24         MR. LAZATIN:  I will object to that commentary as

25     entirely inaccurate, but that being said, why don't we go

1    comments that the witness made on the record and then you

2    broke up.  Go on.

3        MR. LAZATIN:  That the witness made off the record just

4    before the break, I want to say, Chris, I hope you can

5    understand his frustration with any implication that he has

6    not been entirely cooperative throughout this process.  I

7    want you to know that Mr. Ren came to Soeul at great

8    personal sacrifice.  He took 20 hours to get here from his

9    house.  He had to go into quarantine in China for 21 days at

10   a government facility when he can't see his family for that

11   time so I hope you can understand that there is some

12   frustration with any suggestion that he has not been

13   entirely cooperative throughout this process, which I think

14   is not the case.

15       So I just wanted to say that and thanks to everyone.

16       MR. MARLBOROUGH:  I would like to say, Carlos, thanks

17   for pointing that out.  I certainly did not know about the

18   quarantine situation.  It looks like you probably had a

19   rough journey yourself lately.  Are you in and out?  Is that

20   what is happening, you are flying in and flying out or are

21   you there for a little while?

22       MR. LAZATIN:  I mean, it is such trouble to travel here

23   right now to Korea.  You know I have clients here.  I have

24   done depositions in this very conference room before so I am

25   trying to see a couple of clients but otherwise, yeah, it is