CARLOS M. LAZATIN (S.B. #229650)
clazatin@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
JASON A. ORR (S.B. #301764)
jorr@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California 90071-2899
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

Attorneys for Defendant
Bitmain Technologies, Ltd.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOR GEVORKYAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BITMAIN, INC., BITMAIN TECHNOLOGIES, LTD., and DOES 1 to 10,<br><br>Defendants. | Case No. 3:18-cv-07004-JD<br><br>Judge: Hon. James Donato<br><br>**DEFENDANT BITMAIN TECHNOLOGIES, LTD.'S SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

# TABLE OF CONTENTS

Page

I.    **LEGAL ARGUMENT** ................................................................................................ 2

    A.    **There Is No Evidence of Bitmain HK's Purposeful Availment** ...................... 3

    B.    **Plaintiff's Claims Do Not Arise from Any Forum Contacts He Has Identified** .................................................................................................... 5

        1.    **Revenues from California Sales Do Not Support Jurisdiction** ............. 5

        2.    **Bitmain's Globally Accessible Website Does Not Support Jurisdiction** ................................................................................... 6

        3.    **There Is No "Intercontinental Sales Office"** ........................................... 7

        4.    **Plaintiff's Conduct in California Is Irrelevant** ..................................... 9

    C.    **Exercising Jurisdiction over Bitmain HK Would Be Unreasonable** .............. 10

II.    **CONCLUSION** ..................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adobe Systems Inc. v. Cardinal Camera & Video Ctr., Inc.*,
   2015 WL 5834135 (N.D. Cal. Oct. 7, 2015) .................................................................................. 9

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ...................................................................................................... 10

*AirWair Int'l Ltd. v. Pull & Bear Espana SA*,
   2020 WL 2113833 (N.D. Cal. May 4, 2020) ............................................................................... 7

*AM Tr. v. UBS AG*,
   78 F. Supp. 3d 977 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017) ........................ 5

*Ambriz v. Coca Cola Co.*,
   2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ............................................................................... 5

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ...................................................................................................... 7

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   2019 WL 5963149 (N.D. Cal. Nov. 13, 2019) ........................................................................ 6, 7

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ............................................................................................... 3, 10

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ...................................................................................................... 9

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) .............................................................................................................. 8, 9

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995) .............................................................................................. 4

*Caracal Enters. LLC v. Suranyi*,
   2017 WL 446313 (N.D. Cal. Feb. 2, 2017) ................................................................................. 9

*Cardenas v. Spinnaker Resorts, Inc.*,
   2017 WL 3315285 (D.N.J. Aug. 3, 2017) ................................................................................... 9

*Decker v. Circus Circus Hotel*,
   49 F. Supp. 2d 743 (D.N.J. 1999) ............................................................................................. 10

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ...................................................................................................... 6

*Dynamic Software Servs. v. Cyberbest Tech., Inc.*,
   2014 WL 3373924 (N.D. Cal. July 9, 2014) ............................................................................... 7

*Escude Cruz v. Ortho Pharm. Corp.*,
   619 F.2d 902 (1st Cir. 1980) ........................................................................................................ 4

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
   103 F.3d 888 (9th Cir. 1996) ................................................................................................... 3, 5

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Gonzalez Corp. v. Consejo Nacional De Produccion de Costa Rica*,
   614 F.2d 1247 (9th Cir. 1980) .................................................................................................. 3

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................................................... 8

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
   735 F. Supp. 2d 277 (W.D. Pa. 2010) ....................................................................................... 4

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ..................................................................................................... 5

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ............................................................................................................... 6, 7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ................................................................................................... 2

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
   52 F.3d 267 (9th Cir. 1995) ....................................................................................................... 2

*Orler v. Commercial Servs. Grp., Inc.*,
   2006 WL 8455380 (S.D. Cal. Mar. 8, 2006) ............................................................................ 7

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..................................................................................................... 2

