# Exhibit A

Atkinson Baker, a Veritext Company
www.depo.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


GOR GEVORKYAN on behalf of himself
and all others similarly situated,

           Plaintiffs,

vs.

                            CASE NUMBER:

                            3:18-cv-07004-JD


BITMAIN, Inc..., BITMAIN TECHNOLOGIES, Ltd
and DOES 1 to 10

           Defendants.

**CERTIFIED COPY**


    The videotaped deposition of Gang Ren taken on behalf of the

Plaintiff, for all purposes permitted by Civil Rules of

Procedure; all formalities waived, including the reading and

signing of the deposition; before LaTasha Bethel, Certified Court

Reporter, 2660, in and for the State of Georgia; commencing

on September 2nd, 2021 at 5:00p.m., via Zoom.


Atkinson-Baker, a Veritext Company
www.depo.com
800-288-3376

```
 1              A P P E A R A N C E S

 2

 3  ON BEHALF OF THE PLAINTIFF:

 4  CHRISTOPHER MARLBOROUGH               MANNY STARR

 5  THE MARLBOROUGH LAW FIRM, P.C.        FRONTIER LAW CENTER
    445 BROAD HOLLOW ROAD                 23901 CALABASAS ROAD
 6  SUITE 400      SUITE 2074
    MELVILLE, NY. 11747    CALABASAS, CA. 91302
 7  212-991-8960                          818-914-3433

 8  ARI Y. BASSER

 9  POMERANTZ LLP
    1100 GLENDON AVENUE
10  15TH FLOOR
    LOS ANGELES, CA. 90024
11  310-432-8492

12

13  ON BEHALF OF THE DEFENDANT:

14  CARLOS LAZATIN

15  O'MELVENY & MYERS LLP
    400 SOUTH HOPE STREET
16  18TH FLOOR
    LOS ANGELES, CA. 90071
17  213-430-6000

18

19  ALSO PRESENT:

20  THE VIDEOGRAPHER                      THE INTERPRETER

21  JOSEPH BUSSINO     VO HUANG
    ATKINSON-BAKER,                       ATKINSON-BAKER
22

23  THE CHECK INTERPRETER

24  JENNY KONG

25
```

Atkinson Baker, a Veritext Company
www.depo.com

```
 1                        I N D E X

 2                         EXHIBITS

 3  NO.:      DESCRIPTION:                      PAGE:

 4  For Plaintiff:

 5  2         Chart:
              For Identification              37:24
 6
    4         Document:
 7            For Identification              54:12

 8  5         Document:
              For Identification              78:12
 9
    6         Picture:
10            For Identification              73:23

11  9         Picture:
              For Identification              75:25
12
    10        Document:
13            For Identification              82:10

14  11        Document:
              For Identification              85:16
15
    12         Document:
16            For Identification              87:17

17  14        Document:
              For Identification              98:2
18
    15        Document:
19            For Identification              101:9

20                        WITNESSES

21  ALL WITNESSES:                             PAGE:

22  For Plaintiff:

23    GANG REN:
        Direct Examination by MR. MARLBOROUGH   6:10
24

25
```

Atkinson Baker, a Veritext Company
www.depo.com

1     Q.    What is your degree in?

2     A.    My degree is in electronic information engineering.  It

3 is about the electronic circuit designing.

4          (Technical discussion had off the written record.)

5     Q.    What is your work history starting from the time that

6 you got out of college?

7     A.    After I graduated from university I started working for

8 Samsung Electronics.  It was Samsung China Electronics located in

9 Tianjin, China.  I worked in the department of electronic circuit

10 development and designing for about twelve to thirteen years.

11     I left Samsung Electronics in 2018.  After that I joined

12 Bitmain Technology.

13     Q.    What was your first job -- was that in 2018 that you

14 started working for Bitmain?

15     A.    The first job that I had was the management and the

16 administration of servers.

17     Q.    How long did you do that for?

18     A.    I did that for approximately six to seven months.

19     Q.    Was your next job also with Bitmain?

20     A.    Yes.

21     Q.    What year did you start the next job?

22     A.    To be precise, that was in December of 2018 or January

23 of 2019.

24     Q.    What was that job?

25     A.    At that time I got transferred to the chip development

Atkinson Baker, a Veritext Company
www.depo.com

1 department and in that department I got involved in the

2 development and management of chip building or chip making.

3     Q.   And that was for Bitmain Technologies Limited?

4     A.   I was working in the Beijing operation of Bitmain.

5     Q.   Which entity did you work for?

6     A.   I worked for Bitmain Technology Beijing in China.

7     Q.   This is when you worked in the chip development

8 department beginning in 2018 you worked for Bitmain Beijing; is

9 that correct?

10     A.   As a matter of fact I joined Bitmain Technology in 2018

11 but initially I worked in, as I told you, the server development.

12 That was for the overall operation.  Then I got transferred to

13 the chip development division of the same company.

14     Q.   In both cases we are talking about Beijing Bitmain

15 Technology.  Is that the name of the company?

16     A.   It was in the Bitmain Beijing, yes.

17     Q.   Did you come to a point where you left that position?

18     THE INTERPRETER:  Counsel, the witness' audio was cut

19    off just for, like, a split of a second.  May I ask him to

20    repeat what he just said?

21     MR. MARLBOROUGH:  Yes, of course.

22     THE WITNESS:  In around July of 2019 I was transferred

23    to another department.

24 MR. MARLBOROUGH:

25     Q.   You were transferred to another department with Beijing

1  Bitmain Technologies?

2      A.   Yes.

3      Q.   And what department was that?

4      A.   To provide management and maintenance service for the

5  employees who provide service to servers.

6          THE CHECK INTERPRETER:  Translation dispute.

7          MR. LAZATIN:  I am sorry.  There is a dispute about the

8      translation.

9          THE CHECK INTERPRETER:  I suggest that the witness just

10     said, at first I was working for the management of a team

11     who provides the operation and also maintaining services of

12     our mining servers and my job is to manage those who do this

13     job.

14         MR. LAZATIN:  Do you disagree, Mr. Huang?

15         THE CHECK INTERPRETER:  I am sorry, I would like to

16     correct.  It is the management for the team building of

17     maintenance and operation of mining farms.

18         THE INTERPRETER:  Counsel, this is from Bo Huang the

19     interpreter.

20         MR. MARLBOROUGH:  Yes, sir.

21         THE INTERPRETER:  I am not trying to argue over the

22     differences on translation.  I am just wondering if it is

23     proper for the check interpreter's statement to be on the

24     record because I am court certified and my translation

25     stands.  Maybe -- I mean it happens from time to time that

Atkinson Baker, a Veritext Company
www.depo.com

1  mining farms?

2      A.    Yes.

3      Q.    When we refer to mining farms we are referring to ASIC

4  devices?  And that is A-S-I-C.

5      A.    ASIC machines.  In our company we call it Antminer.

6      Q.    What is your last word?

7      A.    Well, to the outside people probably refer to it as

8  ASIC machine but in our company we call it Antminer.

9      Q.    Oh, Antminer?

10     A.    Antminer, yes.  Or mining server.

11           MR. LAZATIN:  Just for clarification it is Antminer

12     like the insect.  Antminer.

