UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOR GEVORKYAN,<br><br>        Plaintiff,<br><br>    v.<br><br>BITMAIN TECHNOLOGIES LTD.,<br><br>        Defendant. | Case No. 18-cv-07004-JD<br><br>**ORDER RE PERSONAL JURISDICTION** |

      This is a consumer action brought by plaintiff Gor Gevorkyan, a California citizen, against defendant Bitmain Technologies, Ltd. (Bitmain), a Chinese company. Bitmain sells cryptocurrency mining devices known as Application Specific Integrated Circuit (ASIC) devices. Gevorkyan alleges that the ASIC devices he bought from Bitmain were first used by Bitmain to "mine[] cryptocurrency for itself" prior to delivery, and when they were eventually delivered to him, the devices were preconfigured to continue to "deliver Bitcoin to Bitmain rather than the customers who purchase" the ASIC devices. Dkt. No. 32 (Compl.) ¶¶ 1, 62-72. Gevorkyan filed this putative class action for claims under the California Unfair Competition Law, and for unjust enrichment, conversion, and trespass to chattel. *Id.* ¶¶ 81-116.

      Bitmain asked to dismiss the complaint for lack of personal jurisdiction. Dkt. No. 33. After a hearing on the motion, the Court granted Gevorkyan a period of limited jurisdictional discovery. Dkt. No. 44. The discovery period was extended a number of times due to the parties' many disputes and pandemic-related delays. Dkt. Nos. 47-78. Discovery has closed, and the parties have filed two rounds of supplemental briefs on the jurisdictional issue. Dkt. Nos. 63, 66, 83, 84. Dismissal on personal jurisdiction grounds is denied.

Before getting to the jurisdictional question, an observation about Bitmain's briefs is required. Overall, the briefs filed by Bitmain's counsel, O'Melveny & Myers LLP, fell below the standards of professionalism and quality expected of every litigant and counsel in this District. The many instances of this will be called out in the ensuing discussion, but the Court notes at the start that it has serious concerns about O'Melveny & Myers' repeated citations to overruled cases, and legal tests that were expressly disapproved well before it filed its brief. These practices are not consonant with O'Melveny & Myers' duty of candor, and they unduly burdened the Court and opposing counsel with frivolous arguments. Bitmain and its attorneys are advised that future conduct along these lines will be sanctioned, including but not limited to monetary sanctions, defense or evidence preclusion, and professional conduct sanctions. There is no room in our busy and resource-constrained federal courts for parties and lawyers who do not play by the rules and fight fairly on the merits.

## DISCUSSION

### I.   LEGAL STANDARDS

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A district court has discretion to decide the mode of resolving the jurisdictional motion, and when the Court determines that it will receive only written materials, "these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). All factual conflicts in the parties' affidavits are to be resolved in favor of the party asserting jurisdiction, namely the plaintiff. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).

When as here, no federal statute authorizes personal jurisdiction, the Court applies the law of the state in which the Court sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Code Civ. P. § 410.10, is coextensive with the

2

limits of the Constitution's Due Process Clause, so the Court need only ensure that that clause permits the exercise of jurisdiction over defendant. *Schwarzenegger*, 374 F.3d at 800-01.  The Fourteenth Amendment's Due Process Clause requires that "a State's assertion of personal jurisdiction over a nonresident defendant be predicated on 'minimum contacts' between the defendant and the State." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980); *International Shoe Corp. v. Washington*, 326 U.S. 310, 317 (1945)); *see also Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021).

Personal jurisdiction may be general or specific.  *Ford Motor*, 141 S. Ct. at 1024. Gevorkyan's supplemental briefs urge only that the Court has specific personal jurisdiction over Bitmain.  *See* Dkt. No. 63 at 1.  To be subject to specific personal jurisdiction, the defendant must have had contacts with the forum state that "often go by the name 'purposeful availment,'" *i.e.*, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor*, 141 S. Ct. at 1024-25 (citations omitted).  In addition, the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." *Id*. at 1025.  As always, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.

## II. PURPOSEFUL AVAILMENT

Bitmain's sales of ASIC devices in California go a long way toward establishing purposeful availment.  Gevorkyan has proffered evidence that "Bitmain HK generated more than $50,000,000 in revenue from its sale of ASIC devices to customers in California, including Plaintiff, during the relevant time period."  Dkt. No. 62-4 at 3; Dkt. No. 62-9 (Karapetyan Decl., Ex. 2, Bitmain Technologies, Ltd.'s Sales Figures).  Bitmain does not dispute this evidence, and acknowledges that "[t]he evidence shows annual California sales of Bitmain ASIC devices (which can cost thousands of dollars each) ranging from $486,481 in 2016 to $32,657,754 in 2018." Dkt. No. 84 at 6.  These are substantial sums, and even if considered by number of units rather than by revenue totals, it appears Bitmain cumulatively sold well over 66,000 units in the relevant time period.  *See* Dkt. No. 62-9.