*Sharpe v. Puritan's Pride, Inc.*,
   2019 U.S. Dist. LEXIS 6526 (N.D. Cal. Jan. 14, 2019) ........................................................... 9

*Sonora Diamond Corp. v. Super. Ct.*,
   83 Cal. App. 4th 523 (2000) .................................................................................................. 4, 5

*Spy Optic Inc. v. AreaTrend, LLC*,
   2020 WL 1849672 (S.D. Cal. Apr. 13, 2020) ....................................................................... 6, 7

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................................. 6, 10

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ................................................................................................... 4

Nearly two years into his attempts to establish personal jurisdiction over Bitmain Technologies, Ltd. ("Bitmain HK"), Plaintiff has still come up short. In 2019, this Court ordered jurisdictional discovery after Plaintiff told the Court that Bitmain HK had extensive contacts with the state of California: He insisted that Bitmain HK had employees here, that it had a North American "sales office" here, and that California was a "key market … for its overseas business." (ECF 37 at 5.) Now, after extensive document production and an all-day deposition of a Bitmain witness in Seoul, **none of Plaintiff's assertions about Bitmain HK has turned out to be true**, and Plaintiff has effectively abandoned those claims, which were thoroughly refuted by the evidence.

Instead, Plaintiff's latest pitch is that the Court may exercise jurisdiction over Bitmain HK's subsidiary (and non-party) Beijing Bitmain Technology Co. Ltd. ("Bitmain Beijing") on account of *its* supposed contacts, and then over Bitmain HK as its supposed alter ego. Plaintiff falls far short of the high bar that controlling California law requires he clear to prove an alter ego relationship between two separate corporate entities. Plaintiff will likely argue this Court can pierce the corporate veil because Bitmain HK is allegedly a "shell company." But the Bitmain witness whom Plaintiff deposed confirmed just the opposite: that Bitmain HK and Bitmain Beijing are separate companies, with different lines of business, different workforces, different management, different legal and financial operations, and different operations in different places. Although sales and marketing responsibilities were recently shifted away from Bitmain HK as part of broader corporate reorganizations, Bitmain HK is no shell company, and Bitmain Beijing is not its alter ego.

Yet even if Bitmain Beijing's supposed forum contacts were somehow attributable to Bitmain HK, they still would not establish specific jurisdiction. The test for specific jurisdiction turns on whether Plaintiff can identify forum contacts **from which his claims arise**, a burden he does not even attempt to meet here. He does not allege he ever dealt with anyone in the San Jose office or purchased his devices from a Bitmain Beijing employee on a visit to California. Moreover, none of these alleged contacts, standing alone or in combination, shows the kind of purposeful availment required for the Court to exercise personal jurisdiction. It is well established that a relatively small number of sales through a globally accessible website does not constitute the sort of "express aiming" required for specific jurisdiction. Nor is it sufficient for Bitmain HK or Bitmain

Beijing to have an office in California (they do not). Plaintiff also cannot establish personal jurisdiction over Bitmain HK by pointing to his own conduct in the forum—*e.g.*, that he resides here, ordered ASICs to be delivered here, or connected Bitmain devices to electricity and internet services in California. The question is what contacts **Bitmain HK** has with the forum, and whether Plaintiff's claims *arise from those contacts*. The evidence conclusively demonstrates that Bitmain HK has no meaningful contacts with California, much less any giving rise to Plaintiff's claims.

In any event, Plaintiff has available to him a suitable alternative forum—the Hong Kong International Arbitration Center—which he expressly agreed to use in any disputes arising from his purchases. The exercise of specific jurisdiction would be unreasonable where Bitmain HK has not availed itself of this jurisdiction's courts but has affirmatively chosen a different forum.