13  BY MR. MARLBOROUGH:

14     Q.    How long did you do that job for?

15     A.    Let me see.  I think I worked on this job for over one

16  year, more than one year.

17     Q.    What was the next job that you did?

18     A.    In April of 2021 I became the superintendent of

19  Department 3 of product benefit realization.  That is what we

20  call it.

21     Q.    And was your employer Beijing Bitmain Technologies?

22     A.    Yes.

23     Q.    What were your responsibilities as superintendent for

24  the department of product realization?

25     A.    Our job in this department is to identify the features

Atkinson Baker, a Veritext Company
www.depo.com

1 of some of the products that were to be introduced to the R&D --

2 development for R&D so that they may be marketed to customers.

3     Q.   Are you still in that position?

4     A.   Yes.

5     Q.   You understand Beijing Bitmain Technologies to be a

6 different company than Beijing -- excuse me.  I'm going to

7 rephrase the question.

8     You understand that Beijing Bitmain Technologies to be a

9 different company than Bitmain Technologies Limited?

10       MR. LAZATIN:  Objection to form.  Calls for legal

11     conclusion.  Objection, vague and ambiguous.

12       THE WITNESS:  I don't know what question you are asking

13     me but I can tell you that I worked for Beijing Bitmain

14     which is an independent entity.

15 BY MR. MARLBOROUGH:

16     Q.   Are you familiar with an entity named Bitmain

17 Technologies Limited?

18     A.   We go like this, normally when we refer to Bitmain

19 Technology we refer to it as Bitmain Hong Kong.

20     Q.   Have you ever worked for Bitmain Hong Kong?

21     A.   No.

22     Q.   Do you have knowledge of the operations of Bitmain Hong

23 Kong?

24     A.   I have a rough idea about Bitmain Hong Kong.

25     Q.   Do you currently hold any other positions with any

Atkinson Baker, a Veritext Company
www.depo.com

 1 Bitmain entities?

 2     A.    No.

 3     Q.    Are you an executive of Beijing Bitmain?

 4           MR. LAZATIN:  Objection, vague.

 5           THE WITNESS:  Well, it is true that counsel is

 6     ambiguous about the definition of the term executive, but I

 7     can tell counsel that I am a member of the management of

 8     Bitmain Beijing.

 9 BY MR. MARLBOROUGH:

10     Q.    Are you a member of the management of Bitmain Hong

11 Kong?

12     A.    No.

13     Q.    Are you a board member of any Bitmain entity?

14     A.    You mean a board member, no.  I am not.

15     Q.    Just to be clear I am referring to a member of the

16 board of directors.

17     A.    (No translation given.)

18     Q.    Did any of your supervisors or anyone above you at

19 Beijing Bitmain tell you to appear for this deposition?

20     A.    I am sorry.  Counsel, can you please repeat the

21 question?

22     Q.    Sure.  Did any of your superiors direct you to

23 participate in this deposition?

24           MR. LAZATIN:  Objection, vague and ambiguous.

25           THE WITNESS:  No.

Atkinson Baker, a Veritext Company
www.depo.com

1 BY MR. MARLBOROUGH:

2     Q.   You don't understand the question?

3          MR. LAZATIN:  Objection, asked and answered.

4          THE WITNESS:  Counsel, you just asked me if I have been

5     directed by any of my superiors to appear for the deposition

6     and my answer is, no.

7 BY MR. MARLBOROUGH:

8     Q.   How is it that you heard about the opportunity to

9 participate in this deposition?

10    A.   It was a Max Hua who asked me if I would like to

11 participate in it.  I said, yes.  So here I am today.

12    Q.   Can you spell the name of Max Hua?

13    A.   Max Huang.  Max is M-A-X, Huang, H-U-A-N-G.  No.  Let

14 me take that back.  That is not correct.  Hua is H-U-A.  Sorry.

15    Q.   Does Max not work for Beijing Bitmain?

16    A.   Max is the person in charge of the legal affairs for

17 Hong Kong Bitmain.

18    Q.   What did Max tell you about the appearance at this

19 deposition?

20    A.   Max told me that as far as discovery is concerned, due

21 to the pandemic outbreak we cannot travel to the United States,

22 however, we can go to Korea.  He asked me if I would be willing

23 to come over to Korea for this.  I agreed to that.  He then

24 briefed me a bit about the background about the case.

25    Q.   What did he tell you?

Atkinson Baker, a Veritext Company
www.depo.com

1        Q.   I did not receive an answer to my earlier question.

2        Are you represented in your individual capacity or as an

3    employee of Beijing Bitmain?

4             MR. LAZATIN:  Objection.  Vague and ambiguous, calls

5        for legal conclusion.

6             THE WITNESS:  Honestly, I don't understand the

7        difference between being represented as an employee of a

8        company and as an individual.

9             THE CHECK INTERPRETER:  Translation dispute.  I think

10       the exact word is, I don't know -- I really don't know how

11       the person represented or the company represented by a

12       lawyer is defined in law.  What is the difference how they

13       are defined.

14            MR. MARLBOROUGH:  I am going to ask that the microphone

15       of the other translator be turned off until we can resolve

16       this issue.  Particularly where there is a concern about

17       witness coaching.

18            Do you agree to that, Carlos?

19            MR. LAZATIN:  I do not understand the concern about

20       witness coaching.  She disagreed with the translation.  She

21       gave her alternate translation.  Mr. Huang can accept it or

22       reject it, we can proceed subject to that objection.  I do

23       not understand the coaching issue.

24   BY MR. MARLBOROUGH:

25       Q.   Where did you obtain your knowledge about Bitmain Hong

Atkinson Baker, a Veritext Company
www.depo.com

1 Kong?

2     A.   I had access to Bitmain Hong Kong's information during

3 my work, during my communication with my coworkers.

4     Q.   What information do you have access to about Bitmain

5 Hong Kong?

6     A.   Counsel, what information concerning Bitmain Hong Kong

7 do you want to know?

8     Q.   I am interested in knowing what information you have in

9 what categories about Bitmain Hong Kong as a person who is not an

10 employee of the company?

11          MR. LAZATIN:  I am going to object.  It is also

12     argumentative.

13          THE INTERPRETER:  Counsel, the witness' audio is a bit

14     choppy.

15          MR. MARLBOROUGH:  Okay.  We can repeat the question to

16     him.  I am sorry.  I did not understand your signaling.

17          THE INTERPRETER:  I was just trying to let you know

18     that the witness did answer the question.  I heard only a

19     part of it because his audio became a bit choppy.  I wanted

20     him to repeat what he said.

21          MR. MARLBOROUGH:  I appreciate that.  Can you repeat

22     the question to him just so we're clear he's got the

23     question?

24          THE INTERPRETER:  Yes.  (Speaks in Mandarin.)

25          THE WITNESS:  All right.  I would like to give you an

Atkinson Baker, a Veritext Company
www.depo.com

1    account of what I know about Bitmain Hong Kong.

2         MR. MARLBOROUGH:  Please do.

3         THE WITNESS:  Bitmain Hong Kong is a company that is

4    incorporated in Hong Kong which is subject to the laws and

5    regulations of Hong Kong.  I also have certain knowledge

6    about its operation in Hong Kong.  For instance, it is

7    involved in the chip business.  In our industry we call it

8    wafer.  The purchasing and supply of wafer business that

9    this company handles.