3

This evidence establishes purposeful availment. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), defendant Hustler Magazine, Inc.'s contacts with the forum state of New Hampshire "consist[ed] of the sale of some 10 to 15,000 copies of *Hustler* magazine in that State each month." *Id*. at 772. The United States Supreme Court held that "[s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous," and that where Hustler Magazine has "continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id*. at 774, 781. So too, here.

Bitmain's suggestions otherwise are wholly unpersuasive. It says that its California sales should not count for an "express aiming" finding because they were a "small proportion . . . relative to overall global sales." Dkt. No. 84 at 5-6 (noting annual California sales "accounted for a fraction of Bitmain's overall global sales," ranging between "a mere 0.08% in 2019" to "1.09% in 2018"). That may be, but it is entirely irrelevant to the jurisdiction question. Our circuit has expressly rejected that ostensible objection. "As *Keeton* demonstrates, there is no 'small percentage of sales' exception to the purposeful direction principles," and a defendant's "sales to the forum are no less substantial simply because the company sold more products elsewhere." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021).

This obvious flaw in Bitmain's argument illustrates why the Court has serious concerns about its litigation conduct. Bitmain inexplicably cited to the district court opinion in the *Ayla* case, which was reversed by the circuit well over a month before Bitmain filed its brief. *See* Dkt. No. 84 at 6 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 2019 WL 5963149, at *4 (N.D. Cal. Nov. 13, 2019), for proposition that "[c]ompared to total sales, the 'de minimis amount' of California sales does not establish jurisdiction"); *compare to Ayla, LLC*, 11 F.4th at 981 ("Alya Skin's argument that its United States sales are '*de minimis*' and preclude the exercise of jurisdiction therefore fails.").

Bitmain made matters worse by saying that the California sales should not count because Gevorkyan's claims "would be unchanged even if Bitmain HK had not made any other sales [to

4

customers other than Gevorkyan] in California." Dkt. No. 84 at 5.  This is another instance of Bitmain failing to follow current case law, *see Ford Motor*, 141 S. Ct. at 1029, and it is rejected.

Gevorkyan's prima facie evidence bolsters the demonstration of purposeful availment.  Among other facts, Bitmain hosted a YouTube channel with the description, "Beijing-based Bitmain Technologies Ltd.'s official YouTube channel," and the channel included a video which offered a "sneak peek into . . . our office in San Jose, California."  Dkt. No. 37-2 (Marlborough Decl.) ¶ 7 & Ex. 6.  This is consistent with Gevorkyan's statement that Bitmain maintained a sales office in San Jose, California.  *See* Dkt. No. 63 at 5.  Bitmain filed a declaration saying that "Bitmain Technologies, Ltd. does not operate the . . . YouTube page" referenced by Gevorkyan, and the YouTube page is instead "operated by Beijing Bitmain Technology Co., Ltd."  Dkt. No. 38-1 (Liu Declaration) ¶ 12.  But as the Court has previously noted, "[w]hen the Court resolves a Rule 12(b)(2) motion on the papers, as it has the discretion to do, it is not in a position to '"weigh" the affidavits in order to resolve disputed issues,' and without further evidence, there is 'no way to select one set of facts as more credible than the other.'"  *In re Capacitors Antitrust Litigation*, No. 14-cv-03264-JD, 2017 WL 897340, at *3 (N.D. Cal. Mar. 7, 2017) (quoting *Data Disc*, 557 F.2d at 1284-85).  Our circuit has expressly disapproved any framework under which a defendant could "obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials."  *Data Disc*, 557 F.2d at 1285.  For the YouTube page, plaintiff's submitted evidence on its face indicates that the page is hosted by Bitmain Technologies Ltd., the entity at issue here, and it shows a San Jose office for that entity.  Dkt. No. 37-2, Ex. 6.

Bitmain's sales in this District establish personal jurisdiction, which plaintiff's additional evidence underscores.  The Court need not consider the other evidence offered by Gevorkyan, which is subject to some factual disputes that are beyond the scope of the present proceeding.

### III. CLAIMS AND DEFENDANT'S CONTACTS WITH FORUM

The next question is whether Gevorkyan's claims "arise out of relate to" Bitmain's "contacts with the forum."  *Ford Motor*, 141 S. Ct. at 1026 (emphasis omitted).  Once again,

1  Bitmain got the law wrong on the applicable standard, which makes its comment that Gevorkyan
2  "relies on bad law," Dkt. No. 84 at 9, all the more unbecoming.