## I.  LEGAL ARGUMENT

Plaintiff fails to establish any of the three requirements for the Court's proper exercise of specific personal jurisdiction: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of or relates to* the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be **reasonable**." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

The "express aiming" of the first prong requires "conduct directly targeting the forum," and not just a general awareness that the defendant's conduct could potentially cause harm in the forum. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). The second prong establishes a "but-for" test that requires a "direct nexus" between the defendant's forum contacts and the plaintiff's cause of action. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996). The third prong entails a multifactor determination of whether the exercise of jurisdiction would be reasonable, including (i) the extent of the defendant's purposeful injection

into the forum state, (ii) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (iii) the existence of an alternative forum, among other factors. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

### A.     There Is No Evidence of Bitmain HK's Purposeful Availment

Despite having taken 21 months of jurisdictional discovery, including the deposition of a Bitmain HK witness, Plaintiff can point to no evidence that Bitmain HK has any meaningful contacts with this forum. Bitmain HK previously submitted evidence that it owns no real estate in California, ECF 33-1 ¶ 7; has no employees in California, ECF 38 ¶ 6; has no registered agent for service of process in California, ECF 33-1 ¶ 5; and pays no taxes in California, *id.* ¶ 9. Bitmain HK's deponent said nothing to the contrary. He did explain, however, that as a result of corporate reorganizations starting in 2018, Bitmain HK no longer has direct involvement in sales and marketing activities, apart from being named as the legal seller on sales contracts. Ren Dep. at 42:11–43:7, 45:19–46:15, 51:13–52:19.[1] Its subsidiary Bitmain Beijing is responsible for sales and marketing activities for ASIC devices. *Id.* at 46:14–24. Bitmain HK's current business is in (i) "investment and … financing," and (ii) the "purchase and supply" of chips or "wafers" that make up the raw materials of ASIC devices. *Id.* 28:3–12 (Bitmain HK handles wafer supply), 70:8–13 (investing and financing). None of those activities is directed at California. And it is immaterial that Bitmain HK has few employees *today* compared to 2018, *see id.* at 69:4–22, because personal jurisdiction is assessed *at the time the complaint is filed*. *See Gonzalez Corp. v. Consejo Nacional De Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980).

To the extent Plaintiff argues that Bitmain Beijing is the alter ego of Bitmain HK, such that Bitmain Beijing's contacts can be attributed to Bitmain HK for jurisdictional purposes, he has not met the high burden to show an alter ego relationship between these companies. Alter ego doctrine is an "extreme remedy" to be used only in "exceptional circumstances" where the "presumption of corporate separateness … [is] overcome by clear evidence that the parent in fact controls the

---

[1] Relevant excerpts from the September 2, 2021 deposition of Gang Ren are attached to the concurrently filed Supplemental Declaration of Jason A. Orr ("Suppl. Orr Decl."). Given the unavailability of a suitable witness from Bitmain HK to address the topics covered in the Liu Declaration (ECF 33-1) following this corporate reorganization, Mr. Ren, a Bitmain Beijing employee, agreed to sit for deposition at the request of Bitmain HK. Ren Dep. at 24:8–24.

activities of the subsidiary." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)). To show an alter ego relationship, Plaintiff must prove something "more than a normal parent-subsidiary relationship" in which there is some measure of control of the subsidiary by the parent. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1298–1300 (S.D. Cal. 2003). That the parent company owns a subsidiary that is responsible for sales distribution does not support a finding of alter ego. *See id.*; *Cardenas v. Spinnaker Resorts, Inc.*, 2017 WL 3315285, at *5 (D.N.J. Aug. 3, 2017) (subsidiary's solicitation of business in forum insufficient to establish jurisdiction over parent). Nor is it material that both companies use the "Bitmain" brand. *See id.* at 1301; *see also In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) (a company being "portrayed as a single brand to the public … does not demonstrate the necessary control by defendant parent over the subsidiaries"). Rather, Plaintiff needs to show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017). He can show neither here.