10        THE CHECK INTERPRETER:  Translation dispute.  I just

11   would like to add one more information that Mr. Huang just

12   missed.  Wafer is a kind of raw material of the chips.

13        MR. MARLBOROUGH:  Did the witness say all of these

14   words -- because -- Mr. Translator, did the witness say all

15   the words that she just spoke?

16        THE INTERPRETER:  The witness did not say those words.

17   The witness said waiver or wafer.

18        THE CHECK INTERPRETER:  (Speaks in Chinese.)

19        THE INTERPRETER:  Why don't you say that in English and

20   put it on the record because our court reporter cannot write

21   down what you said.

22        THE CHECK INTERPRETER:  Mr. Huang, why can't we just

23   confer together with the witness.  The witness cannot speak

24   English so we can talk with him in Chinese to make sure that

25   he makes [unintelligible].

1          THE INTERPRETER:  By the rules, if we do that we have

2     to do that off the record.  I don't mind talking to you off

3     the record but we are on the record at the moment so we have

4     to stay by the rule, right?

5          THE CHECK INTERPRETER:  Yeah.

6          THE INTERPRETER:  Once we stop recording -- once the

7     court reporter stops taking down what is said I can talk to

8     you in casual conversations but at this moment I can't.

9     Sorry.

10          MR. LAZATIN:  Ms. Kong, can you just state what the

11     wrong term is, see if Mr. Huang agrees and let's proceed,

12     okay?

13          THE CHECK INTERPRETER:  Okay.

14          MR. LAZATIN:  What was the incorrectly translated term?

15          THE CHECK INTERPRETER:  Mr. Huang, I think you

16     mentioned the -- it is not the operation and the maintenance

17     relating to the chip but it is the supply and the purchase

18     work of the raw material of the chips which is wafer.  That

19     is the only part.

20  BY MR. MARLBOROUGH:

21     Q.   Do you know any of the board members of Bitmain Hong

22  Kong?

23          MR. LAZATIN:  Mr. Huang was in the middle of deciding

24     whether he agreed or disagreed with the translation

25     correction.

Atkinson Baker, a Veritext Company
www.depo.com

```
 1      or permits but we can proceed.
 2           THE WITNESS:  So, I am allowed to answer the question,
 3      am I?
 4           MR. MARLBOROUGH:  Yes -- I am sorry.  That is his
 5      lawyer's job to say that.  Carlos, is he allowed to answer
 6      the question?
 7           MR. LAZATIN:  Yes.
 8           THE WITNESS:  As I testified previously it was Max who
 9      was the person in charge of legal affairs of Hong Kong, He
10      asked me if I would like to attend this deposition and I
11      agreed to that and I understand that to be the
12      authorization.
13 BY MR. MARLBOROUGH:
14      Q.   Is Max associated with Beijing Bitmain?
15           MR. LAZATIN:  Objection, vague.
16           THE WITNESS:  What do you mean by, associated?  In what
17      respect do you mean?
18 BY MR. MARLBOROUGH:
19      Q.   Does he work for Beijing Bitmain?
20      A.   He is the person in charge of legal affairs in Hong
21 Kong and currently he is also the CFO of our Bitmain group.
22      Q.   So he is the CFO of what Bitmain group?
23      A.   He is the CFO of our Bitmain headquarters located in
24 Haidian.
25           THE CHECK INTERPRETER:  I would like to make a
```

```
 1        correction here.  This group should be translated as Bitmain
 2        Cayman parenting company, not parent holder.
 3  BY MR. MARLBOROUGH:
 4        Q.   Is he in charge of legal affairs for Beijing Bitmain?
 5        A.   No.
 6        Q.   Is he in charge of legal affairs for Bitmain Hong Kong?
 7        A.   Yes.
 8        Q.   And he is in charge of legal affairs for the Beijing --
 9  Bitmain holding company; is that correct?
10        A.   Counsel, are you asking if he is also in charge of the
11  legal affairs of Bitmain Beijing holding?
12        Q.   That was the latest question.
13             MR. LAZATIN:  I am going to object to the terminology
14        as vague and ambiguous.
15             THE WITNESS:  I can answer you by saying that he is in
16        charge of the legal matters in Hong Kong Bitmain.
17  BY MR. MARLBOROUGH:
18        Q.   For Bitmain Hong Kong, right.  I am asking you about
19  Bitmain holding company?
20             MR. LAZATIN:  Objection, vague.
21             THE WITNESS:  No, he is not.
22  BY MR. MARLBOROUGH:
23        Q.   Is he chief financial officer of any other Bitmain
24  entities other than Bitmain Hong Kong?
25        A.   I just said that he is the CFO of our Cayman company.
```

1      Q.    Is the Cayman company Bitmain's holding company?

2           MR. LAZATIN:  Objection.  Vague, legal conclusion.

3           THE WITNESS:  The relationships among these companies

4      you may check that out.  We call it Cayman Bitmain but as to

5      whether it is a holding company or not, all you have to do

6      is to check that out online.

7  BY MR. MARLBOROUGH:

8      Q.    And you do not know the answer to that yourself; is

9  that correct?

10          MR. LAZATIN:  Objection.  Vague and ambiguous,

11     argumentative.

12          THE WITNESS:  It goes like this, Cayman Bitmain is the

13     headquarters of our Bitmain -- let me take that back.

14          Cayman Bitmain is the headquarters of the holding

15     company of our Bitmain companies.

16          THE CHECK INTERPRETER:  Correction.  I think it would

17     be better if we just translate Cayman Bitmain is the holding

18     company of the Bitmain companies in China.

19  BY MR. MARLBOROUGH:

20     Q.    I am going to ask you to look at Mr. Starr's video.  He

21  is going to put on the screen what we have previously marked as

22  Exhibit 2.

23     (Documents referred to were marked for identification as

24                Plaintiff's Exhibit 2.)

25          MR. STARR:  Can everyone see my screen?

1        MR. LAZATIN:  Give me one second.

2        THE VIDEOGRAPHER:  Counsel, did you want to go off the

3    record?

4        MR. MARLBOROUGH:  Yes.  Let's go off the record.

5        THE VIDEOGRAPHER:  We are now going off the record.

6    The time is approximately 8:00 PM and the end of File Number

7    2.

8              (Off the record at 8:09 PM.)

9               (On the record at 8:14 PM.)

10       THE VIDEOGRAPHER:  We are now going back on the record.

11   The time is approximately 8:14 PM.  The beginning of File

12   Number 3.

13       Counsel, please proceed.

14       MR. MARLBOROUGH:  I just want to confirm Mr. Lazatin is

15   back.  Carlos, are you here?

16       We are going to go off the record again.  Yes, let's

17   just go off the record again.

18       THE VIDEOGRAPHER:  We are now going off the record.

19   The time is approximately 8:14 and the end of File Number 3.

20              (Off the record at 8:14 PM.)

21               (On the record at 8:17 PM.)