3  Bitmain repeatedly says that there is a "'but-for' test that requires a 'direct nexus' between
4  the defendant's forum contacts and the plaintiff's cause of action." Dkt. No. 84 at 2. Not so. Our
5  circuit definitively concluded, well over a month before Bitmain filed its brief, that "our
6  precedents permit but do not require a showing of but-for causation to satisfy the nexus
7  requirement. A narrower test is foreclosed by the Supreme Court's recent decision in *Ford Motor*,
8  141 S. Ct. at 1026. In that case, the Supreme Court emphasized that a strict causal relationship is
9  not required." *Ayla, LLC*, 11 F.4th at 983 n.5 (internal citations omitted). Bitmain inexplicably
10 did not mention or discuss theses controlling cases -- *Ayla, LLC*, 11 F.4th at 972, and *Ford Motor*,
11 141 S. Ct. 1017 -- which were decided well before Bitmain filed its last brief here. This omission
12 gives the Court considerable pause about the candor and professionalism of Bitmain's counsel at
13 O'Melveny & Myers.

14 In *Ford Motor*, the Supreme Court rejected Ford's argument that personal jurisdiction
15 exists "only if the company's conduct in the State had given rise to the plaintiff's claims," and the
16 link between the company's in-state conduct and plaintiff's claims is "causal in nature." 141 S.
17 Ct. at 1023, 1026. The Court concluded that "[n]one of our precedents has suggested that only a
18 strict causal relationship between the defendant's in-state activity and the litigation will do." *Id*. at
19 1026. The Court determined that specific personal jurisdiction could properly be exercised over
20 Ford where "resident-plaintiffs allege[d] that they suffered in-state injury because of defective
21 products that Ford extensively promoted, sold, and serviced" in their home states. *Id*. at 1032. In
22 *Keeton*, too, which our circuit cited favorably in *Ayla, LLC*, 11 F.4th at 981, after the *Ford Motor*
23 decision, the Supreme Court held that Hustler Magazine's "regular circulation of magazines in the
24 forum State is sufficient to support an assertion of jurisdiction in a libel action based on the
25 contents of the magazine." *Keeton*, 465 U.S. at 773-74.

26 The same conclusion fully applies here. Bitmain's ASIC sales in California are sufficient
27 to support an assertion of jurisdiction in a consumer action based on those sales activities.
28 Bitmain "determines how and whether its orders are fulfilled," *Ayla, LLC*, 11 F.4th at 982, and

1   here, Bitmain sold to Gevorkyan 20 ASIC devices through its website. Compl. ¶ 62. Bitmain

2   accepted payment, and delivered the products to Gevorkyan, shipping the devices to California.

3   *Id*. ¶¶ 64-65. Gevorkyan alleges that the products were "preconfigured to deliver virtual currency

4   to Bitmain's virtual currency account during the setup procedures as soon as the Products were

5   connected to the power supply and the internet." *Id*. ¶ 68. This means that, as soon as they were

6   plugged in, the devices started using Gevorkyan's electricity that he purchased from California

7   energy companies, and his internet service, provided by his California internet provider. Dkt.

8   No. 37-1 (Gevorkyan Decl.) ¶¶ 8-9; Dkt. No. 63 at 3-4. These are parts of his claims under the

9   Unfair Competition Law, and for unjust enrichment, conversion, and trespass to chattel.

10   Gevorkyan's claims "relate to" Bitmain's contacts with the forum, and there is a sufficient

11   "affiliation between the forum and the underlying controversy, principally, an activity or an

12   occurrence that takes place in the forum State and is therefore subject to the State's regulation."

13   *Ford Motor*, 141 S. Ct. at 1025 (cleaned up). Bitmain "chose to enter the [California] market" and

14   to make regular and significant sales of its ASIC devices here, and it consequently should have

15   reasonably anticipated being haled into a court in this forum to account for its in-state sales

16   activities under California's consumer protection laws. *Keeton*, 465 U.S. at 779-81.

### IV. REASONABLNESS OF EXERCISING JURISDICTION

For the final factor, the burden is on the defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.

Bitmain made almost no effort to meet this standard, making only a passing reference to an alleged arbitration agreement with Gevorkyan that is said to require arbitration in Hong Kong. Dkt. No. 84 at 10. But this is of no moment. Whether the Court has personal jurisdiction over Bitmain, and whether this case should be arbitrated instead of litigated, are entirely different questions.

### CONCLUSION

Bitmain's motion to dismiss, Dkt. No. 33, is denied. Bitmain's request under Rule 12(f) to strike Gevorkyan's nationwide class allegations on personal jurisdiction grounds, Dkt. No. 33 at

14-15, is denied. The determination of the proper scope of any class is appropriately considered under Rule 23, not Rule 12(f). The case is re-opened, and the Court will issue a scheduling order.

**IT IS SO ORDERED.**

Dated: August 26, 2022

JAMES DONATO
United States District Judge