As Bitmain HK's witness confirmed, Bitmain Beijing is an "independent entity" from Bitmain HK. Ren Dep. 22:13–14. The two companies conduct entirely different business, *see supra*. They operate in different facilities in different cities. *See* Ren Dep. at 15:4–6, 28:6. Bitmain Beijing has a separate workforce from Bitmain HK. *See id.* 36:4–7 (different legal officers), 46:14–24 (employees at Bitmain Beijing have different responsibilities), 69:4–71:3 (Bitmain HK has a few employees, Bitmain Beijing has hundreds). Company founder Wu Jihan did previously serve as a director for several Bitmain companies, but this is not uncommon for growing start-ups like Bitmain. "It is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 531, 548–49 (2000) (no alter ego relationship where "some of Sonora Mining's directors and officers were also directors and officers of Diamond"). More is required to establish alter ego.

Thus, even if Plaintiff attempts to make an alter ego argument, none of the facts he can point to establishes such a relationship here, whether considered separately or in the aggregate. *See*

*Sonora Diamond*, at 551 ("The sum of a series of zeros, no matter how many, is still zero.").

### B. Plaintiff's Claims Do Not Arise from Any Forum Contacts He Has Identified

Plaintiff to date has identified only a handful of alleged forum contacts, almost none of which involve Bitmain HK. But regardless of what entity these contacts are attributed to, they cannot support the exercise of jurisdiction because it is undisputed that Plaintiff's legal claims do not in any way "arise[] out of" those contacts. *See Fireman's Fund Ins. Co.*, 103 F.3d at 894. There is thus no "direct nexus … between those contacts and the cause of action." *Id.*

#### 1. Revenues from California Sales Do Not Support Jurisdiction

Contrary to Plaintiff's assertion, evidence that "Bitmain HK generated more than $50,000,000 in revenue from its sale of ASIC devices to customers in California" over five years is insufficient to establish personal jurisdiction. (ECF 62-4 at 3.) As this Court has held in the past, sales to third parties are not relevant to establishing specific jurisdiction ***over the plaintiff's claims*** because they fail the "nexus" prong of the three-part test for specific jurisdiction—the requirement that a plaintiff's claims arise from the defendant's contacts. *See Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015) (Donato, J.); *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("[T]he claim must be one which arises out of or relates to the defendant's forum-related activities … ."). Here, ***Plaintiff's*** claims do not "arise out of" or "relate to" sales to ***other customers***.[2] *Id.*. His claims would be unchanged even if Bitmain HK had not made ***any*** other sales in California. The Ninth Circuit is clear that where, as here, the plaintiff's claim "does not arise out of those contacts, … those contacts cannot form the basis for exercising personal jurisdiction" over the defendant. *Id.*

The small proportion of California sales at issue—relative to overall global sales—further militates against the "express aiming" required for this Court to assert jurisdiction over Bitmain

---

[2] Plaintiff might seek to argue these included sales to putative class members, but in a class action, the "claims of unnamed members are irrelevant to the question of specific jurisdiction." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017). "[A] defendant's contacts with the named plaintiff in a class action, without reference to the defendant's contacts with unnamed members of the proposed class, must be sufficient for the Court to exercise specific personal jurisdiction over the defendant. … [I]t is the named plaintiff's claim that 'must arise out of or result from the defendant's forum-related activities,' not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification." *Ambriz v. Coca Cola Co.*, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014).

HK. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (for specific personal jurisdiction, defendant must have committed an act "expressly aimed at the forum state"); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum … ."). The evidence shows annual California sales of Bitmain ASIC devices (which can cost thousands of dollars each) ranging from $486,481 in 2016 to $32,657,754 in 2018. (*See* ECF 62-9.) But these California sales accounted for a fraction of Bitmain's overall global sales—just 0.66% in the latter part of 2015, 0.23% in 2016, 0.94% in 2017, 1.09% in 2018, and a mere 0.08% in 2019. (*See id.*) In some years, only a few hundred units were sold in California. (*See id.*) Indeed, district courts in this Circuit have routinely declined to exercise jurisdiction even where California sales are a much higher proportion. *See, e.g.*, *Spy Optic Inc. v. AreaTrend, LLC*, 2020 WL 1849672, at *8–9 (S.D. Cal. Apr. 13, 2020) (California sales represented 4.7% of defendant's gross sales); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 2019 WL 5963149, at *2, *4 (N.D. Cal. Nov. 13, 2019) ("less than 2% of [defendant's] sales have been to California"). Compared to total sales, the "de minimis amount" of California sales does not establish jurisdiction. *Ayla*, 2019 WL 5963149, at *4.