22       THE VIDEOGRAPHER:  We are now going back on the record.

23   That time is approximately 8:17.  The beginning of File

24   Number 4.

25       Counsel, you may, please, proceed.

Atkinson Baker, a Veritext Company
www.depo.com

1 BY MR. MARLBOROUGH:

2     Q.   Do you know if Bitmain Singapore has ever received

3 revenue from the sale of Bitmain devices, Antminer devices in the

4 United States?

5          MR LAZATIN:   Objection.   Lacks foundation, calls for

6     speculation.

7          THE WITNESS:   I do not know that.

8 BY MR. MARLBOROUGH:

9     Q.   Do you know if Bitmain Hong Kong has ever received

10 revenue from the sale of ASIC devices in the United States?

11          THE WITNESS:   To my knowledge sometimes to enter into

12     contracts with overseas clients Bitmain Hong Kong is used.

13          THE CHECK INTERPRETER:   Correction.   I think maybe we

14     can just translate, I know previously Bitmain Hong Kong used

15     to be an entity who signed overseas sales contracts with our

16     clients.

17 BY MR. MARLBOROUGH:

18     Q.   Has Bitmain Singapore ever signed overseas contracts

19 with companies in the United States for the sale of Bitmain ASIC

20 devices?

21     A.   I don't know.

22     Q.   Did you say that Bitmain Hong Kong in the past received

23 revenue from contracts with companies in the United States for

24 the sale of Bitmain ASIC devices?

25          MR. LAZATIN:   Objection.   Asked and answered.

1           THE WITNESS:  As I said, the Hong Kong company is the
2       main body that enters into contracts with overseas clientele
3       for the purchase of the equipment.  I believe the funds by
4       the overseas clientele have been made to the Hong Kong
5       company although I have not personally seen the money
6       flowing to Bitmain Hong Kong but I believe that has
7       happened.
8  BY MR. MARLBOROUGH:
9       Q.   Do you believe that money from the sale of ASIC devices
10 in the United States is paid directly to Beijing Bitmain
11 Technologies?
12      A.   No.  I do not believe so.
13      Q.   Do you know a company named Bitdeer?
14           THE INTERPRETER:  Counsel, can you repeat the question,
15      please.
16           MR. MARLBOROUGH:  Do you know a company named Bitdeer,
17      B-I-T-D-E-E-R.
18           MR. LAZATIN:  Objection.  Outside the scope,
19      foundation.
20           THE WITNESS:  Bitdeer, I have heard about it.
21 BY MR. MARLBOROUGH:
22      Q.   Is it a company that is part of the Bitmain family of
23 companies?
24           MR. LAZATIN:  Objection.  Vague, ambiguous,
25      speculation.

```
 1          THE WITNESS:  Let me tell you what I know about it.
 2      Bitdeer used to be our Bitmain company's project.  It was
 3      not an independent entity.  Later on it got spun off of
 4      Bitmain and became an independent company and that no longer
 5      has any connections to us.
 6 BY MR. MARLBOROUGH:
 7      Q.   What does Bitdeer do?
 8      A.   Let me stand corrected.  Maybe I commited an error in
 9 my previous testimony.
10      Before Bitdeer left Bitmain, whether it was a project or
11 whether it was one of the companies, I do not know that for sure.
12 What I am pretty positive about is that after it divorced from
13 Bitmain it has become an independent company.
14      Q.   Thank you for the clarification.  What does Bitdeer do?
15      A.   Bitdeer is a mining platform.
16          THE CHECK INTERPRETER:  Bitdeer is a platform for
17      [unintelligible].
18 BY MR. MARLBOROUGH:
19      Q.   Are you familiar with the term NCSA?
20      A.   NCSA, what do you mean?
21      Q.   Are you familiar with the phrase North Central South
22 America in relation to Bitmain Hong Kong?
23          MR. LAZATIN:  Objection.  Vague, lacks foundation.
24          THE WITNESS:  I don't know what you're talking about.
25      I don't know what relationship you are talking about.
```

Atkinson Baker, a Veritext Company
www.depo.com

1 BY MR. MARLBOROUGH:

2    Q.  Do you know if the sales regions relating to the sale

3 of Bitmain Antminer devices are broken up by geographical region?

4       MR. LAZATIN:  Objection.  Vague, ambiguous.

5       THE WITNESS:  Are you talking about the revenue of

6      sales being broken up or different personnel being in charge

7      of different regions?

8 BY MR. MARLBOROUGH:

9    Q.  Different personnel being in charge of different

10 regions?

11    A.  The normal case is that different regions are handled

12 by different people, however, sales in different regions happen

13 to be intertwined with one another.  For instance, salespeople in

14 charge of China may get to know clients who are interested in

15 purchasing the equipment in Russia or Central Asian areas.  So

16 these people who are in charge of China may also make sales to

17 those peoples in those regions.  So the regions are not very

18 strictly divided.

19    Q.  Do the salespeople who handle sales in the United

20 States work for Bitmain Hong Kong?

21       MR. LAZATIN:  Objection, vague.

22       THE INTERPRETER:  Counsel, can I ask the witness to

23      repeat his answer because his answer was cut off in the

24      middle?

25       MR. MARLBOROUGH:  Yes.

Atkinson Baker, a Veritext Company
www.depo.com

1              THE WITNESS:  The sales employees are the employees of

2        Bitmain Beijing.

3 BY MR. MARLBOROUGH:

4        Q.   And if they sell Bitmain Antminer devices that money

5 goes to Bitmain Hong Kong; correct?

6        A.   Like I previously testified to, I have not seen the

7 flow routes of the funds but I feel or I believe that the sales

8 revenue should be wired to Hong Kong if the contract is executed

9 by Hong Kong.

10        Q.   And a salesperson for a contract like that would

11 usually be a Beijing Bitmain employee?

12              MR. LAZATIN:  Objection.  Vague, incomplete

13        hypothetical.

14              THE WITNESS:  As I said previously, the employees

15        handling the sales are the employees of Bitmain Beijing.

16 BY MR. MARLBOROUGH:

17        Q.   Does Bitmain Hong Kong share employees with Bitmain

18 Beijing?

19        A.   No.

20        Q.   Does Bitmain Hong Kong share executives with Bitmain

21 Beijing?

22              MR. LAZATIN:  Objection, vague.

23              THE WITNESS:  Most of these two companies have their

24        own management personnel.

25 BY MR. MARLBOROUGH:

1     Q.   Is there any overlap with management personnel between

2 the two companies?

3          MR. LAZATIN:  Objection.  Asked and answered.

4          THE WITNESS:  The founder of our company, Mr.

5          Wu Jihan used to be on the board of both Bitmain

6     Beijing and Bitmain Hong Kong but other than Mr. Wu there

7     are other board members on the board of Bitmain Beijing such

8     as Ge Yue Sheng, Zhou Feng, these people do not overlap with

9     the management personnel in Hong Kong, if you know what I am

10    talking about.

11 BY MR. MARLBOROUGH:

12    Q.   Is Jihan Wu the only board member that is overlapped

13 between Bitmain Hong Kong and Beijing Bitmain?

14         MR. LAZATIN:  Objection.  Asked and answered.

15         THE WITNESS:  Before you ask this question, counsel,

16    would you please clarify the timeframe you refer to?