### 2. Bitmain's Globally Accessible Website Does Not Support Jurisdiction

To the extent Bitmain's sales were made through a website that can be accessed in California, there is still no support for personal jurisdiction over Bitmain HK. As Plaintiff recently confirmed at the deposition of Bitmain HK's witness, Bitmain HK does not own or operate the Bitmain.com website. Ren Dep. at 49:11–12 (Bitmain Beijing operates the website); *see also id.* 84:13–19 (Bitmain Beijing operates Bitmain-branded social media). But the entity operating the website makes no difference—a website that does not specifically target California customers cannot support personal jurisdiction over Bitmain HK in any event.

Following the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), district courts in this Circuit have recognized that it takes more than an interactive website accessible to Californians to establish personal jurisdiction over a defendant in California. To support specific personal jurisdiction, the website must be **specifically directed at Californians**. *See Spy Optic*, 2020 WL 1849672, at *5 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir.

1   2017)). Common features of a "standard, modern website"—such as the ability to make online
2   purchases, leave reviews, or send messages to the company about a purchase—are insufficient to
3   show that California is the target of the defendant's conduct. *Ayla*, 2019 WL 5963149, at *4.

4         Plaintiff has no evidence that the Bitmain.com website targets California. To support
5   specific jurisdiction, he must show California-directed activity where "the target audience is
6   consumers in California, rather than the U.S." generally. *AirWair Int'l Ltd. v. Pull & Bear España
7   SA*, 2020 WL 2113833, at *5 (N.D. Cal. May 4, 2020) (U.S.-facing website did not show Spanish
8   company was targeting California market); *see also J. McIntyre*, 564 U.S. at 884–85 (for specific
9   jurisdiction, defendant must target the forum state, not U.S. generally). Evidence of such express
10  aiming at California could include "selling more products to consumers in California than in any
11  other state" or "maintaining a website containing a page directed specifically to California
12  consumers." *Spy Optic*, 2020 WL 1849672, at *8. Plaintiff has not uncovered ***any*** evidence that
13  demonstrates Bitmain Beijing tailored its website and sales specifically to California. To the
14  contrary, the evidence shows that California was an insignificant market for the company.

15        To the extent Plaintiff relies on communications he had with customer service personnel
16  through Bitmain Beijing's website, communications that **Plaintiff initiated** through the website
17  cannot establish that **Bitmain HK** purposefully directed its activities at California. There is no
18  evidence that these communications were even with Bitmain HK employees. In any event, those
19  communications cannot establish "purposeful availment" as a matter of law because **Plaintiff** was
20  the one who reached out to **Bitmain**. *See Dynamic Software Servs. v. Cyberbest Tech., Inc.*, 2014
21  WL 3373924, at *8 (N.D. Cal. July 9, 2014) (no purposeful availment where "it was Plaintiff who
22  solicited business from Defendant in an e-mail"); *Orler v. Commercial Servs. Grp., Inc.*, 2006 WL
23  8455380, at *2 (S.D. Cal. Mar. 8, 2006) (no purposeful availment where "only direct contacts
24  between Plaintiff and Defendant are Plaintiff's telephone calls to Defendant to complain").