17 BY MR. MARLBOROUGH:

18    Q.   At any time since September of 2015?

19    A.   If you are talking about anytime since 2015 September I

20 will tell you that in 2018 Mr. Wu Jihan served on both the boards

21 of Beijing as well as the board of Hong Kong, however, there were

22 other members of the board of Beijing.  For instance, the

23 chairman of the board Mr. Zhan Ke Tuan and there was other board

24 members.  I think I mentioned Zhou Feng and Ge Yue Sheng.  This

25 Zhou Feng and Ge Yue Sheng that I referenced are not on the board

Atkinson Baker, a Veritext Company
www.depo.com

1 | of Hong Kong.

2 |        THE COURT REPORTER:  Would you provide the spellings

3 |    when you get to them, please?

4 |        THE INTERPRETER:  Yes.  The first is Z-H-O-U, F-E-N-G.

5 |    The second is G-E, Y-U-E, S-H-E-N-G.

6 | BY MR. MARLBOROUGH:

7 |    Q.   Do you know Luyao Liu (phonetic)?

8 |    A.   Yes, I do.

9 |    Q.   Was he an executive of Bitmain Hong Kong?

10 |    A.   Yes.  Mr. Luyao Liu used to be a director of the

11 | investment department of Bitmain Hong Kong.

12 |    Q.   When you say director do you mean a member of the board

13 | of directors.

14 |        MR. LAZATIN:  Objection.  Misstates testimony.

15 |        THE WITNESS: No.  He was the chief of that investment

16 |    and the financing department.

17 | BY MR. MARLBOROUGH:

18 |    Q.   Was Luyao Liu also an executive of Beijing Bitmain?

19 |    A.   No.

20 |    Q.   Was Luyao Liu also an executive of the holding company?

21 |        MR. LAZATIN:  Objection, vague.

22 |        THE WITNESS:  The holding company that you referenced,

23 |    are you talking about the Cayman company?

24 |        MR. MARLBOROUGH:  Yes.

25 |        THE WITNESS:  To my knowledge Luyao Liu used to be a

1    member of the board of the Cayman company.

2 BY MR. MARLBOROUGH:

3    Q.   What involvement, if any, does Bitmain Hong Kong have

4 with the Bitmain website?

5        THE INTERPRETER:  Counsel, did you say Bitmain Webtop?

6        MR. MARLBOROUGH:  I will clarify -- yes.  The Bitmain

7    website?

8        THE WITNESS:  Which website do you refer to?

9 BY MR. MARLBOROUGH:

10   Q.   Bitmain.com.

11   A.   Bitmain.com is a website maintained and operated by the

12 employees of Bitmain Beijing.

13   Q.   Can someone go to the Bitmain.com website and order an

14 ASIC Antminer device from Bitmain Hong Kong?

15       MR. LAZATIN:  Objection.  Vague, assumes facts.

16       THE WITNESS:  There is no order that is made on this

17    website which goes to Hong Kong.

18       THE CHECK INTERPRETER:  I think the translation should

19    be I myself have never made such an order directly to Hong

20    Kong from this website.

21       THE INTERPRETER:  Let me clarify that with the witness.

22       THE WITNESS:  Are you asking me if an order made on the

23    Bitmain website would go to Hong Kong Bitmain; right?

24 BY MR. MARLBOROUGH:

25   Q.   If the order goes to Hong Kong Bitmain; correct?

Atkinson Baker, a Veritext Company
www.depo.com

1    A.   Well, first of all I want to say, no.  And I have no

2  experience in which I place an order online and the order is

3  going to Hong Kong.

4    Q.   Where did the orders go?

5         MR. LAZATIN:  Objection, vague.

6         THE WITNESS:  When you try to place an order on

7    Bitmain.com you will see online where the order is directed

8    to.

9  BY MR. MARLBOROUGH:

10   Q.   And where is that?

11        MR. LAZATIN:  Objection.  Vague and ambiguous.

12        THE WITNESS:  Counsel, the question is indeed vague and

13   ambiguous.  We previously talked about different regions.

14   So in different regions there are different recipient bodies

15   so I do not know how to answer your question.

16  BY MR. MARLBOROUGH:

17   Q.   Did you take the advice of your lawyer by using the

18  term vague and ambiguous in response to my question after your

19  lawyer objected on the basis of vague and ambiguous?

20        MR. LAZATIN:  Excuse me.  Objection.  The question is

21   argumentative and will you please not raise your voice to

22   the witness.  It is rude.  It is totally improper.

23        THE WITNESS:  Counsel, your question as to whether I

24   took advice from my attorney, the answer is, no, because

25   your question was indeed very overbroad.

Atkinson Baker, a Veritext Company
www.depo.com

1          MR. MARLBOROUGH:  I insist that Mr. Lazatin stop

2      coaching the witness.

3          MR. LAZATIN:  I am not coaching the witness.

4          MR. MARLBOROUGH:  By making more objections than are

5      necessary to protect the record.  You can object on the

6      basis of form.

7          MR. LAZATIN:  I am going to again object to commentary

8      of counsel as to the nature of my objections.  They are

9      entirely proper under Rule 30 which calls for a short brief

10      statement on the grounds for the objection and that is

11      exactly what I have done.

12 BY MR. MARLBOROUGH:

13      Q.   On what website are orders placed for customers to

14 order Bitmain devices in the United States?

15      A.   www.bitmain.com.

16      Q.   What company receives those orders?

17      A.   So the question is if an order is placed online by a

18 client, who receives the order.

19      To my knowledge once an order is placed online Bitmain

20 Beijing receives this order and in turn Bitmain Beijing will

21 instruct the production company to make the shipment.

22      Q.   And who receives the revenue from that order?

23      A.   Like I previously said, I have not seen in which

24 account the client deposits the payment.  So I am not able to

25 tell you that.

1      Q.    How does Bitmain Hong Kong make its money?

2           MR. LAZATIN:  Object as lacking foundation, beyond the

3      scope of the deposition.

4           THE WITNESS:  By asking how Bitmain Hong Kong makes

5      money, are you asking me how Bitmain Hong Kong generates

6      revenue?

7           MR. MARLBOROUGH:  Correct.

8           THE WITNESS:  I don't quite know from where it receives

9      revenue.

10 BY MR. MARLBOROUGH:

11      Q.    And it could be from website orders?

12      A.    I have already told you that I have not seen which

13 client made a payment to it.  So I am not able to speculate on

14 that, if you know what I am talking about.

15      Q.    What company ships out Antminers in response to an

16 order on the Bitmain website?

17      A.    It is by a company or a subsidiary company under our

18 Bitmain which is called Shenzhen (phonetic) Intelligence Cloud

19 Core.

20      Q.    What company handles repairs for the service of Bitmain

21 devices in the United States?

22      A.    That is determined by the clients.  Whichever company

23 that the client chooses to go is up to the client.

24      Q.    Who provides the repair centers for Antminer devices in

25 the United States?

1          MR. LAZATIN:  Objection, assumes facts.

2          THE WITNESS:  I previously said that was not much

3     subject to our decision.  It is subject to the decision of

4     the clients.  Whichever company that the clients prefer to

5     go to, they may go there.

6 BY MR. MARLBOROUGH:

7     Q.   Are you familiar with any Bitmain repair centers?

8          MR. LAZATIN:  Objection, vague.

9          THE WITNESS:  Bitmain, there are no repair companies

10    for Bitmain in the United States.  The repair companies are

11    owned by Bitmain.