25        **3.**    **There Is No "Intercontinental Sales Office"**
26        Plaintiff's contention that "Bitmain HK maintains its sales office for the intercontinental
27  North, South and Central American sales in San Jose, California" is pure fiction. (ECF 62-2 at 5.)
28  As Plaintiff's deposition of Bitmain HK's witness confirmed, there is no "sales office" of any kind

in San Jose. Bitmain HK's sister company Bitmain, Inc.—**which conducts R&D and cryptocurrency mining operations, and not ASIC sales**—leases office space in San Jose. Ren Dep. at 61:3–5; *see also* Orr Decl. Ex. A (Bitmain Inc. Lease) (ECF 67); Christenson Decl. ¶¶ 3–5 & Ex. A (ECF 68). But there are no Bitmain HK or Bitmain Beijing employees based in San Jose; at most, some Bitmain Beijing employees might stop by the Bitmain, Inc. office while in the United States on business. Ren Dep. at 71:15–72:19. Plaintiff might argue that two Bitmain Beijing employees identified their location as "San Jose" on LinkedIn.com, but this does not establish jurisdiction.[3] No Bitmain entity—not Bitmain HK, Bitmain Beijing, or any other affiliated company—employs sales personnel who are based in or work in California. *See id.* at 78:23–79:3.

None of this ultimately matters, of course, because Plaintiff has no evidence that his claims arise from the San Jose office or any activities in that office. "A corporation's 'continuous activity of some sorts within a state … is not enough to support the demand that the corporation be amenable to suits **unrelated to that activity**." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 927 (2011) (emphasis added). Plaintiff does not even attempt to connect his claims to any Bitmain HK activities that allegedly occurred at the San Jose office. He does not allege he communicated with individuals at this office, he does not allege he ever visited this office, and he does not allege he bought his ASIC devices through this office.

As the Supreme Court made clear in *Bristol-Myers Squibb*, even where a defendant has numerous offices or personnel in the forum, that is still insufficient for a district court to assert specific personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). The *Bristol-Myers* Court held that specific jurisdiction could not be based on "extensive forum contacts that are unrelated to [the plaintiffs'] claims," which included "[f]ive of the company's research and laboratory facilities, which employ a total of around 160 employees," "250 sales representatives in California," and "a small state-government advocacy office in Sacramento." *Id.* at 1778, 1781. So even if the San Jose office and all activities in that office could somehow be

---

[3] Plaintiff might also argue that Bitmain Beijing at one time posted a job listing for a "sales specialist" based in California. But that position was never filled, and as Bitmain HK's witness testified, ***no employees*** of any Bitmain company are based in California. Ren Dep. at 78:23–79:3. The decision ***not*** to hire U.S.-based personnel only confirms there was no purposeful availment.

attributed to Bitmain HK (activities far less extensive than the contacts in *Bristol-Myers*), Plaintiff's complete failure to explain how his claims "arise out of" those activities renders the San Jose office (and its employees and insurance policies) irrelevant to the specific jurisdiction analysis.

### 4. Plaintiff's Conduct in California Is Irrelevant

Plaintiff cannot manufacture jurisdiction through his own alleged conduct in California. Plaintiff has argued that this Court has jurisdiction over Bitmain HK because Bitmain HK allegedly sold ASIC devices "with a default configuration that mined cryptocurrency in California using its customer's electricity, generated from California power companies, and using its customers' California internet service provided by California internet providers." (ECF 62-2 at 3.) Even if true, none of these facts would matter. As Plaintiff himself has acknowledged, "[t]he proper focus … is on the defendant and its connection to the forum, **regardless of what contacts the plaintiff might have there**." (*Id.* at 2 (quoting *Sharpe v. Puritan's Pride, Inc.*, 2019 U.S. Dist. LEXIS 6526, at *11–12 (N.D. Cal. Jan. 14, 2019)) (emphasis added).)