12 BY MR. MARLBOROUGH:

13    Q.   Does Bitmain provide information about Bitmain repair

14 centers on its website?

15         MR. LAZATIN:  Objection.  Outside the scope and lacks

16    foundation.

17         THE WITNESS:  Counsel, have you seen it from somewhere?

18         MR. MARLBOROUGH:  I am sorry.  You are not the person

19    to be asking questions.  I am asking you the questions.

20         THE WITNESS:  Please why don't you translate for me.

21    What I meant to say counsel is that if, Counsel, has seen it

22    somewhere I would like him to show me that so that I can

23    answer his question pointedly.  But without that, I don't

24    know how to answer such a generalized and overbroad

25    question.

Atkinson Baker, a Veritext Company
www.depo.com

1          THE INTERPRETER:  Yes.  (Speaks in Mandarin.)

2          THE WITNESS:  Could you please tell counsel,

3     Mr. Interpreter, that I am not refusing to answer his

4     question.  I have answered every question he has asked me,

5     however, as I said, I am looking at an isolated description

6     over here.  The identity of this company cannot be

7     ascertained.

8          MR. MARLBOROUGH:  Let's move on to page 5.

9  BY MR. MARLBOROUGH:

10     Q.   The screen with green walls, do you recognize this

11 office?

12     A.   No, I don't.

13          MR. MARLBOROUGH:  Let's go to the second part of that

14     page.

15 BY MR. MARLBOROUGH:

16     Q.   Do you recognize that address?

17          THE WITNESS:  Would you, please, translate that to me?

18          THE INTERPRETER:  Yes, I will.

19          THE WITNESS:  What do you mean by whether I recognize

20     it or not?

21 BY MR. MARLBOROUGH:

22     Q.   Have you seen that address before?

23     A.   First of all let me tell you this, I have not been to

24 this address.  I have not seen this address but I do know that we

25 have a company located in San Jose, United States.

1    Q.   Do any employees of any of the Bitmain entities -- I am
2 going to strike that question.
3    Which company operates from an office in San Jose?
4    A.   I know that Bitmain, Inc.. which has been incorporated
5 in San Jose is operating there.
6    Q.   Did you know that before you prepared for this
7 deposition?
8    A.   Yes.
9    Q.   Do you recognize the email address?
10    A.   I know this email account.  I know that this email
11 account is for the group of sales reps in the United States or in
12 North American regions.
13    Q.   Who do they work for?
14    MR. LAZATIN:  Objection, outside the scope.
15    THE WITNESS:  I already talked about that.  These sales
16    representatives are the employees of Bitmain Beijing.
17 BY MR. MARLBOROUGH:
18    Q.   Previously you told me that you did not know what NCSA
19 was; isn't that correct?
20    A.   I meant to tell you that in certain specific contexts
21 like this one, this is an email account.  It says sales NCSA.  In
22 this context I do recognize it but when you just single out four
23 alphabets NCSA to me I do not know what that refers to.
24    MR. MARLBOROUGH:  Okay.  I'm going to ask Manny to put
25    up the exhibit with the purchase order.

Atkinson Baker, a Veritext Company
www.depo.com

1           MR. STARR:  (Complied.)

2  BY MR. MARLBOROUGH:

3      Q.  Do you recognize this document?

4           MR. LAZATIN:  Sorry.  Objection.  Lacks foundation and

5      I object to any questioning about this document which is

6      entirely in English without a Chinese translation being

7      provided.

8           THE WITNESS:  Counsel, the question to your question

9      is, no.  I do not recognize it.

10 BY MR. MARLBOROUGH:

11     Q.  Do orders from the Bitmain website result in the

12 production of commercial invoices?

13          MR. LAZATIN:  Objection.  Vague, foundation.

14          THE WITNESS:  I cannot tell.

15 BY MR. MARLBOROUGH:

16     Q.  What is the entity listed on the company stamp?

17          MR. LAZATIN:  Objection.  Lacks foundation, calls for

18     speculation and the document speaks for itself.

19          THE WITNESS:  So the question asks me what the seal is.

20     First of all, I do not know where this document comes from

21     and I cannot tell by looking at this document which company

22     this seal represents.

23 BY MR. MARLBOROUGH:

24     Q.  Do you have reason to believe that it is a company

25 other than Bitmain Hong Kong?

Atkinson Baker, a Veritext Company
www.depo.com

1  Kong in 2015.

2      Q.   2016?

3      A.   I do not know about 2016 either.

4      Q.   2017?

5      A.   I do not know about 2017 because I did not join the

6  company yet at that time.

7      Q.   When did you join the company?

8           MR. LAZATIN:  Objection, asked and answered.

9           THE WITNESS:  I answered this question, counsel, in the

10      morning session.  I joined Bitmain in 2018.

11  BY MR. MARLBOROUGH:

12      Q.   My understanding is that you testified that you have

13  never been an employee of Bitmain Hong Kong; is that correct?

14      A.   Correct.

15      Q.   So when you say you joined the company, you have never

16  joined the company Bitmain Hong Kong, which is the question I

17  asked about the number of employees; is that correct?

18      A.   Objection.  Misleading, mistakes his testimony.

19           THE WITNESS:  Well, please make sure to translate

20      thoroughly what I am about to say so that there is not going

21      to be any misunderstanding.

22           In the morning session I said that I joined Bitmain

23      Beijing in 2018 and then counsel asked me the number of

24      employees in Bitmain Hong Kong in 2017 and I said I don't

25      know because back then I did not join Bitmain yet.  So

```
 1      counsel should not confuse the two with each other.
 2 BY MR. MARLBOROUGH:
 3      Q.   In 2018 how many employees did Bitmain Hong Kong have?
 4      A.   For the year of 2018 to my knowledge there were
 5 supposed to be about 30 employees.
 6           THE CHECK INTERPRETER:  Correction.  Maybe you should
 7      be -- it would be more accurate to say more than 30
 8      employees in 2018.
 9 BY MR. MARLBOROUGH:
10      Q.   2019 there were 30 employees or 2018 there were 30
11 employees?
12      A.   You asked me about 2018 so my answer was in response to
13 2018.
14 BY MR. MARLBOROUGH:
15      Q.   How many Bitmain employees were there in 2019?  Let me
16 clarify.  How many Bitmain HK employees were there in 2019?
17      A.   Seems that back in 2019 there were 20-plus employees.
18      Q.   How many Bitmain HK employees were there in 2020?
19      A.   I believe there were around 10 in 2020.
20      Q.   How many Bitmain HK employees were there in 2021?
21      A.    In the year of 2021 the employees in Hong Kong that I
22 know are two.
23      Q.   How many Bitmain HK employees were there outside of
24 Hong Kong in 2021?
25      A.   Does that comprise or does that cover the people on
```

Atkinson Baker, a Veritext Company
www.depo.com

1 business trips?  What do you mean by outside of Hong Kong?

2     Q.   You said that there were two employees that you know of

3 in 2021 in Hong Kong.

4     A.   Yes.

5     Q.   Are you saying at Bitmain Hong Kong -- at Bitmain Hong

6 Kong?

7     A.   Yes.

8     Q.   What did these two employees do for Bitmain Hong Kong?

9     A.   One is working on legal matters while the other one is

10 working on investment and the financing related matters.