To the extent Plaintiff is suggesting that specific jurisdiction exists because Bitmain HK could foresee that its actions would result in harm in California, he relies on bad law. As this Court has recognized, the Supreme Court's decision in *Walden* "overrides" the effects test articulated in *Calder* and its progeny. *Erickson*, 2015 WL 4089849, at *3 (Donato, J.). Under the old *Calder* test, a plaintiff could establish specific jurisdiction where the defendant's actions "caus[e] harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). But as this Court explained, the *Walden* Court "rejected the idea … that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis." 2015 WL 4089849, at *3; *accord Caracal Enters. LLC v. Suranyi*, 2017 WL 446313, at *3 n.3 (N.D. Cal. Feb. 2, 2017); *Adobe Systems Inc. v. Cardinal Camera & Video Ctr., Inc.*, 2015 WL 5834135, at *4 (N.D. Cal. Oct. 7, 2015). Here, Plaintiff asks the Court to assert personal jurisdiction over Bitmain HK based on contacts that are entirely of his making: **his** choice to live in California, **his** choice to set up ASIC devices in California, and **his** choice to contract with California utilities for power or internet. But "after *Walden* there can be no doubt that 'the plaintiff cannot be the only

link between the defendant and the forum.'" *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (citing *Walden*, 571 U.S. at 285).

### C. Exercising Jurisdiction over Bitmain HK Would Be Unreasonable

Bitmain HK is a Chinese company based in Hong Kong that conducts no activities in California. Far from purposefully availing itself of California courts, Bitmain HK has chosen ***another forum***—one to which Plaintiff agreed. Every sale conducted on the Bitmain website is subject to a forum selection clause that requires arbitration in Hong Kong: "[t]he laws of Hong Kong will apply to any disputes arising out of or relating to the Terms of Service or the Services," and "[a]ll claims arising out of or relating to the Terms of Service or the Services will be submitted exclusively in the Hong Kong International Arbitration Center, and you and Bitmain consent to personal jurisdiction in those tribunals." Decl. of Luyao Lui ¶ 16, Ex. A at 5 (ECF 33-1 & 33-2).

Where the selection of a particular forum is a condition of an online purchase, courts are reluctant to exercise personal jurisdiction in a forum different from the one to which the parties agreed. *See, e.g.*, *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 748 (D.N.J. 1999) (finding no purposeful availment or direction where hotel reservations made online required consent to forum selection clause). This is because a forum selection clause evinces a clear intent contrary to the exercise of personal jurisdiction in any ***unselected*** forum. *See id.* Instead, it demonstrates an intent to direct one's actions to the selected forum. *See id.* Here, the forum selection and arbitration clause governing Plaintiff's purchase demonstrates that Bitmain did not intend to avail itself of California as a forum and did not reasonably anticipate being haled into a California court. *Id.*

On these facts, it would be unreasonable for this Court to exercise jurisdiction over Bitmain HK—especially in light of Plaintiff's thin evidentiary showing. Plaintiff has already consented to an alternative forum that can provide him effective (and likely quicker) relief on his asserted claims, and this Court should hold him to that agreement. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

## II. CONCLUSION

For the foregoing reasons, the Court should find it lacks personal jurisdiction over Bitmain HK and dismiss Plaintiff's First Amended Complaint with prejudice.

| | | |
|---|---|---|
| 2 | DATED: October 4, 2021[4] | Respectfully submitted, |

/s/ *Carlos M. Lazatin*
Carlos M. Lazatin
William K. Pao
Jason A. Orr
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: clazatin@omm.com
Email: wpao@omm.com
Email: jorr@omm.com

*Counsel for Defendant Bitmain Technologies, Ltd.*

---

[4] Bitmain HK submits this brief on October 4, 2021, to comply with the Court's direction that the parties file simultaneous briefs. Although the parties had originally agreed to submit their respective briefs on October 1, Plaintiff's counsel informed Bitmain last week that they had changed their mind and intended to file their supplemental brief *on Sunday, October 3*. Given Plaintiff's position, Bitmain agreed to file its brief simultaneously with Plaintiff on October 4, 2021, consistent with Fed. R. Civ. P. 6. *See* Suppl. Orr Decl. ¶¶ 3–5 & Exs. B & C.