11     Let me supplement my answer.  The employee who is working on

12 legal matters may also engage in some other job responsibilities

13 such as communication with TSMC of the wafer, purchasing matters.

14     Q.   Is that Max who you referred to earlier in this

15 deposition?

16     A.   That is correct.  A Max is the individual that is in

17 charge of the legal affairs in Hong Kong, yes.

18          THE INTERPRETER:  Counsel, just a moment please.  This

19     is from the interpreter to the court reporter.  TSMC, I

20     wonder if you got that?

21          THE COURT REPORTER:  Yes, sir.

22          THE INTERPRETER:  Okay.  TSMC, thank you.  Okay, go.

23 BY MR. MARLBOROUGH:

24     Q.   How many employees does Beijing Bitmain have currently?

25     A.   Are we talking about this very moment in 2021?

Atkinson Baker, a Veritext Company
www.depo.com

1      Q.   Yes.

2      A.   Well, I do not know an exact number but I will say at

3  least four to five hundred or five to six hundred employees.

4      Q.   How many of them work in the United States?

5           MR. LAZATIN:  Objection.  Vague and ambiguous, assumes

6      facts.

7           THE WITNESS:  Counsel, do you mean the people who

8      travel to the United States on business or else?  What do

9      you mean by the people working in the United States?

10 BY MR. MARLBOROUGH:

11     Q.   How many people travel to the United States on business

12 would be the first question.

13          MR. LAZATIN:  Objection.  Lacks foundation.

14          THE WITNESS:  For this year at this moment the ones who

15     are in the United States on business should be five or six.

16 BY MR. MARLBOROUGH:

17     Q.   How many work in the United States all the time?

18          MR. LAZATIN:  Objection.  Lacks foundation, assumes

19     facts.

20          THE WITNESS:  Counsel, would you please define how long

21     is all the time?

22 BY MR. MARLBOROUGH:

23     Q.   How many people, if any, are stationed to work in the

24 United States on a regular basis?

25          MR. LAZATIN:  Objection.  Assumes facts, lacks

Atkinson Baker, a Veritext Company
www.depo.com

1    foundation.

2         THE WITNESS:  By saying stationed do you mean that they

3    work, live, all year-round in the United States?

4  BY MR. MARLBOROUGH:

5    Q.    They work in the United States more than six months a

6  year?

7    A.    I don't believe there is any.  I don't believe anybody

8  works for that long a period of time over there.

9    Let me put it this way, I have not seen anyone who has

10 worked on business matters in the United States for so long.

11   Q.    Do Beijing Bitmain employees who travel to the United

12 States use the San Jose office of Bitmain, Inc. to perform their

13 work?

14        MR. LAZATIN:  Objection.  Foundation, speculation.

15        THE WITNESS:  When they travel to the United States on

16   business it is possible that they use that office in San

17   Jose depending on their job duties.  It is also possible

18   that they do not go to that office to work but that is

19   dependent upon the job duties that they perform over there.

20   Q.    How many Beijing Bitmain employees work in the United

21 States in 2018?

22        MR. LAZATIN:  Objection.  Asked and answered and

23   assumes facts.

24        THE WITNESS:  Well, in terms of computation of how many

25   people, counsel, that is subject to how you define the

1     people who travel to the United States.  For instance,

2     during a one-year period of time, which is quite a lengthy

3     period of time, people may go to the United States for one

4     trip, return back and then go there again.  So it is up to

5     how you define that number of people or the number of trips

6     and I have not done math on that subject so I am not able to

7     provide you the statistics.

8  BY MR. MARLBOROUGH:

9     Q.   You know someone named Peng Li (phonetic)?

10    A.   No, I don't.

11      THE CHECK INTERPRETER:  The answer is I do not know a

12    person who is named Li Peng (phonetic).

13  BY MR. MARLBOROUGH:

14    Q.   Do you know anyone at Bitmain named Peng?

15    A.   Peng, how do you spell that?

16    Q.   P-E-N-G.  Any current or former employee named Peng?

17    A.   Counsel, could you, please, show me how the character

18 is written?

19      MR. MARLBOROUGH:  Let's pull up Exhibit 6.

20      MR. STARR:  (Complied.)

21  BY MR. MARLBOROUGH:

22    Q.   Do you know this person?

23 (Picture referred to was previously marked as Plaintiff's Exhibit

24              6 for identification.)

25    A.   Yes.  I know this individual but his name is Li Peng

Atkinson Baker, a Veritext Company
www.depo.com

1 BY MR. MARLBOROUGH:

2     Q.   Sure.  Do you see right above that yellow line?  Do you

3 see the word San Jose?

4     A.   Who puts the words in there or what?  How come there is

5 San Jose on it?

6     Q.   I am asking you if she worked in the San Jose office?

7          MR. LAZATIN:  Objection.  Lacks foundation and it has

8     been asked and answered.

9          THE WITNESS:  When she travels to the United States on

10     business maybe she goes to that office in San Jose, maybe

11     she does not go there.

12 BY MR. MARLBOROUGH:

13     Q.   Do you have any idea why Bitmain employees would

14 numerous times represent that they work in San Jose?

15          THE INTERPRETER:  Counsel, can you repeat the question,

16     please?  Your audio cut out.

17 BY MR. MARLBOROUGH:

18     Q.   Do you know why Bitmain Beijing employees -- multiple

19 Bitmain Beijing employees would represent that they work in the

20 San Jose office?

21          MR. LAZATIN:   Objection.  Lacks foundation, calls for

22     speculation and assumes facts.

23          THE WITNESS:  I don't.  In addition to that counsel

24     just stated that multiple employees of Bitmain Beijing claim

25     that they worked out of the San Jose office.  How do they

Atkinson Baker, a Veritext Company
www.depo.com

1    claim that they work out of the San Jose office?

2  BY MR. MARLBOROUGH:

3    Q.   Did you not see that Peng Li profile that indicated

4  that he worked in San Jose?

5         MR. LAZATIN:  Objection.  Misleading, misstates the

6      document.

7         THE WITNESS:  The word San Jose does appear on this

8      webpage but that does not necessarily mean that he works out

9      of that office.  When he is on a business trip then maybe he

10      stops by that office.

11         MR. MARLBOROUGH:  Let's look at Exhibit 5.

12  (Documents referred to were previously marked for identification

13              as Plaintiff's Exhibit 5.)

14  BY MR. MARLBOROUGH:

15    Q.   Does Bitmain hire sales specialists in the United

16  States?  And I am referring to any Bitmain entity who hires sales

17  specialists in the United States.

18         MR. LAZATIN:  Objection.  Lacks foundation,

19      speculation.

20         THE WITNESS:  I don't know if hiring is conducted in

21      the United States.

22  BY MR. MARLBOROUGH:

23    Q.   Are people hired to work in the United States by any of

24  the Bitmain entities other than Bitmain Inc..?

25         MR. LAZATIN:  Objection.  Lacks foundation, calls for

1    speculation.

2         THE WITNESS:  Not responsible for sales.  I don't know

3    info related to that.

4         MR. MARLBOROUGH:  Can you scroll down, Manny?

5         MR. STARR:  (Complied.)

6         MR. MARLBOROUGH:  I am going to ask you to translate

7    the line where it says job location San Jose, CA.

8         THE INTERPRETER:  (Complied.)

9         MR. MARLBOROUGH:  Manny, can you also highlight Nicole

10   Liu.

11        MR. STARR:  (Complied.)

12        MR. LAZATIN:  I am going to object again to the

13   presentation and questioning on this English-language

14   document.  It is a dense document entirely in English and I

15   object on that ground.

16        THE WITNESS:  Mr. Translator, would you please

17   paraphrase what this document says to me?

18   BY MR. MARLBOROUGH:

19   Q.   I will paraphrase it.  This is a job posting

20   purportedly from Bitmain Technologies Limited seeking to employ

21   people at the job location in San Jose, California and the person

22   who is supposed to receive resumes is Nicole Liu at Bitmain.com.

23        MR. LAZATIN:  I am going to object.  There was no

24   question in that speech but I'm going to object to counsel

25   testifying about the contents of this document and about the

1     facts, none of which has been established.

2         MR. MARLBOROUGH:  He requested that it be paraphrased

3     which I did.

4  BY MR. MARLBOROUGH:

5     Q.   Do you know who Nicole Liu is?

6         MR. LAZATIN:  Just a minute.  To the extent you are

7     saying you paraphrased a very long dense English document

8     with that one sentence of your commentary, I object to that

9     as completely inaccurate and inappropriate and --

10        MR. MARLBOROUGH:  At the request of the witness.

11        MR. LAZATIN:  He asked [audio distortion] the document.

12    I do not think you communicated one percent of what this

13    document says in your so called paraphrasing.  That is what

14    I am objecting to.

15        MR. MARLBOROUGH:  I think your speaking objection is

16    inappropriate.  Your objection is noted for the record.

17 BY MR. MARLBOROUGH:

18    Q.   Who is Nicole Liu?

19        MR. LAZATIN:  Objection.  Lacks foundation, calls for

20    speculation.

21        THE WITNESS:  I do not know this individual and I do

22    not know this email account.

23        MR. MARLBOROUGH:  Can you scroll down further, please?

24        MR. STARR:  (Complied.)

25        MR. MARLBOROUGH:  Can you translate the, about us

1          THE WITNESS:  This website in here is not specified as

2     to which specific website.

3          MR. MARLBOROUGH:  Let's go to paragraph 1.

4  BY MR. MARLBOROUGH:

5     Q.   Tell me if this clarifies it for you at all.

6          MR. MARLBOROUGH:  If you could translate the first

7     sentence of paragraph 1 including the parenthetical.

8          THE INTERPRETER:  (Complied.)

9  BY MR. MARLBOROUGH:

10     Q.   Sir, there is a question associated with that.

11          MR. MARLBOROUGH:  Can the court reporter read the last

12     question back, please?

13        (The court reporter read back the last question.)

14          MR. LAZATIN:   Objection.  Vague, speculation.

15          THE CHECK INTERPRETER:  Correction.  I would like to

16     make a supplement to what Mr. Huang just translated because

17     he just missed a very small part in the first sentence in

18     what he translated.  He forgot to mention what is inside the

19     bracket.  It should be that, in this context, what is in the

20     bracket Bitmain references to Bitmain Hong Kong.  So if you

21     would allow I can translate this in Chinese, especially this

22     legal part, to the witness.

23          THE INTERPRETER:  Elaborate these based on my personal

24     understanding of the case.  I do it word for word whatever

25     that says.

1          MR. LAZATIN:  Mr. Huang, just so we are clear on the

2      record, you translated paragraph 1 and only paragraph 1

3      because it sounded very long?

4          THE INTERPRETER:  You are right, counsel.

5          MR. LAZATIN:  Thank you.  Understood.

6          THE INTERPRETER:  By the way, the check interpreter

7      says I missed that small part, which is actually true and I

8      noticed because you what -- on my screen that part is mostly

9      covered by our images because our galleries are on this side

10      that covers that [unintelligible].  That is why I missed it,

11      yes.

12  BY MR. MARLBOROUGH:

13      Q.   Do you know what entity operates Bitmain's Facebook

14  page?

15      A.   It is operated by Bitmain Beijing.

16      Q.   Do you know what entity operates Bitmain's Twitter

17  page?

18          MR. LAZATIN:  Objection, vague.

19          THE WITNESS:  It is also operated by Bitmain Beijing.

20  BY MR. MARLBOROUGH:

21      Q.   Do you know whether sales of Bitmain devices in the

22  United States were made by Bitmain Singapore rather than Bitmain

23  Hong Kong from August 1st, 2018 to sometime after that?

24          THE CHECK INTERPRETER:  Correction.  Can I just check

25      with Mr. Chris that the time in your question is actually

1       after August 2018 or after November 2018?

2               MR. MARLBOROUGH:  August.

3               THE CHECK INTERPRETER:  August, okay.

4               THE INTERPRETER:  August.  (Speaks in Mandarin.)

5               MR. LAZATIN:  Objection.  Lacks foundation, speculation

6       and beyond the scope of the authorized deposition.

7               THE WITNESS:  First of all, would you please define the

8       timeframe of August 1st, 2018 through what time?

9  BY MR. MARLBOROUGH:

10      Q.   For any period from August 2018?

11              MR. LAZATIN:  Same objections.

12              THE WITNESS:  I don't know.

13              MR. MARLBOROUGH:  I am going to look at Exhibit 11.

14 BY MR. MARLBOROUGH:

15      Q.   Is this one of the documents that you translated?

16  (Documents referred to were previously marked for identification

17                    as Plaintiff's Exhibit 11.)

18              MR. LAZATIN:  Can we please show the witness the entire

19      document?

20              MR. MARLBOROUGH:  You want us to print it out and email

21      it to you?  Print it out -- do you have printing services

22      there, Carlos?

23              MR. LAZATIN:  No, Chris.  I am saying it is a

24      three-page document.  He may not recognize it just from the

25      cover page.  In fairness to him can we, please, show him the

1  STATE OF GEORGIA

2  COUNTY OF DEKALB

3

   I hereby certify that the foregoing deposition was reported
4
as stated in the caption and the questions and answers thereto
5
were reduced to writing by me; that the foregoing 113 pages
6
represent a true, correct, and complete transcript of the
7
evidence given on September 2nd, 2021 by the witness, Gang Ren,
8
who was first duly sworn by me.
9
   I certify that I am not disqualified for a relationship of
10
interest under O.C.G.A. 9-11-28(c); I am a Georgia Certified
11
Court Reporter here as a representative of Atkinson-Baker, a
12
Veritext Company; I was contacted by Atkinson-Baker, a Veritext
13
Company to provide court reporting services for this deposition;
14
I will not be taking this deposition under any contract that is
15
prohibited by O.C.G.A. 15-14-37(a) and (b) or Article 7.C. of the
16
Rules and Regulations of the Board; and by the attached
17
disclosure form I confirm that Atkinson-Baker, a Veritext Company
18
is not a party to a contract prohibited by O.C.G.A. 15-14-37 or
19
Article 7.C of the Rules and Regulations of the Board.
20
   This 17th day of September,2021,
21

22

23          LaTasha D. Bethel Georgia Certificate #2660

24

25